## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

| | |
|---|---|
| MIA CASTRO, M.D., et al | )    CIVIL ACTION NO: |
|      Plaintiff, | ) |
| | )    3:20-cv-00330 (JBA) |
|    v. | ) |
| | ) |
| YALE UNIVERSITY, et al | ) |
| | ) |
|      Defendant. | )    April 30, 2020 |

_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MANUEL FONTES, M.D.'S MOTION TO STAY DISCOVERY PENDING RULING ON MOTION TO DISMISS

Defendant Manual Fontes, M.D. ("Defendant" or "Defendant Fontes") hereby submits this Memorandum of Law in Support of his Motion to Stay Discovery Pending Ruling on Motion to Dismiss.  Defendant Fontes has filed a Motion for Pre-filing Conference [Doc. No. 27] in connection with his anticipated Motion to Dismiss the Third, Fourth and Fifth Counts of the Complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367(c).  If the Motion to Dismiss is granted, all claims as to Defendant Fontes may be dismissed.  Accordingly, good cause exists, as set forth herein, to stay all discovery as to Defendant Fontes, including any disclosures required by the Discovery Protocols For Employment Cases Alleging Adverse Action.

## BACKGROUND

This Complaint was brought by six Plaintiff physicians[1] against Yale University and Yale New Haven Hospital, Inc. (collectively "Yale") alleging violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), which prohibits gender discrimination under any education program or activity receiving Federal financial assistance. (Compl[2]. at ¶ 163.) Plaintiffs allege discrimination (First Count) and retaliation (Second Count) in violation of Title IX.  None of these federal law charges are brought against Defendant Fontes.

Plaintiffs allege three state-law claims against Defendant Fontes, who was at relevant times the Division Chief of Cardiac Anesthesiology at Yale.  Plaintiffs allege claims of assault, battery, and invasion of privacy (Third, Fourth and Fifth Counts). There are no federal claims asserted against Defendant Fontes.  Plaintiffs assert that this Court has supplemental jurisdiction over their state-law claims pursuant to 28 U.S.C. § 1367(a).   (Compl. at ¶ 17.)   Defendant Fontes has sought a pre-filing conference in connection with his anticipated Motion to Dismiss the claims against him on the grounds that principles of economy, convenience, fairness and comity weigh against the exercise of supplemental jurisdiction over these state-law claims. Defendant has herewith moved to stay discovery as to him pending this Court's decision on his Motion to Dismiss.

---

[1] Plaintiffs Mia Castro, M.D. ("Plaintiff Castro"), Heidi Boules, M.D. ("Plaintiff Boules"), Ashley Eltorai, M.D. ("Plaintiff Eltorai"), Jodi-Ann Oliver, M.D. and Lori-Ann Oliver, M.D. ("Plaintiffs Oliver") and Elizabeth Reinhart, M.D. ("Plaintiff Reinhart") are either attending physicians, residents or fellows at Yale.

[2] References to the Complaint [Doc. No. 1] are abbreviated herein as "Compl." with a citation to the relevant paragraph or paragraphs.

**ARGUMENT**

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, a court has discretion to stay discovery "for good cause show."  Fed.R.Civ.P. 26(c); *United States of America Ex Rel v. Sikorsky Aircraft Corporation*, Case No. 3:14-cv-1223 (VLB), 2016 WL 10490528 (D.Conn. Nov. 28, 2016)[3].  "A request for a stay of discovery, pursuant to Rule 26(c), is committed to the sound discretion of the court based on a showing of good cause."  *ITT Corporation v. Travelers Casualty and Surety Company*, Case No. 3:12-cv-38(RNC), 2012 WL 2944357, *2 (D.Conn. July 18, 2012).  This rule "is often invoked to avoid potentially expensive and wasteful discovery during the pendency of a determination which could potentially reshape pending claims."  *Id.* The factors that courts have considered when determining whether a stay is appropriate include:  (1) whether the Defendant has made a strong showing that the Plaintiffs' claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." *United States Ex Rel*, 2016 WL 10490528 at *1. "A stay of discovery is appropriate pending resolution of a potentially dispositive motion where the pending dispositive motion 'appears to have substantial grounds or, stated another way, does not appear to be without foundation in law'."  *ITT Corp.*, 2012 WL 2944357 at *2. (Internal punctuation omitted).

These factors warrant a stay of discovery as to Defendant Fontes pending a decision on his Motion to Dismiss.  First, Defendant's basis for dismissal has substantial grounds and is not without foundation in law.  Specifically, 28 U.S.C.A. §

---

[3] Copies of unpublished decisions are attached hereto in alphabetical order.

1367(c) governing supplemental jurisdiction over state-law claims, provides grounds under which the Court may decline to exercise such jurisdiction. There are compelling grounds and caselaw in support of Defendant's assertion that supplemental jurisdiction should not be accepted here[4]. The only counts under federal question jurisdiction are alleged against Yale, and Defendant Fontes is not a party to either of those counts. Nor is Yale a party to any of the counts against Defendant Fontes, which all allege only state-law claims. The allegations against Defendant Fontes involve different legal theories, requiring different types of evidence, and are more narrowly targeted than the allegations against Yale; and given that there are no federal law claims against Defendant Fontes and that this case is still in the early stages of litigation, judicial economy, fairness and comity weigh against the exercise of supplemental jurisdiction over these claims.

This Court has declined to exercise supplemental jurisdiction in circumstances similar to the one at hand. *See Reyes v. Galpin*, 2019 WL 959680, Civ. No. 3:18-cv-831 (JBA) (D.Conn. Feb. 27, 2019). In *Reyes*, the plaintiff brought federal and state law claims against a municipality and certain of its officers for claims related to the death of her son. This Court dismissed the federal claims against the two officer defendants, but allowed some of the federal claims against the municipal co-defendants. Notwithstanding the remaining federal claims against the municipal co-defendants, this Court declined to exercise supplemental jurisdiction over the state

---

[4] Subsection (c) of the statute provides that the district courts "may decline to exercise supplemental jurisdiction" if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

law claims of wrongful death and negligent infliction of emotional distress asserted against the two officers. *Id.* at *5.  In declining to exercise its discretion, this Court noted that district courts "must weigh various factors, such as judicial economy, convenience, fairness and comity." *Id.* at *5.  In light of those factors, the Court declined to exercise supplemental jurisdiction over the state-law claims against the two officer defendants, given that the case was still in the early stages of litigation. *Id.; see also, Glasser v. Group W Satellite Communications,* 1990 WL 128563, Civ. No. B-89-664 (WWE) (D.Conn. July 11, 1990) (declining to exercise pendent jurisdiction over breach of contract claim pled as part of action alleging violation of the Discrimination in Employment Act of 1967 ("ADEA")); *Koehler v. Chesebrough-Ponds, Inc.,* 750 F.Supp. 721 (D.Conn. 1988) (declining to exercise pendent jurisdiction over state-law claims pled in connection with ADEA claim "in light of the significant potential for jury confusion, the unsettled nature of Connecticut law, and the fact that the interests of judicial economy and fairness to the litigants would not be served."); *Brokke v. Stauffer Chemical Co.,* 703 F.Supp. 215 (D.Conn. 1988) (declining to exercise pendent jurisdiction over state law claims pled as part of ADEA complaint, finding a greater quantum of proof was required with respect to the state law claims and that "the plaintiff's state law claims constitute 'the real body of the case, to which the federal claim[s] [are] only an appendage'") *Lopez v. Smiley,* 375 F.Supp.2d 19 (D.Conn. 2005) (refusing to exercise supplemental jurisdiction over claim raising novel claim under Connecticut Constitution).

Further, should Defendant's Motion to Dismiss be granted, it should be completely dispositive as to all counts against him, thus further warranting a stay of discovery pending its resolution[5].

With respect to the second factor, the breadth of anticipated discovery and burden of responding to it will be quite broad and onerous.  There are six Plaintiffs, who, between them, have alleged a multitude of separate incidents of which they complain, each with a number of potential fact witnesses, which would be subject to discovery.   They have made additional allegations about other Yale faculty (Compl. at 28-50), as well about Defendant Fontes' past employment (Compl. at 51-56).  As an indicator of how broad the discovery will be, Plaintiffs have indicated they may take 10 depositions, and each Defendant has indicated it may take 8-15 depositions. *See* Rule 26(f) Report of the Parties' Planning Meeting [Doc. 31].   Given the potential breadth of discovery, a stay pending the Motion to Dismiss is warranted.

Finally, there is no risk of unfair prejudice from a stay pending a decision on the Motion to Dismiss.  In fact, the parties acknowledged in their Rule 26(f) Report [Doc. No. 31], that given the uncertainty surrounding the ongoing pandemic, the parties might have to make modifications to the deadlines set forth therein.  A brief stay of discovery as to Defendant Fontes, pending disposition of a dispositive motion, will not prejudice the Plaintiffs' claims in any manner.  Nor would such a stay prevent the other parties from proceeding with discovery.

---

[5] To the extent that Plaintiffs indicated an intention to amend the Complaint to assert claims under Conn. Gen. Stat. § 46a-60(5) (see Doc No. 27), Plaintiffs have failed to exhaust their administrative remedies against Fontes, and accordingly any such amendment would also fail.

**CONCLUSION**

For all of the foregoing reasons, Defendant Fontes respectfully requests that this Court stay all discovery as to Defendant Fontes pending its decision on Defendant's anticipated Motion to Dismiss the Third, Fourth and Fifth Counts of the Complaint.

THE DEFENDANT

By:    /s/ Aimee J. Wood
        Robert Mitchell (ct02662)
        Margaret M. Sheahan (ct05862)
        Reese B. Mitchell (ct30226)
        Aimee J. Wood (ct18702)
        Mitchell & Sheahan, P.C.
        999 Oronoque Lane, Suite 203
        Stratford, CT 06614
        203-873-0240
        203-873-0235 (fax)
        awood@mitchellandsheahan.com

        Counsel for Manuel L. Fontes, M.D.

## **CERTIFICATION**

I hereby certify that on April 30, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be served by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ Aimee J. Wood
Robert Mitchell (ct02662)
Margaret M. Sheahan (ct05862)
Reese B. Mitchell (ct30226)
Aimee J. Wood (ct18702)
Mitchell & Sheahan, P.C.
999 Oronoque Lane, Suite 203
Stratford, CT 06614
203-873-0240
203-873-0235 (fax)
awood@mitchellandsheahan.com

1990 WL 128563
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Barry GLASSER, Plaintiff
v.
GROUP W SATELLITE COMMUNICATIONS,
Defendant.

CIV. No. B–89–664 (WWE).
|
July 11, 1990.

**Attorneys and Law Firms**

William Laviano, Ridgefield, Conn., for plaintiff.

Barry J. Waters, Murtha, Cullina, Richter & Pinney, New Haven, Conn., for defendant.

*RULING ON DEFENDANT'S MOTION TO DISMISS*

EGINTON, District Judge.

**\*1** Plaintiff, Barry Glasser ("Glasser"), brought this action for monetary damages against the defendant, Group W Satellite Communications, ("GWSC"), for unlawful discharge pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA") 29 U.S.C. § 626 et seq. In the Second Count of his complaint plaintiff alleges that he suffered damages and emotional distress due to the defendant's breach of his employment contract. GWSC has moved to dismiss the breach of contract claim pursuant to Fed.R.Civ.P. 12(b)(1) asserting that it would be inappropriate for the Court to exercise pendent jurisdiction over this claim.

For the reasons set forth below, the defendant's motion to dismiss the Second Count will be granted.

*FACTS*

From December, 1986 through January 31, 1989 Glasser was employed by GWSC as the manager of playback operations. GWSC asserts that Glasser was terminated because his department was eliminated. Glasser maintains that his termination represents a violation of the ADEA and constitutes a breach of his employment contract.[1]

*DISCUSSION*

Pursuant to 28 U.S.C. § 1301, the Court is vested with original jurisdiction to entertain plaintiff's ADEA claim. The only basis for the Court to exercise jurisdiction over the claims alleged in the Second Count of the complaint is through pendent jurisdiction. Hence, the only issue to be resolved is whether the Court will exercise pendent jurisdiction over the Second Count of the complaint.

Federal Courts may exercise pendent jurisdiction over state law claims when the state and federal claims derive from a common nucleus of operative facts and are sufficiently related that a party would ordinarily expect to litigate them in one forum. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966). However, a court need not exercise pendent jurisdiction over state claims since pendent jurisdiction is a doctrine of discretion, not of right. *Id.* at 726. In electing to exercise pendent jurisdiction, a court must weigh considerations of policy, convenience, judicial economy and fairness. *Id.; See also Brokke v. Stauffer Chemical Co.,* 703 F.Supp. 215 (D.Conn.1988).

GWSC asserts that the ADEA claim and the breach of contract claim do not arise out of the same operative facts and therefore, the Court should not exercise pendent jurisdiction. In opposition the plaintiff asserts that the federal and state claims arise out of a common nucleus of operative facts and argues that *Miller v. Lovett,* 879 F.2d 1066 (2d Cir.1989) mandates that the Court exercise pendent jurisdiction over plaintiff's state law claims. In *Miller* the Second Circuit, in a 42 U.S.C. § 1983 action, held that the district court should have exercised pendent jurisdiction over state law negligence and assault and battery claims. 879 F.2d 1071–1073.

The Court finds that this case is distinguishable from *Miller* and declines to exercise pendent jurisdiction over the Second Count of the complaint. *Miller* involved a single incident in which the defendant police officers allegedly used excessive force in making an arrest. The Second Circuit held that the exercise of pendent jurisdiction over the state law claims was appropriate because "Miller's state and federal claims derive from a common nucleus of operative fact" and because, given the "interrelationship between state law and federal policy ... in police brutality cases, ... resolution of [Miller's] federal claim necessarily required the court to draw on common law principles of tort doctrine." 🚩 879 F.2d at 1072.

**\*2** None of the factors deemed dispositive in *Miller* are present in this case. Plaintiff's claim is based upon an alleged violation of the ADEA. If the Court were to exercise pendent jurisdiction over the breach of contract claim it would involve inquiry into facts having nothing to do with the age discrimination claim and into areas of state law which are best left to state judicial authorities. In *Gibbs,* the Supreme Court advised that "needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." 383 U.S. at 726.

Courts have been reluctant to exercise pendent

jurisdiction in ADEA cases over claims based upon an alleged breach of contract and claims alleging tortious conduct. *Ritter v. Colorado Interstate Gas Company,* 593 F.Supp. 1279 (D.Colo.1984); *Douglas v. American Cyanamid Company,* 472 F.Supp. 298 (D.Conn.1979); *Kurowski v. People's Bank,* Civil No. B–89–344 (WWE) (D.Conn. November 6, 1989). The Court concludes that this reluctance is well advised and declines to exercise pendent jurisdiction over the Second Count of the complaint.

*CONCLUSION*

For the foregoing reasons, the defendant's motion to dismiss the Second Count of the complaint is GRANTED.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1990 WL 128563

### Footnotes

1    Glasser alleges that the employment contract declares that notice would be given prior to a termination without cause.

**End of Document**    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

ITT Corp. v. Travelers Cas. and Sur. Co., Not Reported in F.Supp.2d (2012)

KeyCite Yellow Flag - Negative Treatment
Declined to Follow by Hong Leong Finance Ltd. (Singapore) v. Pinnacle
Performance Ltd., S.D.N.Y., May 22, 2013

2012 WL 2944357
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

ITT CORPORATION and Goulds Pumps, Inc.,
Plaintiffs,
v.
TRAVELERS CASUALTY AND SURETY
COMPANY (Formerly Known as the Aetna
Casualty, And Surety Company), Defendant.

No. 3:12CV38(RNC).
|
July 18, 2012.

**Attorneys and Law Firms**

David A Luttinger, Jr., Lisa M. Campisi, Morgan, Lewis
& Bockius LLP–NY, New York, NY, Francis J. Brady,
Hartford, CT, Jennifer Cohen Goldstein, Murtha Cullina,
LLP, Stamford, CT, Michel V. Horton, Morgan Lewis &
Bockius LLP–LA, Los Angeles, CA, for Plaintiffs.

John W. Larson, Thomas V. Daily, Reid & Riege,
Hartford, CT, Ronald D. Kent, Susan M. Walker, SNR
Denton U.S. LLP, Los Angeles, CA, for Defendant.

*RULING ON MOTION FOR PROTECTIVE ORDER*

DONNA F. MARTINEZ, United States Magistrate Judge.

**\*1** Plaintiffs ITT Corporation and its subsidiary Goulds
Pumps commenced this action against defendant
Travelers Casualty and Surety Company. They seek
declaratory judgment and injunctive relief and also allege
state law claims. The defendant moves for a protective
order staying discovery until the court rules on a pending
motion to dismiss. (Doc. # 17.) For the reasons set forth
below, the motion is granted.

I. *Factual Background*
The plaintiffs bought excess insurance policies[1] from the
defendant for "per occurrence and aggregate" coverage.
The policies, called Excess Overlayer Indemnity policies
("XN" policies), were issued over several decades.
Beginning in 2000, the plaintiffs notified the defendant of
a number of asbestos bodily injury claims. (Compl.124.)
The plaintiffs believe that they have coverage under the
"XN" policies when all their claims-combined-reach the
"aggregate" limits of their underlying insurance. The
defendant disagrees that coverage under the XN policies
is available when the combined claims exhaust the
underlying aggregate limits. (Compl.14.) The defendants
contend that each of the asbestos injury claims is a
separate "occurrence" and plaintiffs only have coverage
when they incur damages for a single "occurrence" in
excess of the underlying per occurrence limits.
(Compl.124.)

The plaintiffs allege that over the years the defendant has
changed its position on coverage under the XN policies.
The defendant's current policy interpretation, according
to the plaintiffs, "materially reduc[es] the scope of
insurance protection that was originally purchased and
effectively elimat[es] coverage for plaintiff's substantial
asbestos liabilities." (Compl.14.) The plaintiffs maintain
that the defendant's interpretation contradicts the terms of
the XN policies as well as the defendant's underwriting
manual and bulletins. (Compl.126.)

The plaintiffs do not seek coverage for any particular
losses. Regardless of policy interpretation, plaintiffs make
no allegation that their asbestos liabilities have reached
the XN policies. Instead, plaintiffs bring this putative
class action on behalf of themselves and other XN
policyholders seeking a declaratory judgment "that the
XN policies are required to respond to liabilities that are
subject to the underlying umbrella aggregate limits and
which exceed such aggregate limits" and "an injunction
barring [the defendant] from asserting its improper
position as to its XN policies." (Count 1, Compl. (147.) In
count 2, the plaintiffs allege the defendant misrepresented
the coverage afforded under the XN policies in violation
of Connecticut's Unfair Insurance Practices Act (CUIPA),
Conn. Gen.Stat. § 38a–815 *et seq.* and Unfair Trade
Practices Act (CUTPA), Conn. Gen.Stat. § 42–110a *et
seq.* In count 3, the plaintiffs allege that the defendant
"engaged in procedural bad faith in the handling of the
plaintiffs' asbestos claims in violation of the common law
of Connecticut" by taking "more than nine years to first
raise its single catastrophic occurrence coverage position"

which it did despite knowing that its position was "false, deceptive, and misleading." (Compl.¶¶ 54–55.) The plaintiffs seek compensatory and punitive damages as to counts 2 and 3.

**\*2** The parties are involved in related litigation in California state court. *Cannon Electric, Inc. v. Affiliated FM Insurance Co. et al.,* No. BC 290354 (Los Angeles County Superior Court). That case, filed before this one, also concerns coverage for future asbestos claims under the XN policies. There, plaintiffs ITT Corporation and Goulds Pumps (among others) seek a declaratory judgment regarding the defendant's obligations under the XN policies "to defend, reimburse and indemnify plaintiffs in full" for underlying asbestos claims made against the plaintiffs. (Doc. # 17–3, Fourth Amended Compl. filed 7/14/06, ¶ 176.) The case originally was filed against a number of defendants, but only the defendant Travelers remains. In 2010, the defendant asserted as an affirmative defense in the California case its "single occurrence position," the same coverage position at issue here. *See* Travelers' Amended Answer to the Fourth Amended Complaint filed on August 3, 2010. The California case is scheduled for a bench trial in September 2012.

The defendant Travelers argues that this case is duplicative of the California state court action. Travelers filed a "Motion to Dismiss, or in the Alternative, to Stay this Case" pursuant to *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800 (1976) (doc. # 47), which is pending before Judge Chatigny. In the present motion, Travelers asks the court to stay this case pending the resolution of its *Colorado River* motion to dismiss.

## II. *Discussion*

The defendant seeks a protective order staying discovery pursuant to Fed.R.Civ.P. 26(c). Rule 26(c) provides, in relevant part:

> The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery.

Fed.R.Civ.P. 26(c)(1)(A).

Rule 26 "is often invoked to avoid potentially expensive and wasteful discovery during the pendency of a determination which could potentially reshape pending claims." *Dabney v. Maddock,* No. 9:10CV0519 (GTS/DEP), 2011 WL 7479164, at \*11 (N.D.N.Y. Nov. 29, 2011). "A request for a stay of discovery, pursuant to Rule 26(c), is committed to the sound discretion of the court based on a showing of good cause." *Davidson v. Goord,* 215 F.R.D. 73, 82 (W.D.N.Y.2003). "[A] court determining whether to grant a stay of discovery pending a motion must look to the particular circumstances and posture of each case," *Alford v. City of New York,* No. CV 2011–0622(ERK)(MDG), 2012 WL 947498, at \*1 (E.D.N.Y. Mar. 20, 2012), and "should consider several factors, including the breadth of the discovery sought, the burden of responding to it, and the prejudice that would be suffered by the party opposing the stay." *Cuartero v. United States,* No. 3: 05CV1161 (RNC)(DFM), 2006 WL 3190521, at \*1 (D.Conn. Nov. 1, 2006). "[A] court should also consider the strength of the dispositive motion that is the basis of the discovery stay application." *Id.* A stay of discovery is appropriate pending resolution of a potentially dispositive motion where the pending dispositive motion "appear[s] to have substantial grounds or, stated another way, do[es] not appear to be without foundation in law." *Johnson v. New York Univ. School of Educ.,* 205 F.R.D. 433, 434 (S.D.N.Y.2002).

*The Breadth of Discovery Sought*
**\*3** The plaintiffs' requested discovery is extraordinarily broad. The temporal scope of the requests runs from the 1960s, when the defendant first began issuing the XN policies, to the present. (Compl.¶ 21.) The types of information sought are also broad. The production requests seek all documents and communications regarding the underwriting, claims handling and marketing of the XN policies. (Doc. # 17–14, Doc. Requests 2–4.) The plaintiffs also request all the defendant's communications with reinsurers and state insurance departments concerning the XN policies. (Doc. # 17–14, Doc. Requests 7–8.) The interrogatories are equally expansive, seeking the identity of all persons who marketed the policies, all XN policyholders who ever submitted a claim under the policies, and information regarding all claims paid under the XN policies. (Doc. # 17–14, Interr.8–10.)

*The Burden of Discovery*

The defendant argues that responding to the plaintiffs' requests, which seek virtually all documents related to the XN policies for a period of more than forty years, will necessitate the expenditure of a significant amount of effort and resources.[2]

*The Prejudice Resulting from a Stay*

The defendant argues that plaintiffs would not be prejudiced by an order staying discovery until the court rules on the pending motion to dismiss. The defendant points out that the plaintiffs make no allegation that they are currently due any money under the policies. Even under the plaintiffs' own policy interpretation, their asbestos claims have not yet triggered the XN policies. During oral argument, the plaintiffs raised for the first time a concern that they would be prejudiced from a delay of discovery because evidence might be lost. Because the XN policies were issued so many years ago, they say, witnesses were likely to be elderly and their testimony could be lost.

*The Dispositive Motion*

Finally, the court considers the strength of the defendant's motion to dismiss. The defendant moves to dismiss or stay this case pursuant to *Colorado River* on the grounds that the federal suit "is duplicative of the State Suit." (Doc. # 47–1, Def's Mem. in Supp. of Mtn to Dismiss at 5.) The defendant argues that the federal case "puts in issue the same Travelers excess insurance policies, the same underlying asbestos bodily injury claims and the same coverage issues being litigated in the [California case]." (*Id.*) In the present case, the plaintiffs expressly ask the court to interpret the XN policies and to find that the defendant's "on account of any one accident or occurrence" interpretation is incorrect. According to the defendant, the California state court will decide how the XN policy applies to the plaintiffs' asbestos claims and which party's coverage interpretation is the correct one.

This court does not presume to predict the outcome of the motion to dismiss. However, on the record before the court, the defendant's arguments are substantial and "not unfounded in the law." *Gandler v. Nazarov*, No. 94 Civ.

2272, 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994).

**\*4** Upon consideration of the particular circumstances and posture of the case, the factors weigh in favor of granting a stay of discovery pending the resolution of the defendant's abstention motion. The discovery will be time-consuming, burdensome and expensive. The defendant's motion is potentially dispositive and appears to have substantial grounds. The plaintiff's suggestion of prejudice does not countervail these considerations. The defendant's motion for a protective order is granted. *See Integrated Systems and Power, Inc. v. Honeywell Intern., Inc.,* No. 09CV5874(RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009)(granting stay of discovery based on the breadth of discovery sought and where the defendant's motion "appears not to be unfounded in the law"); *Niv v. Hilton Hotels Corp.,* No. 06 Civ. 7839(PKL), 2007 WL 510113, at *1 (S.D.N.Y. Feb. 15, 2007)(granting stay where defendants' motion "appears not to be unfounded in the law"); *Spencer Trask Software and Information Services, LLC v. RPost Intern. Ltd.,* 206 F.R.D. 367, 368 (S.D.N.Y .2002) (granting stay of discovery where defendants presented "substantial arguments for dismissal of many, if not all, of the claims asserted in th[e] lawsuit"); *Anti–Monopoly, Inc. v. Hasbro, Inc.,* No. 94Civ.2120 (LMM)(AJP), 1996 WL 101277, at *4 (S.D.N.Y. Mar. 7, 1996) (granting stay where dispositive motion is "not unfounded in the law" and "appears to have substantial grounds"); *Gandler v. Nazarov,* No. 94 Civ. 2272(CSH), 1994 WL 702004, at *4 (S.D.N.Y. Dec. 14, 1994) (granting **stay** of **discovery** where defendant's **motion** to **dismiss** is "potentially dispositive and appears to be not unfounded in the law," "[p]laintiffs have not present any evidence to suggest that they will be unfairly prejudiced by a stay" and "the adjudication of the pending motion to dismiss might avoid the need for costly and time-consuming discovery.")

III. *Conclusion*

For these reasons, the defendant's motion for a protective order (doc. # 17) is granted.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 2944357

## Footnotes

[1]     "An excess policy provides specific coverage above an underlying limit of primary insurance." 3 New Appleman Insurance Law Practice Guide § 29A.Ol (Jeffrey E. Thomas et al. eds., 2012). "Excess coverage generally is not triggered until the underlying primary limits are exhausted." *Id.*

[2]     The defendant did not submit an affidavit but maintains that the breadth of the requests makes obvious the burden of a response to the discovery.

                                                        © 2020 Thomson Reuters. No claim to original U.S. Government Works.

   © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 959680
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Rosemary REYES, et al., Plaintiffs,
v.
Officer Richard GALPIN, et al., Defendants.

Civil No. 3:18cv831 (JBA)
|
Signed 02/27/2019

**Attorneys and Law Firms**

Kevin Murray Smith, Norman A. Pattis, The Pattis Law Firm, LLC, New Haven, CT, for Plaintiffs.

David C. Yale, Elliot B. Spector, Hassett & George, P.C., Simsbury, CT, for Defendants.

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Janet Bond Arterton, U.S.D.J.

**\*1** Rosemary Reyes, individually and in her capacity as executrix of the Estate of Daniel Reyes, brings suit against Defendants Officer Richard Galpin, Officer Keith Koval, Chief James Campbell, the Town of Thomaston, Connecticut, and the Thomaston Police Department for claims related to the death of her son, Daniel Reyes. Defendants move jointly to dismiss all counts of Plaintiff's complaint. For the reasons that follow, Defendants' Motion to Dismiss is granted in part and denied in part.

**I. Facts Alleged**

Plaintiff alleges that her son, Daniel Reyes, "was a young man with a well-documented history of serious, chronic mental-health issues." (Compl. [Doc. # 1] ¶ 10.) Mr. Reyes was "well-known to the Thomaston Police

Department, and had had numerous interactions with" that department. (Id.)

On the night of June 26, 2016, Mr. Reyes "called 911 at approximately 7 p.m. and reported that lives were in danger at ... the home he shared with his mother." (Id. ¶ 12.) "Following this call, Mr. Reyes gave his mother a kiss, told her he loved her, and exited the apartment. On his way out the door, he left a handwritten note on a table by the front door and picked up a black-handled kitchen knife." (Id.)

The 911 dispatcher then called back and spoke to Ms. Reyes, who reported "that there was no problem at the residence." (Id. ¶ 13.) Patrol officers were then dispatched to Plaintiff's address "to perform a safety check" (Id.)

Officer Keith Koval arrived first and "[h]aving observed the knife, ... remained in his cruiser and made contact with [Daniel] Reyes, who challenged Koval to exit his cruiser and draw his weapon. Recognizing the danger of the situation and hoping to deescalate it, Koval declined to exit his vehicle and instead asked Mr. Reyes what was going on. Mr. Reyes responded that he would not talk to Koval until he exited his cruiser and drew his weapon. Koval responded by backing his cruiser up in order to create distance between himself and Reyes." (Id. ¶ 14.)

Officer Richard Galpin arrived on the scene "[w]hile Koval was in the process of deescalating the situation with Mr. Reyes." (Id. ¶ 15.) "Galpin exited his cruiser, and then locked it with a key fob that he tucked into his belt. He then heard Officer Koval report over his radio that Reyes was armed with a knife. Galpin saw the knife in Mr. Reyes's right hand and drew his firearm while commanding Reyes to stop and put the knife down." (Id.) Officer Galpin attempted to retreat into his police cruiser, but he was "unable to open the doors he had locked because the key fob was tucked into his belt." (Id. ¶ 16.) Officer Galpin again commanded Mr. Reyes to "stop and drop the knife, but Reyes appeared not to comply and told [Officer Galpin] to shoot him." (Id.) Officer Galpin "circled" his vehicle and "retreat[ed] to the front passenger side while Reyes continued to follow him." (Id.) Then, "[w]hile standing at the front passenger door" of his police vehicle, "Galpin fired a single shot from his .45 caliber handgun and felled Reyes where he stood near the rear passenger side of the vehicle. Mr. Reyes died shortly after being shot. (Id.)

**\*2** Plaintiff Ms. Reyes was "inside her home while her son was slain" and was "helpless either to stop the shooting or to assist her son as he lay dying." (Id. ¶ 17.)

Plaintiff was "unable to say goodbye or that she loved him before [her son's] death." (*Id.*)

## II. Discussion

Count One of the Complaint claims that the officers used unreasonable force in killing Mr. Reyes, in violation of the Fourth Amendment and 42 U.S.C. 1983. (Compl. ¶¶ 18-26.) Count Two brings claims for failure to adequately train officers regarding the use of deadly force against individuals suspected of suffering from mental illness. (*Id.* ¶¶ 27-32.) Count Three brings claims under the Americans with Disabilities Act for failure to train regarding "how to make reasonable accommodations for persons suffering, or perceived to be suffering from, mental illness or disabilities when these persons are either arrested, taken into custody, or detained...." (*Id.* ¶ 35.) Count Four alleges wrongful death under Connecticut state law. (*Id.* ¶¶ 39-40.) Count Six[1] brings claims for negligent infliction of emotional distress upon Ms. Reyes. (*Id.* ¶¶ 41-46.)

Defendants move to dismiss all claims of Plaintiff's complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Defendants argue that they are entitled to qualified immunity on all counts alleged in the Complaint and that the actions of the officers were objectively reasonable, entitling them to dismissal of Plaintiff's Complaint in its entirety. (Defs.' Mem. Supp. Mot. to Dismiss [Doc. # 22-1] at 5, 7.)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

### A. Claims against Officers Galpin and Koval

The doctrine of qualified immunity shields state officials from civil suit and liability for civil damages in actions brought under 42 U.S.C. § 1983, so long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, in order for a plaintiff to overcome qualified immunity: (1) the facts alleged must make out a violation of a statutory or constitutional right, and (2) that right must have been "clearly established" at the time of the defendants' alleged misconduct. *See id.*[2] The immunity "affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions." *Distiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 553 (2012) ). "The qualified immunity standard is 'forgiving' and 'protects all but the plainly incompetent or those who knowingly violate the law.' " *Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017) (quoting *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010) ).

**\*3** A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and alteration omitted). While there need not be a case directly on point for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The Supreme Court explained,

> We have repeatedly told courts ... not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

*Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal citations and quotation marks omitted). "Although [courts] generally look to Supreme Court and Second Circuit precedent existing at the time of the alleged violation to determine whether the conduct violated a clearly established right, the absence of a decision by [the Second Circuit] or the Supreme Court directly addressing

the right at issue will not preclude a finding that the law was clearly established so long as preexisting law clearly foreshadows a particular ruling on the issue." *Burns v. Martuscello*, 890 F.3d 77, 94 (2d Cir. 2018) (citations omitted).

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.' ... Indeed, we have made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery.' " *Pearson v. Callahan*, 555 U.S. 223, 231-232 (2009) (internal quotations omitted). The Supreme Court has therefore "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

However, the Second Circuit has noted that "motions to dismiss a plaintiff's complaint under Rule 12(b)(6) on the basis of an affirmative defense will generally face a difficult road." *Garcia v. Does*, 779 F.3d 84, 96–97 (2d Cir. 2015). "Not only must the facts supporting the defense appear on the face of the complaint, but ... the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (internal citations omitted). "As a result of this standard of review, a defendant asserting a qualified immunity defense on a motion to dismiss faces a formidable hurdle and is usually not successful." *Barnett v. Mount Vernon Police Dept.*, 523 Fed. App'x 811, 813 (2d Cir. 2013) (internal quotation omitted).

Defendants argue that they are entitled to dismissal of the Complaint because the officers did not violate any clearly established law or constitutional protections and are therefore protected by qualified immunity. (Defs.' Mem. at 7.)

### i. Count One: Excessive Force

When an "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force."

*Tennessee v. Garner*, 471 U.S. 1, 11 (1985). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-397.

**\*4** The "[u]se of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Mullenix*, 136 S. Ct. at 308-309). "Precedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." *Id.* (quoting *Mullenix*, 136 S. Ct. at 312).

The sole issue at this stage therefore becomes whether Defendants can demonstrate, based only on the Complaint, that the officers did not violate any clearly established constitutional protections, even while drawing all reasonable inferences from the facts alleged in favor of Plaintiff. *See* *Graham*, 490 U.S. at 396-397. Defendants argue that several cases "pertaining to emotionally disturbed persons with knives" indicate that the officers' behavior was clearly within the scope of a reasonable officers' conduct, and therefore that their behavior did not violate any clearly established rights.

Defendants point especially to *Kisela*, in which the Supreme Court held that an officer was entitled to qualified immunity because his use of force did not violate clearly established law. In that case, officers responded to a report of a "woman engaging in erratic behavior with a knife" and, upon seeing a woman (Hughes) matching that description "walk[ ] toward" another individual (Chadwick) and "stop[ ] no more than six feet from her," three officers present drew their guns. 138 S. Ct. at 1150. The officers told Hughes to drop the knife "at least twice." *Id.* "Hughes appeared calm, but she did not acknowledge the officers' presence or drop the knife." One officer subsequently shot Hughes four times. *Id.* Officers had been on the scene "but a few minutes, perhaps just a minute" at the time of the shooting. *Id.* Hughes survived and sued the officer who

Reyes v. Galpin, Slip Copy (2019)

shot her, claiming excessive use of force under the Fourth Amendment and § 1983.

The Supreme Court held in that case that it "need not, and does not, decide whether [the officer] violated the Fourth Amendment when he used deadly force against Hughes. For even assuming a Fourth Amendment violation occurred—a proposition that is not at all evident—on these facts Kisela was at least entitled to qualified immunity." 138 S. Ct. at 1152 (holding that "this is far from an obvious case in which any competent officer would have known that shooting Hughes to protect Chadwick would violate the Fourth Amendment"). The Supreme Court found no case(s) which would have made clear that the shooting violated any clearly established right, observing that "[i]n fact, the most analogous [Ninth] Circuit precedent favors" the officer, not Hughes. *Id.*

Defendants emphasize the similarities between the facts of *Kisela* and the circumstances of Mr. Reyes' death, such as the short duration of the officers' presence on the scene, the necessity of a quick response, the movement of an armed person towards another, and the subject's refusal to drop the knife following repeated police commands. Defendants argue that the Supreme Court's opinion in *Kisela* demonstrates that their similar behavior in a similar situation is also "at least entitled to qualified immunity."

Plaintiff argues that "at this stage, the Plaintiffs have pleaded sufficient facts to establish a plausible claim that it was objectively unreasonable for Officer Galpin to kill Reyes." (Pl.'s Opp. at 6.) Plaintiff cites Officer Koval's decision to remain inside his police vehicle as evidence that Officer Galpin's choice to exit the vehicle and engage with Mr. Reyes was objectively unreasonable. (*Id.*) Contrary to Plaintiff's assertion, that the two officers adopted a different approach does not clearly establish that one approach represented a constitutional violation. *See* Walczyk v. Rio, 496 F.3d 139, 154 (2d Cir. 2007) ("an officer is still entitled to qualified immunity if officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." (internal quotation omitted) ). Moreover, in focusing broadly on whether she established a "plausible claim that it was objectively unreasonable for Officer Galpin to kill Reyes," Plaintiff's argument misses the mark with regard to qualified immunity, failing to plead facts or cite any case which " 'squarely governs' the specific facts at issue," Kisela, 138 S. Ct. at 1153, and which could arguably clearly establish a right which Officer Galpin violated in shooting Mr. Reyes. In the absence of any "precedent involving similar facts" which

could "help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful," Officers Koval and Galpin are entitled to the protections of qualified immunity on Count One. *Id.* (quoting Mullenix, 136 S. Ct. at 312).

### ii. Counts Four: Wrongful Death and Six: Negligent Infliction of Emotional Distress

**\*5** In the absence of any federal claim against Defendants Koval and Galpin which survives Defendants' Motion to Dismiss, the Court must first determine whether to exercise supplemental jurisdiction over the state law claims against them in Counts Four and Six, which claim wrongful death and negligent infliction of emotional distress.

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action ... that they form part of the same case or controversy," 28 U.S.C. § 1367, i.e., that "derive from a common nucleus of operative fact," City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997) (internal quotation omitted). When only "state-law claims remain[ ] after resolution of the federal question, the District Court [has] discretion, consistent with Article III, to retain jurisdiction" over those still-pending state law claims. Osborn v. Haley, 549 U.S. 225, 245 (2007). *See* 28 U.S.C. § 1367(c)(3). "In general, where [all] federal claims are dismissed before trial, the state claims should be dismissed as well," Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998), but the "district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). In exercising that discretion, district courts "must weigh various factors, such as judicial economy, convenience, fairness, and comity." Wright v. Musanti, 887 F.3d 577, 582 n.2 (2d Cir. 2018).

In light of those factors, the Court declines to exercise supplemental jurisdiction over the state law claims against Defendants Koval and Galpin in Counts Four and Six. This case is still in early stages of litigation, so there has not yet been the type of "substantial expenditure in

time, effort, and money in preparing the dependent claims" which would weigh in favor of an exercise of supplemental jurisdiction. *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994). *See Estate of Devine v. Fusaro*, 676 Fed. App'x 61, 64 (2d Cir. 2017) (affirming "district court's decision to decline to exercise jurisdiction over" state law claims after finding officers entitled to qualified immunity on § 1983 excessive force claim and entering summary judgment in their favor on federal claims); *Chapman v. Crane Co.*, 694 Fed. App'x 825, 829 (2d Cir. 2017) (affirming district court's declining to exercise supplemental jurisdiction where, among other factors, "it was still an early stage of the proceedings and discovery was not complete; [and] no dispositive motions had been decided"). All claims against Defendants Koval and Galpin are therefore dismissed.

### B. Claims against Chief James Campbell, the Town of Thomaston, and the Thomaston Police Department

The Complaint's failure to train claim (Count Two) and ADA violation claim (Count Three) bring claims against Chief James Campbell, the Town of Thomaston, and the Thomaston Police Department (together, the "Municipal Defendants").

#### i. Thomaston Police Department as defendant

Defendants argue that the "claims against the Thomaston Police Department should be dismissed because, under clearly established law, a police department is not a legal entity." (Defs.' Mem. at 3.) Defendants cite no authority for this argument, and in the absence of such, the Thomaston Police Department will not be dismissed on those grounds. *See Soltis v. Kotenski*, 63 F. Supp. 2d 187, 189 (D. Conn. 1999) ("the Court will comment briefly on defendants' claims that a police department cannot be liable under Section 1983. This is not an accurate statement of the law. A municipality may be held liable, as may a municipality's police department, when plaintiff's harm was caused by a constitutional violation and where the municipality or police department as a subdivision thereof is responsible for that violation." (citing *Collins v. City of Harker Heights*, 503 U.S. 115

(1992) ) ). *See also Thompson v. Mexico Const, LLC*, 2007 WL 763899, at *1 (D. Conn. March 9, 2007) (reviewing and finding no binding authority which clearly holds that police departments are improper defendants in Connecticut).

#### ii. Count Two: Failure to Train

**\*6** "In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978) ).

The Supreme Court has interpreted § 1983's causation requirement as inconsistent with the imposition of vicarious or *respondeat superior* liability on a municipality for the torts of its employees, *Reynolds v. Giuliani*, 506 F.3d 183, 190 (2d Cir. 2007) (citing *Monell*, 436 U.S. at 691–94), and thus "[t]he fifth element—the 'official policy' element—can only be satisfied where a plaintiff proves that a 'municipal policy of some nature caused a constitutional tort,' " *Roe*, 542 F.3d at 36 (quoting *Monell*, 436 U.S. at 691). " 'In other words, a municipality may not be found liable simply because one of its employees committed a tort' " and "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Id.* at 36–37 (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 405 (1997) ).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011). The Supreme Court has explained that a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train" because municipal liability depends upon a showing of policymakers' "deliberate indifference" to citizens' rights

rather than negligence. *Id.* Therefore, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train," because "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Id.* at 1360.

To survive Defendants' Motion to Dismiss, Plaintiff must have pled facts which, if true, would state a claim for the Municipal Defendants' liability for failure to train: first, that Mr. Reyes suffered a constitutional violation, and second, that the Municipal Defendants' "deliberate indifference" and failure to train "caused" that violation.

First, though Plaintiff has not plausibly pled facts or cited any cases which suggest that Officers Koval and Galpin violated any *clearly established* constitutional rights, the Complaint does contain sufficient factual allegations which, in combination with all favorable inferences to which Plaintiff is entitled at this stage, render a claim of Fourth Amendment violation facially plausible. Though that alone is insufficient to defeat the officers' claim of qualified immunity, it does allow Plaintiff's failure to train claim against the Municipal Defendants to proceed at this stage.

Second, Plaintiff here contends that, in the Thomaston Police Department, "[o]fficers were not trained to apprehend those suffering from a current mental illness, or those perceived as disabled, and those for whom officers had a record of psychiatric impairment." (Compl. ¶ 29.) The Complaint also alleges that the Thomaston Police Department "responds regularly to calls for individuals who, based upon initial reports to officers, are believed to be seriously disturbed, either as a result of illness or intoxication. The department fails, refuses, and neglects to keep a centralized database of those reported to it as suspected of being mentally ill." (*Id.* ¶ 30.) Plaintiff also alleges that Chief Campbell "did not provide training necessary for officers faced with the challenge of bringing such people safely" into their custody, despite being "on notice ... that a significant number of individuals arrested or otherwise detained by officers ... are either mentally ill or appear to be so." (*Id.* ¶ 31.) Nonetheless, the Complaint alleges, "the Chief refused, failed and neglected to provide training on how safely, and without precipitous use of deadly force, to defuse a tense situation and place an agitated person in custody." (*Id.*)

**\*7** These allegations, if true, suggest that policymakers arguably had actual or constructive notice of the need for such training and that a policymaker demonstrated deliberate indifference to that need, and therefore Plaintiff states a facially plausible claim for relief for failure to train sufficient for Count Three to survive the motion to dismiss stage. *See Amnesty America v. Town of West Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004) (plaintiff not required to "identify a specific deficiency" in training "at the motion to dismiss stage" but must do so to survive a motion for summary judgment).

### iii. Count Three: ADA Violation

Plaintiff also argues that Defendants[3] violated Mr. Reyes' rights under the Americans with Disabilities Act, 42 U.S.C. § 12132 et seq., by their failure to offer training "on how to make reasonable accommodations for persons suffering, or perceived to be suffering from, mental illness or disabilities when these persons are" taken into custody.[4]

To establish a violation of the ADA, Plaintiff must demonstrate (1) that Mr. Reyes was a "qualified individual" with a disability; (2) that the Defendants are subject to the ADA; and (3) that Mr. Reyes was denied the opportunity to participate in or benefit from the Defendants' services, programs, or activities, or was otherwise discriminated against by Defendants by reason of his disability. *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189, 196–97 (2d Cir. 2014) (citing *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) ).

Defendants do not appear to contest that Mr. Reyes was a "qualified individual" or that they are generally subject to the ADA. (*See generally* Defs.' Mem.)

Defendants argue instead that "officers making an arrest are not required to first determine whether their actions would comply with the ADA before protecting themselves and others," (Defs.' Mem. at 16) (citing *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000) ), and therefore that Mr. Reyes suffered no underlying ADA violation which would support an ADA failure to train claim. The *Hainze* court determined that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior

to the officer's securing the scene and ensuring that there is no threat to human life," reasoning that to "require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to" ensuring the safety of those present "would pose an unnecessary risk to innocents." *Hainze*, 207 F.3d at 801.

However, that approach of the Fifth Circuit Court of Appeals has been adopted neither by the Second Circuit Court of Appeals nor by district courts within this circuit who have considered whether the ADA applies to interactions between law enforcement and disabled individuals. In *Williams v. City of New York*, 121 F. Supp. 3d 354, 364-365 (S.D.N.Y.), that district court held that the ADA does govern "on-the-street encounters" between police and covered individuals, concluding that "the City's crabbed interpretation of Title II's coverage of police activity simply does not comport with the language of Title II and its implementing regulations, particularly in light of the remedial purpose of the statute and the weight of authority that has considered the issue." The *Williams* court reasoned that

> **\*8** 'Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights' and 'a pattern of unequal treatment' in a wide range of public services and activities 'in the administration of justice.' [*Tennessee v. Lane*, 541 U.S. 509, 524-525 (2004).] The Department of Justice's implementing regulations for the ADA make clear that, with exceptions not relevant here, Title II of the ADA 'applies to all services, programs, and activities provided or made available by public entities,' 28 C.F.R. § 35.102(a), and requires public entities to make 'reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability,' unless the required modification would fundamentally alter the nature of the service, program, or activity,' 28 C.F.R. § 35.130(b)(7). The phrase 'services, programs, or activities' is 'a catch-all phrase' that prohibits all discrimination by a public entity. *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 69 (2d Cir. 2012) (quoting *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 45 (2d Cir. 1997), recognized as superseded on other grounds, *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 171 n. 7 (2d Cir. 2001) ). As the Second Circuit has explained, the ADA should be 'broadly construed to effectuate its purpose of providing a clear and comprehensive national

mandate for the elimination of discrimination against individuals with disabilities.' *Id.* at 68 (quotation marks and citation omitted).

A number of courts have considered whether interactions between law enforcement and disabled individuals—whether initiated by the disabled individual or the police and whether the interaction culminates in an arrest—are 'services, programs, or activities' subject to the requirement of accommodation under Title II of the ADA. Those courts have generally found that Title II applies, but the reasonableness of the accommodation required must be assessed in light of the totality of the circumstances of the particular case.

121 F. Supp. 3d at 365-366.

That court went on to conclude that there are "at least two types of Title II claims applicable to arrests," including "(1) wrongful arrest, where police wrongly arrest someone with a disability because they misperceive the effects of that disability as criminal activity; and (2) reasonable accommodation, where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.* at 369 (quoting *Sheehan v. City and County of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part on other grounds*, 135 S.Ct. 1765 (2015) ("Whether the statutory language [of the ADA] applies to arrests is an important question that would benefit from briefing and an adversary presentation. But San Francisco, the United States as *amicus curiae*, and Sheehan all argue (or at least accept) that § 12132 applies to arrests. No one argues the contrary view. As a result, we do not think that it would be prudent to decide the question in this case.") ).

It is clear, at least, that the ADA can apply to police activity in some situations. Even *Hainze v. Richards*, the sole case cited by the Defendants in support of their proposition that Officers Koval and Galpin were not required to consider ADA compliance before acting, acknowledges that police actions must, at some point, begin to comply with ADA requirements. 207 F.3d at 802 ("Once the area was secure and there was no threat to human safety, the ... deputies would have been under a duty to reasonably accommodate Hainze's disability in handling and transporting him...."). *See Brunette v. City of Burlington, Vermont*, 2018 WL 4146598, at * 34 (D. Vt. Aug. 30, 2018) (holding that "exigent circumstances" of

the police encounter must be considered in determining whether police provided ADA-compliant "reasonable accommodation" and citing cases taking similar approach).

Plaintiff further alleges that Chief Campbell was "on notice ... that a significant number of individuals arrested or otherwise detained by officers under [his] employ are either mentally ill or appear to be so" and that it "was foreseeable to the Chief that police officers would routinely confront" such individuals, (Compl. ¶ 31), but that the Defendants nonetheless "offer no training on how to make reasonable accommodations" for individuals protected by the ADA with whom officers come into contact, (Compl. ¶¶ 35-36.)

**\*9** Without yet deciding the precise scope of the ADA's requirements in this situation, the Court finds that Plaintiff has pled facts which render plausible her allegation that Mr. Reyes suffered a violation of his right to a reasonable accommodation of his disability because of an alleged failure to train and despite Defendants' knowledge of the need for such training. Therefore, Count

Three states a claim of ADA violation sufficient to survive the motion to dismiss stage.

### III. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. # 22] is GRANTED in part and DENIED in part. Counts One, Four, and Six of the Complaint are dismissed from this litigation, as are Defendants Officers Koval and Galpin. Counts Two and Three of the Complaint are not dismissed, nor are the Municipal Defendants.

IT IS SO ORDERED.

### All Citations

Slip Copy, 2019 WL 959680

### Footnotes

1      The Complaint does not include a Count Five.

2      The Supreme Court has held that district courts have the discretion to choose which of the two prongs of the qualified immunity standard to analyze first, depending on the circumstances of the case. *See* Pearson, 555 U.S. at 236.

3      Because Count Three of the Complaint identifies only the Town of Thomaston and the Thomaston Police Departments as responsible for the alleged ADA violation, (Compl. ¶¶ 35-37), the Court reads Count Three as brought only against those two defendants.

4      In her Opposition to the Motion to Dismiss, Plaintiff analyzes Count Three's claims both under the ADA and under *Monell* and § 1983. (Pl.'s Opp. at 10-12.) However, on the face of the Complaint, Count Three brings only a claim of violation of the ADA and makes no reference to § 1983. (Compl. ¶¶ 33-38.) Therefore, the Court treats Count Three as only a claim for violation of the ADA.

**End of Document**                                     © 2020 Thomson Reuters. No claim to original U.S. Government Works.

United States ex rel. Ameti v. Sikorsky Aircraft Corporation, Not Reported in Fed. Supp....

2016 WL 10490528
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

UNITED STATES of America EX REL., Pellumb
AMETI, Plaintiffs,
v.

SIKORSKY AIRCRAFT CORPORATION,
Defendant.

CASE NO. 3:14-cv-1223(VLB)
|
Signed 11/28/2016

**Attorneys and Law Firms**

Michael C. McMinn, Axelrod & Associates, LLC,
Woodbrige, CT, for Plaintiffs.

Basil C. Sitaras, Cantor Fitzgerald, New York, NY, Eric
L. Sussman, James Michael Leva, Day Pitney LLP,
Hartford, CT, Howard Fetner, Day Pitney LLP, New
Haven, CT, Michael J. Bronson, Patrick M. Hagan,
Dinsmore & Shohl, LLP, Cincinnati, OH, Elizabeth A.
Latif, West Hartford, CT, Stanley A. Twardy, Jr., Day
Pitney LLP, Stamford, CT, for Defendant.

**RULING ON DEFENDANT'S MOTION TO STAY
DISCOVERY**

Robert A. Richardson, United States Magistrate Judge

**\*1** Relator Pellumb Ameti ("Relator") brings this action
on behalf of the United States of America against
Defendant Sikorsky Aircraft Corporation ("Defendant")
seeking remedies under the False Claims Act, 31
U.S.C. § 3729, et seq. ("FCA") and Connecticut state law.
Pursuant to Federal Rule of Civil Procedure 26(c), the
defendant moves the Court for a protective order to **stay
discovery** in this action pending resolution of its **Motion**
to **Dismiss** the FCA Complaint. (Dkt. # 40).

**BACKGROUND**

On August 22, 2014, Relator filed his initial complaint
against the defendant under seal, primarily alleging
violations of the FCA. (Dkt. #'s 1, 3). Relator's complaint
remained under seal while the Department of Justice
investigated the claim and determined whether or not it
would intervene. (Dkt. # 6). On March 28, 2016, the
United States declined intervention, and the Court
subsequently unsealed the complaint. (Dkt. #'s 14, 15).

On June 20, 2016, the Court ordered that the above
captioned case dealing with violations of the FCA be
consolidated with a related pending case brought by
Relator alleging claims of employment discrimination.[1]
The original discovery deadline in the employment
discrimination case was April 1, 2016, and the Court
ultimately extended this deadline until April 29, 2016.

On July 20, 2016, the defendant filed a Motion to **Dismiss**
Relator's FCA claims, as well as a **Motion** to **Stay
Discovery** pending the outcome of its **Motion** to **Dismiss**.
(Dkt. #'s 39, 40). On September 15, 2016, Relator filed an
Amended Complaint. (Dkt. # 51). On September 29,
2016, the defendant filed a Motion to Dismiss the
Amended FCA Complaint. (Dkt. # 53). On October 27,
2016, Relator filed its Memorandum in Opposition to the
Defendant's Motion to Dismiss the Amended False
Claims Act. (Dkt. # 59).

**RELEVANT LAW**

Pursuant to Rule 26(f) of the Federal Rules of Civil
Procedure, a court has discretion to stay discovery "for
good cause shown." Fed.R.Civ.P. 26(c). "In some
circumstances, a pending motion to dismiss may
constitute 'good cause' for a protective order staying
discovery." Hong Leong Fin. Ltd. (Singapore) v. Pinnacle
Performance Ltd., 297 F.R.D. 69, 72 (S.D.N.Y. 2013)
(citations omitted). "This rule is often invoked to avoid
potentially expensive and wasteful discovery during the
pendency of a determination which could potentially
reshape pending claims." Dabney v. Maddock, No.
9:10-CV-0519 GTS/DEP, 2011 WL 7479164, at \*11
(N.D.N.Y. Nov. 29, 2011), report and recommendation
adopted, No. 9:10-CV-0519 GTS/DEP, 2012 WL 760748

United States ex rel. Ameti v. Sikorsky Aircraft Corporation, Not Reported in Fed. Supp....

(N.D.N.Y. Mar. 7, 2012).

"Factors that courts have considered when determining whether or not a stay is appropriate include: (1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." Chesney v. Valley Stream Union Free Sch. Dist. No. 24, 236 F.R.D. 113, 115 (E.D.N.Y. 2006) (citations omitted). The "factor that weighs most heavily in favor of a stay is the strength of defendants' motion." Picture Patents, LLC v. Terra Holdings LLC, No. 07 CIV. 5465 JGK/HBP, 2008 WL 5099947, at *2 (S.D.N.Y. Dec. 3, 2008).

**\*2** Additionally, "[c]ourts in this District hold that a stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion 'appear[s] to have substantial grounds' or, stated another way, 'do[es] not appear to be without foundation in law.' " In re Currency Conversion Fee Antitrust Litig., No. M21-95, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002) (internal citations omitted).

## DISCUSSION

### I. Whether the defendant has made a strong showing that Relator's claims are unmeritorious

While the Court expresses no opinion as to the outcome of the outstanding Motion to Dismiss, the memorandum of law in support of defendant's motion to dismiss appears to raise substantial issues which are "not unfounded in law." See In Re Currency, 2002 WL 88278, at *1. Specifically, the defendant argues that Relator fails to allege with plausibility and particularity that Sikorsky submitted false claims or false statements. (Dkt. # 52 at 9). Given the rigorous pleading standard set forth by the Supreme Court as well as the Second Circuit, and the requirement that the actual submission of false claims be presented with a high degree of particularity, the defendant's claims are not unfounded in law. *See* Universal Health Servs., Inc. v. United States, 136 S. Ct. 1989, 2003, 195 L.Ed. 2d 348 (2016); U.S. ex rel. Kester v. Novartis Pharm. Corp., 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).

In support of its motion to dismiss, the defendant further claims that the failure of Relator's FCA claim effectively dooms its conspiracy claim, because the Second Circuit has held that failure to plead an underlying violation of the FCA precludes a conspiracy claim. (Dkt. # 53 at 21). The defendant likewise argues that plaintiff's retaliation claim fails because the plaintiff did not engage in FCA protected activity. (Dkt. # 52 at 22). Finally, the defendant argues that Relator's state law claim fails because Relator fails to state a federal claim, and the state should therefore decline to exercise supplemental jurisdiction. (Dkt. # 53 at 27). It does not appear that any of the above claims are insubstantial or unfounded in law.

### II. The breadth of discovery and the burden of responding to it

With respect to the breadth of discovery and the burden of responding to it, the defendant argues that the requested discovery will be "quite broad" because the allegations in the complaint "are extensive and deal with complicated engineering issues." (Dkt. # 40 at 8). The defendant also argues that absent a stay, Sikorsky will be forced to expend significant resources on a complaint that might ultimately fail as a matter of law. (Dkt. # 40 at 8). Relator has not yet filed a response to defendant's Motion to Stay Discovery, and therefore has not provided the Court with information regarding the breadth of discovery or the burden of responding to it.

### III. Risk of unfair prejudice from a stay

As noted above, Relator has not yet filed a response to defendant's motion to stay discovery, and therefore has not presented evidence that it would be unduly prejudiced by a stay of discovery. Additionally, a scheduling order regarding discovery has not yet been entered in the consolidated case, so Relator does not yet have an expectation regarding a discovery timeline.

The Court does not need to decide at this point whether Relator is entitled to any discovery at all. Instead, the Court merely needs to find that there is good cause for staying discovery pending the outcome of the defendant's motion to dismiss. Given the strength of the defendant's dispositive motion, the potential burden of producing discovery and the lack of evidence that Relator will be unduly prejudiced by a stay, the Court finds that there is

good cause for staying discovery pending a decision on the Motion to Dismiss.

Dismiss.

SO ORDERED at Hartford, Connecticut, this 28th day of November, 2016.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 10490528

## <u>CONCLUSION</u>

**\*3** For the foregoing reasons, discovery in this action is stayed pending resolution of defendant's Motion to

**Footnotes**

1       The employment discrimination case had previously been docketed as 3:15-cv-00235-VLB.

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.