**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____

| | | |
|---|---|---|
| MIA CASTRO, M.D., et al | ) | CIVIL ACTION NO: |
| Plaintiff, | ) ) ) | 3:20-cv-00330 (JBA) |
| v. | ) | |
| YALE UNIVERSITY, et al | ) ) | |
| Defendant. | ) | June 17, 2020 |

_____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MANUEL LOPES FONTES, M.D.'S MOTION TO DISMISS

Defendant Manual Lopes Fontes, M.D. ("Defendant" or "Defendant Fontes") hereby submits this Memorandum of Law in Support of his Motion to Dismiss the Fifth, Sixth and Seventh Counts of the Amended Complaint dated May 29, 2020 [Doc. No. 44], pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367(c).

### I.    BACKGROUND

This action was brought by six Plaintiff physicians[1] against Yale University and Yale New Haven Hospital, Inc. ("YNNH") (the "Yale Defendants") and Defendant Fontes. The case rests before this Court on the basis of federal question jurisdiction. The Amended Complaint charges the Yale Defendants with violating Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 _et seq_. ("Title IX"), which prohibits gender discrimination in any education program or activity receiving Federal financial assistance.

---

[1] Plaintiffs Mia Castro, M.D. ("Plaintiff Castro"), Heidi Boules, M.D. ("Plaintiff Boules"), Ashley Eltorai, M.D. ("Plaintiff Eltorai"), Jodi-Ann Oliver, M.D. and Lori-Ann Oliver, M.D. ("Plaintiffs Oliver") and Elizabeth Reinhart, M.D. ("Plaintiff Reinhart") allege that they are either attending physicians, residents or fellows and employees of the Yale Defendants.  Plaintiffs allege that Yale University is an academic university that receives financial assistance from the Federal government (Am. Compl. at ¶ 27) and separately, that YNNH is a private corporation engaged in the business of providing health care, which also receives financial assistance from the Federal government.  (Am. Compl. at 31.)

(Am. Compl. at ¶ 216.)[2] Plaintiffs allege discrimination (First Count) and retaliation (Second Count)[3] in violation of Title IX. Plaintiffs' Amended Complaint also adds a claim against the Yale Defendants for Discrimination in Violation of Title VII (Third Count); and two of the Plaintiffs allege a claim against the Yale Defendants for Retaliation in Violation of Title VII (Fourth Count).  None of these federal law charges are brought against Defendant Fontes.

Plaintiffs allege three state-law claims against Defendant Fontes, who was at relevant times the Division Chief of Cardiac Anesthesiology at YNNH.  (Am. Compl. at ¶ 37.)   They charge him with assault, battery, and invasion of privacy (Fifth, Sixth and Seventh Counts).   No federal claim is made against Defendant Fontes. Diversity jurisdiction does not lie.  Neither Yale Defendant is charged with any state-law violation. The sole premise for Plaintiffs claiming any federal jurisdiction over Defendant Fontes is through the Court's exercising 28 U.S.C. § 1367(a) supplemental jurisdiction over the three state-law claims.   (Am. Compl. at ¶ 19.)  Defendant Fontes submits that principles of economy, convenience, fairness and comity weigh against the exercise of supplemental jurisdiction over these state-law claims, and therefore moves for dismissal of these Counts of the Complaint.

Each of the Defendants filed Motions for Pre-filing Conference [Doc. Nos. 27, 36, 37], and a conference was held on May 13, 2020.  [Docket Entry 41.]  Pursuant to the scheduling discussed at the conference, and ordered by the Court [Doc. No. 42], Plaintiffs filed an Amended Complaint on May 29, 2020.  Defendant Fontes moves to dismiss the

---

[2] References to the Amended Complaint [Doc. No. 44] are abbreviated herein as "Am. Compl." with a citation to the relevant paragraph or paragraphs in the Amended Complaint.

[3] Only two of the Plaintiffs join in the Second Count claiming retaliation.

claims against him set forth in the Amended Complaint, and submits this Memorandum in Support.

## II.   ARGUMENT

### A.   Legal Standard

Defendant Fontes asks the Court to decline to exercise supplemental jurisdiction over the state-law claims alleged against him and so dismiss him from this action.  The governing statute, 28 U.S.C.A. § 1367(a), providing for supplemental jurisdiction over state-law claims, provides in relevant part that:

> [T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Supplemental jurisdiction exists over claims that "derive from a common nucleus of operative fact."  *Reyes v. Galpin*, 2019 WL 959680, Civ. No. 3:18-cv-831 (JBA) (D.Conn. Feb. 27, 2019)[4].

Subsection (c) of the statute provides that the district courts "may decline to exercise supplemental jurisdiction" if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C.A. § 1367(c); *Vermont Mutual Insurance Co. v. LaCourse*, 2014 WL 5313714, Civ. No. 3:13-cv-664 (JBA) (D.Conn. Oct. 16, 2014).  "Where at least one of the subsection 1367(c) factors is applicable, a district

---

[4] Copies of unpublished decisions are submitted herewith in alphabetical order as Exhibit A.

court may decline to exercise supplemental jurisdiction but only if dismissing such claims would promote the values [of]…economy, convenience, fairness, and comity." *Vermont Mutual Insurance Co. v. LaCourse*, 2014 WL 5313714 at *1 (internal punctuation omitted). "Supplemental jurisdiction is a matter of discretion." *Gray v. Erfe*, 2015 WL 3581230 at *3, Civ. No. 3:13-cv-39 (JBA) (D.Conn. June 5, 2015). A "federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction brought in that court involving pendent state-law claims." *Vermont Mutual Insurance Co. v. LaCourse,* 2014 WL 5313714 at *1 (declining to exercise supplemental jurisdiction over third party claims where they were untimely and would delay adjudication and cause prejudice, finding that "retaining jurisdiction would be inconsistent with the values of 'economy, convenience, and fairness'"). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Morris v. Yale University School of Medicine*, 2006 WL 908155 at *2, Civ. No. 05-CV-848 (JBA) (D.Conn. Apr. 4 2006) (finding it appropriate to exercise supplemental jurisdiction in that case).

**B**. **The Court Should Decline to Exercise Supplemental Jurisdiction**.

1.     *The Court Should Decline Supplemental Jurisdiction Under 28 U.S.C. § 1367(4).*

Dismissal of the state-law claims is warranted under 28 U.S.C. § 1367(4) because there are compelling reasons for declining jurisdiction, including the lack of overlap between Defendant Fontes and the Yale Defendants with respect to the federal claims and the state-law claims, the different legal theories and types of proof associated with each

claim, and most importantly, the potential divergence of interest between Defendant Fontes and the Yale Defendants.

This Court has declined to exercise supplemental jurisdiction in circumstances similar to the one at hand. *See Reyes v. Galpin*, 2019 WL 959680, Civ. No. 3:18-cv-831 (JBA) (D.Conn. Feb. 27, 2019). In *Reyes*, the plaintiff brought federal and state law claims against a municipality and certain of its officers for claims related to the death of her son. This Court dismissed the federal claims against the two officer defendants, but allowed some of the federal claims against the municipal co-defendants. Notwithstanding the remaining federal claims against the municipal co-defendants, this Court declined to exercise supplemental jurisdiction over the state law claims for wrongful death and negligent infliction of emotional distress asserted against the two officers. *Id*. at *5. In declining to exercise its discretion, this Court noted that district courts "must weigh various factors, such as judicial economy, convenience, fairness and comity." *Id*. at *5. In light of those factors, the Court declined to exercise supplemental jurisdiction over the state-law claims against the two officer defendants, given that the case was still in the early stages of litigation. *Id.; see also, Glasser v. Group W Satellite Communications,* 1990 WL 128563, Civ. No. B-89-664 (WWE) (D.Conn. July 11, 1990) (declining to exercise pendent jurisdiction over breach of contract claim pled as part of action alleging violation of the Discrimination in Employment Act of 1967 ("ADEA")); *Koehler v. Chesebrough-Ponds, Inc.,* 750 F.Supp. 721 (D.Conn. 1988) (declining to exercise pendent jurisdiction over state-law claims pled in connection with ADEA claim "in light of the significant potential for jury confusion, the unsettled nature of Connecticut law, and the fact that the interests of judicial economy and fairness to the litigants would not be served."); *Brokke v. Stauffer*

*Chemical Co.,* 703 F.Supp. 215 (D.Conn. 1988) (declining to exercise pendent jurisdiction over state law claims pled as part of ADEA complaint, finding a greater quantum of proof was required with respect to the state law claims and that "the plaintiff's state law claims constitute 'the real body of the case, to which the federal claim[s] [are] only an appendage'") *Lopez v. Smiley,* 375 F.Supp.2d 19 (D.Conn. 2005) (refusing to exercise supplemental jurisdiction over claim raising novel claim under Connecticut Constitution).

In this case, there are compelling reasons for declining jurisdiction. There is no overlap between the parties with respect to the federal claims brought against the Yale Defendants and the state-law claims brought against Defendant Fontes. Neither Yale entity has been charged with any state-law violation; and Defendant Fontes is not a party to any of the Plaintiffs' federal claims.

Furthermore, and most importantly, there is a chance that the interests of Defendant Fontes and Yale will diverge, because of the accusations made against Defendant Fontes. As Plaintiffs note, Yale University has already removed Defendant Fontes from his position as the Department of Anesthesiology's Vice Chair of Diversity, Equity and Inclusion based on Plaintiffs' accusations[5]. (Am. Compl. at n.1.) This shows that Plaintiffs' accusations may place Defendants at odds with one another and, thus, put Defendant Fontes in an extremely awkward position in the current litigation; which could adversely impact his ability to defend himself against the state-law claims that have been made against him. In fact, exercising supplemental jurisdiction over the state-law claims could prejudice all of the Defendants in the defense of this matter, given the potential divergence of interests. With respect to Defendant Fontes, the state-law claims clearly

---

[5] Actions such as this may give rise to a claim by Defendant Fontes, a black man, of discrimination by Yale University based on race and gender.

predominate and it would be grossly unfair to leave him as a party to this suit because of the possible divergence of interests that might develop between him and the Yale Defendants as the case progresses.  This inherent unfairness weighs against the exercise of supplemental jurisdiction over the state-law claims against Defendant Fontes.

Moreover, the claims involve different legal theories and will require different types of proof.  An examination of Plaintiffs' allegations – and comparison between their federal claims against the Yale Defendants and their state-law claims against Defendant Fontes – provides another reason why this Court should decline to exercise supplemental jurisdiction over the state-law claims against Defendant Fontes.  The First Count alleges discrimination by the Yale Defendants based on allegations that they were "on notice of the discriminatory conduct engaged in by faculty at Yale" and that they "failed to carry out their duties and obligations pursuant to Title IX to investigate and take corrective action." (Am. Compl. at ¶ 218.)  Such faculty includes Defendant Fontes, but is not limited to him. At least five other faculty members are also included in Plaintiffs' allegations.  (*See, e.g.* Am. Compl. at ¶¶ 38-61 ("Yale University's Troubling History of Protecting Male Doctors Accused of Sexual Harassment")).  Plaintiffs' Title IX allegations target a number of faculty members.  (*See, e.g.*, Am. Compl. at ¶¶ 82 (allegations that the Department Chair, Dr. Roberta Hines swept allegations under the rug); ¶¶ 87 (allegations that Dr. Adriana Herrera messaged that female staff had to defend themselves rather than relying on Yale to protect them);  ¶ 91  (allegations that the Department Chair, residency coordinator, Associate Dean and Ombudsperson and numerous senior attending physicians were on notice but did nothing to deter the alleged harassment; and alleging an official policy or custom to permit sexual harassment).)

In the Second Count, two of the Plaintiffs assert claims of retaliation in violation of Title IX against the Yale Defendants, based on the alleged failure "to properly investigate their claims of discrimination and sexual assault…and by instigating retaliatory investigative practices." (Am. Compl. at ¶ 225.)   Plaintiff Eltorai's allegations appear to relate to criticism of her work and the decision that she should no longer work in the Intensive Care Unit ("ICU"), and the allegations include the Chair of the Department, Dr. Roberta Hines, and the Director of the Intensive Care Unit ("ICU"), Dr. Hossam Tantawy, as well as Defendant Fontes. (Am. Compl. at ¶¶ 143-147).  This will likely involve proof related to the reasons for such decision, such as poor performance by Plaintiff Eltorai.  As Plaintiff Eltorai admits, one of her ICU cases had been flagged by the YNNH peer review committee, which recommended that Plaintiff Eltorai meet with Dr. Tantawy to discuss "opportunities surrounding transfers." (Am. Compl. at ¶ 145.)  Thus it is clear that a large element of proof with respect to this claim will focus on Plaintiff Eltorai's performance in the ICU.

At best, Plaintiff Castro's allegations relate to the refusal to allow her to use an unapproved trip to Peru to count toward her fellowship requirements.  (Compl. at ¶¶ 119-121.)  This likewise will likely involve proof related to the reasons, and the required process for approval of an external rotation like a trip to Peru as part of fellowship credit; as well as whether this constitutes an adverse employment action.  *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 91-92 (2d. Cir. 2011) (plaintiff claiming retaliation under Title IX must first establish a *prima facie* case: (1) protected activity; (2) knowledge by defendant; (3) adverse action; and (4) causal connection; then the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its action; then

the burden shifts back to plaintiff to demonstrate the articulated reasons are pretextual). As Plaintiffs admit, "[s]pecial rotations outside of the Hospital and the Affiliated Institutions are subject to the prior approval of the Chairman or the departmental residency Program Director and the Director/Associate Dean of Graduate Medical Education (GME)" (Am. Compl. at ¶ 29.)  Thus, this claim will likely involve proof as to the policies and approval (or lack thereof) of the GME with respect to Dr. Castro's request to take a trip to Peru.

While some of these Title IX claims do involve Defendant Fontes as a factual actor, he is not subject to any Plaintiff's Title IX liability claims. The only "liability threat" that Defendant Fontes faces from the federal charges is the indirect problem of possible adverse employment action and reputational damage that might be inflicted upon him by the Yale Defendants if their interests are seen to diverge from his.  In effect, Defendant Fontes is nothing more than an interested witness as far as the Plaintiffs' federal claims are concerned.   The same is not true as to the state-law claims. There, Defendant Fontes is the sole alleged actor and the dole defendant; the Yale Defendants stand completely aside from the case.  And, importantly, the types of proof applicable to the federal claims discussed above are not relevant to the state-law claims brought against Defendant Fontes, and could cause jury confusion or prejudice as to those claims.

Similarly, Defendant Fontes may be a factual witness with respect to the Title VII claims asserted against the Yale Defendants, but he does not face liability.  *See* Section II.C.3, *infra*.  As with the Title IX claims, the Title VII claims focus on an alleged failure to properly investigate and remedy harassing practices and allegedly fostering an environment in which such alleged practices were permitted, condoned, and/or ratified

(Am. Compl. at ¶¶ 233-234); as well as on the above-described alleged retaliation against two of the Plaintiffs. (Am. Compl. at ¶¶238-239.)

The only allegations of legal liability brought against Dr. Fontes are the state-law claims of alleged assault (Fifth Count), battery (Sixth Count), and Invasion of Privacy (Seventh Count), premised largely on allegations that he stood or sat too close to Plaintiffs; kissed them on the lips; or inappropriately touched them on the back or shoulders.[6] (*See, n. 9, infra.*) The claims against Defendant Fontes will require proof of intentional offensive or harmful contact, and that he intentionally intruded, physically or otherwise, upon the Plaintiffs' solitude or seclusion in a manner that is "highly offensive to a reasonable person." (Am. Compl. at ¶¶ 243, 246, 250); see also *Silva v. Warecke*, 2004 WL 192588 at * 4 (Conn. Super. July 23, 2004). The proof needed with respect to the state-law claims is distinct from that needed to prevail against the Yale Defendants under Title IX and Title VII; indeed, it does not even touch upon the Yale Defendants or the other potential actors in the federal claims. These are different cases brought against different actors, and it is inherently unfair, in light of the possible divergence of interest between Defendant Fontes and the Yale Defendants, for the Court to exercise jurisdiction over the claims against Defendant Fontes on the grounds of supplemental jurisdiction alone. It is particularly appropriate to dismiss the case against Defendant Fontes now, when it is in the very early stages of litigation.

As the allegations against Defendant Fontes involve different legal theories, requiring different types of evidence, and are more narrowly targeted than the allegations

---

[6] Defendant Fontes denies these allegations but understands they are taken as true for purposes of deciding this Motion.

against the Yale Defendants; and given that there are no federal law claims against Defendant Fontes and that this case is still in the early stages of litigation, judicial economy, fairness and comity weigh against the exercise of supplemental jurisdiction over these claims. The possibility of divergence between the interests of Defendant Fontes and the Yale Defendants underscores the unfairness of continuing this case against him on supplemental jurisdictional grounds alone.

      2.   *The Court Should Decline Supplemental Jurisdiction Under 28 U.S.C. § 1367(3).*

      In addition, dismissal may be warranted under 28 U.S.C. § 1367(3), which provides that the Court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."   Defendant Yale University has indicated its intention to seek dismissal of Plaintiffs' sex-based employment discrimination and retaliation claims under Title IX.  *See Yale University's Motion for a Telephonic Pre-Filing Conference* dated May 5, 2020 [Doc. No. 36].  Likewise, Defendant YNNH has indicated its intention to seek dismissal of Counts One and Two under Rule 12(b)(6).  *See Yale New Haven Hospital, Inc.'s Motion for Pre-Filing Conference* dated May 5, 2020 [Doc. No. 37]. In the event the existing federal claims are dismissed, dismissal of the state-law claims against Defendant Fontes would be warranted under subsection (3) of 28 U.S.C. § 1367(c).  *See Gray v. Erfe*, 2015 WL 3581230, Civ. No. 3:13-cv-39 (JBA) (D.Conn. June 5, 2015)(declining to exercise supplemental jurisdiction over state law claims after all federal claims were dismissed); *Crispim v. Athanson*,  275 F.Supp.2d. 240, 249 (D.Conn. 2003) (same); *Bonovich v. Knights of Columbus*, 963 F.Supp. 143 (D.Conn.

1997)(same).  In the event the Court dismisses the federal counts of the Complaint, the remaining claims against Defendant Fontes should likewise be dismissed.

### C. Amendment Would be Futile.

Plaintiffs will not be able to amend their Complaint to cure the issues noted herein[7]. Plaintiffs' Amended Complaint asserts that they filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") in December 2019, and subsequently filed charges of discrimination with the Commission on Human Rights and Opportunities ("CHRO") on May 1, 2020.  (Am. Compl. at ¶ ¶ 12, 15.)  They assert that "[w]hen Plaintiffs receive their Release of Jurisdiction from the CHRO, they will seek leave to amend this Amended Complaint…to assert claims…under the [Connecticut Fair Employment Practices Act ("CFEPA")] against all Defendants, including Defendant Fontes for aiding and abetting[8] CFEPA violations."  (Am. Compl. at ¶ 17.)  However, any attempt to amend the Complaint to add a CFEPA claim against Dr. Fontes should fail.  The CHRO charges were not properly filed (despite Plaintiffs' conclusory allegations to the contrary) and Plaintiffs will not be able to state a claim against Dr. Fontes under CFEPA.

First, the CHRO charges against Dr. Fontes filed by Plaintiffs Boles, Castro, Eltorai, and Jodi-Ann Oliver are all time barred.  Second, the CHRO charges, alleging violation of Conn. Gen. Stat. § 46a-60(b)(1) and (8), and under Title VII, fail to state a

---

[7] This section is intended to be a summary, rather than exhaustive, explanation as to why future amendment would be futile.  In the event that such an amendment is filed and permitted, Defendant reserves the right to file a Motion to Dismiss such further amended Complaint.

[8] While Plaintiffs Amended Complaint only references their intent to amend in order to add "aiding and abetting CFEPA violations" [§ 46a-60(b)(5)], their CHRO charges filed on May 1, 2020 included other statutory claims including Title IX, and sections (1) and (8) of Conn. Gen. Stat. § 46a-60(b), as well as subsection (4)(retaliation) only as to Plaintiffs Castro and Eltorai.  Accordingly, this Memorandum addresses why each of these claims would be subject to dismissal, and therefore why further amendment would be futile.

claim against Dr. Fontes because there is no individual supervisor liability under those statutes.  Additionally, Plaintiffs' assertion that they will amend to allege an aiding and abetting claim against Dr. Fontes is futile, as they cannot state a claim under Conn. Gen. Stat. § 46a-60(b)(5) for aider and abettor liability.  Finally, even if there were individual liability under CFEPA for such a claim (there is not), Plaintiffs cannot successfully state a claim hostile work environment.

Even if Plaintiffs could amend their complaint at some point in the future to add claims against Dr. Fontes under CFEPA that could somehow survive dismissal, ***they would still not allege a federal claim against Dr. Fontes***.  Thus, the supplemental jurisdiction claims against Dr. Fontes would still be subject to dismissal, including the CFEPA claim.

### 1.   The CFEPA/CHRO Framework

In order to state a claim under CFEPA, Plaintiffs are first required to exhaust their administrative remedies by filing charges with, and obtaining a release of jurisdiction from, the Commission on Human Rights and Opportunities ("CHRO"); failure to do so implicates the Court's subject matter jurisdiction.  *Grande v. Hartford Board of Education*, Case No. 19-cv-00184 (KAD), 2020 WL 70815 at *2 (D.Conn. Jan. 7, 2020)(failure to obtain a release of jurisdiction from CHRO implicates the Court's subject matter jurisdiction to hear CFEPA claims); *Anderson v. Derby Board of Education*, 718 F.Supp.2d. 258, 272 (D.Conn. 2010); *see also* Conn. Gen. Stat. § 46a-101 ("No action may be brought…unless the complainant has received a release from the commission…").  Moreover, "[w]here a plaintiff has obtained a release for his or her discrimination claims from the CHRO but failed to include a particular defendant in the CHRO complaint, courts of this District have consistently found a lack of subject matter jurisdiction over the claims

as to the unnamed defendant." *Anderson*, 718 F.Supp.2d at 273 (citations omitted)(dismissing defendant who was not a respondent in the CHRO proceeding).

In this case, Plaintiffs sought to meet this requirement initially by filing charges with the EEOC, which was insufficient to initiate proceedings under CFEPA, and then later by filing charges with the CHRO on or after May 1, 2020, which were time-barred with the exception of one allegation by Plaintiff Reinhart and one allegation by Plaintiff Lori-Ann Oliver.

Complainants apparently filed charges with the EEOC on December 4, 2019 and December 5, 2019 alleging violations of Title VII (**not** CFEPA).  (Am. Compl. at ¶ 12.) **Dr. Fontes was not served with any such charges and was not a party to those proceedings.**  *See Affidavit of Manuel Lopes Fontes* dated May 8, 2020, attached hereto as Exhibit B; *Affidavit of Robert B. Mitchell* dated April 28, 2020 [Doc. No. 34-1]. [9]

In May, 2020, Plaintiffs filed charges against Dr. Fontes with the CHRO.  (Am. Comp. at ¶ 15.)  These are the first charges filed against and served on Dr. Fontes with any agency; they allege that Dr. Fontes has violated Title VII and the above-referenced sections (1), (5), and (8), and with respect to Plaintiffs Castro and Eltorai, section (4), of CFEPA § 46a-60(b), based on discrete incidents of alleged harassment in 2016, 2018, and the summer and fall of 2019.[10]

---

[9] Defendant submits these affidavits in support of their jurisdictional assertions.  The Court may refer to evidence outside the pleadings in resolving a challenge based on lack of subject matter jurisdiction. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Defendant also reserves the right to file a Motion to Dismiss any future amendment to the Complaint.  The Affidavit of Manuel Lopes Fontes was executed prior to the CHRO's service of the charges filed by Plaintiffs with the CHRO on or about May 1, 2020 (Am. Compl. at ¶ 15).  It is being submitted to show that as of the date of its execution, May 8, 2020, Defendant Fontes had not been served with any "dual filed" charges Plaintiffs assert were filed in December 2019.

[10] Plaintiffs' Amended Complaint includes additional allegations, apparently in an attempt to resurrect untimely claims.  However, an examination of the specific allegations in the Amended Complaint makes

    2.   *Plaintiffs Castro's, Eltorai's, Boules, and Jodi-Ann Oliver Charges Are All Time Barred.*

Prior to amendment in 2019, the CFEPA required that claims be brought within 180 days of the occurrence of the alleged discriminatory event.   This was changed by the legislature in 2019 so that claims arising after October 1, 2019 would have a 300-day statutory filing period applied, while those occurring before that date would be considered only under the previous 180-day limitations restriction.  See Conn. Gen. Stat. § 46a-82(f)[11]. With the sole exception of one allegation by Complainant Reinhart and one allegation by Lori-Ann Oliver, both pertaining to a conference in Orlando, Florida in October 2019, all of the claims of alleged harassment by all Complainants took place prior to October, 2019

---

clear these claims are time-barred.  In summary, Plaintiff Boules alleges Dr. Fontes sat too close to her at a dinner in late-2017; touched her arm, leg and thigh at a dinner in mid-2018; attempted to kiss her at a lunch in 2018 and again days later; hugged her in July 2019; and put his cheek to whisper to her in the operating room in September 2019.  (Am. Compl. ¶¶ 98, 99, 104-106.)  Plaintiff Castro alleges that in August-fall of 2018 he stood too close to her and touched her shoulders and waist in the operating room.  (Am. Compl. at ¶¶ 111, 113.)  Plaintiff Eltorai alleges an inappropriate comment about her flat stomach in September 2018; a dinner in June 2019 at which Dr. Fontes allegedly told her she looked good, attempted to spoon feed her while she was holding her newborn, and invited her to go out for drinks; a meeting where he sat too close to her and then hugged her in July 2019; a neck massage in July 2019; and that he stood too close and touched her shoulder in August 2019.  (Am. Compl. at ¶¶ 127, 128, 149, 150-158.)  The Oliver Plaintiffs allege, between the two of them, unwanted touching and hugging in a retreat in 2016 (Jodi-Ann Oliver); a dinner in mid-2018 where Dr. Fontes allegedly rubbed Jodi-Ann Oliver's arm and back and whispered inappropriate comments about her figure and health; a dinner in April 2019 where he allegedly flirted with Jodi-Ann Oliver and kissed both Olivers; and that he grabbed Lori-Ann Oliver around the waist in the fall of 2018.  (Am. Compl. at ¶¶ 169, 176-185.)  Plaintiff Lori-Ann Oliver further alleges one incident in October 2019 at a conference in Orlando, Florida, where Dr. Fontes allegedly squeezed her shoulder and put his hand on her back and around her waist.  (Am. Compl. at ¶ 186.)  Plaintiff Reinhart alleges that Dr. Fontes tried to kiss her goodbye after a dinner in May 2019; had stood too close to her and put his arm around her to look over at a patient in the operating room prior to that; flirted with her and ogled her at a graduation ceremony in June 2019; and massaged her neck in July 2019.  (Am. Compl. at ¶¶ 190-193, 196-202).  She also alleges that he linked his arm with hers at a conference in Orlando, Florida in October 2019. (Am. Compl. at ¶ 211.)  While Dr. Fontes denies these allegations of inappropriate conduct, even taken as true, they are not sufficient to state a claim against him.

[11] Conn. Gen. Stat. § 46a-82(f) provides in relevant part that:  "Any complaint filed pursuant to this section shall be filed within one hundred and eighty days after the alleged act of discrimination, except that any complaint by a person….claiming to be aggrieved by a violation of section 46a-60…that occurred on or after October 1, 2019, shall be filed not later than three hundred days after the date of the alleged act of discrimination."

and so fell within the 180-day limitations period rule. All but that single claim by Plaintiffs Reinhart and Lori-Ann Oliver are time-barred by the 180-day rule and should be dismissed.[12]

Plaintiffs, apparently attempting to argue that their claims are not time-barred, assert that their charges were filed in December 2019 with the EEOC. (Am. Compl. at ¶12.) They contend, in a conclusory fashion, that the EEOC filing was, in fact, a cross filing with the CHRO. (Am. Compl. at ¶ 13.) With respect to Defendant Fontes, they are mistaken. Under the 2019 EEOC/CHRO Work-Sharing Agreement, (a copy is attached to the Affidavit of Reese Mitchell submitted herewith as Exhibit C), filing with the EEOC suffices to constitute a filing of all Title VII claims (*i.e*, **not** CFEPA claims). EEOC filings, however, do not cover allegations that a Respondent party has violated the "aiding and abetting" prohibitions of Conn. Gen. Stat. § 46a-60(b)(5), or any other portion of CFEPA for that matter. The Plaintiffs' December filings with the EEOC did not interrupt the running of the statutory limitations period respecting the Plaintiffs' charges against Defendant Fontes; those charges, excepting the two Reinhart and Lori-Ann Oliver allegations, all fell before October 1, 2019, are time-barred and should be dismissed.

Analysis of what the Work-Sharing Agreement does and does not do must start with consideration of the enabling statutes. Title VII, the ADEA, the ADA and GINA all provide for the EEOC to establish working agreements with corresponding state fair employment practices enforcement agencies by which filings for relief under the federal statutes can be made to the state agency. Such a filing will be considered to be a simultaneous filing with the EEOC. The reverse is not true, however; at least not in

---

[12] The specific charges of misconduct are delineated *supra* at n. 10.

Connecticut.  There is no provision in the State statutes that allows the CHRO to farm out the filing and handling of CFEPA charges. [13] This is effectively the end of the issue, but analysis of the Work-Sharing Agreement's language reinforces this conclusion, especially with respect to alleged "aiding and abetting" individual liability.

Agreement section II.A. states that, "[t]he EEOC's receipt of charges on the FEPA's[14] behalf will automatically initiate the proceedings of both the EEOC and the FEPA for purposes of Section 706(c) and (e)(1) of Title VII…."  Charges that can be initially processed are delineated in Agreement section III.A.1.  The only CFEPA claims EEOC may process are those Title VII/EPA[15] charges that are "concurrent".  That would most certainly not include charges brought under CFEPA 's aiding and abetting clause, for which no corresponding Title VII provision exists. Finally, Work-Sharing Agreement section III.A.2. provides that the CHRO is charged with initially processing, "[a]ll charges that allege more than one basis of discrimination where at least one basis is not covered by the laws administered by the EEOC but is covered by the FEPA Ordinance…."  The charges in this case fall squarely into this last category, since the aiding and abetting claims against Defendant Fontes are not covered by Title VII or any other law that is administered by EEOC.  *See* discussion of Title VII individual liability, *infra*.  No reasonable argument can be made that the Work-Sharing Agreement or the supporting statutory authority gave the EEOC power to accept or hear any claim that might have been made against Defendant Fontes under the CFEPA aiding and abetting clause.

---

[13] Neither is there any regulatory provision allowing for filing CFEPA charges with the EEOC.  *See* Sec. 46a-54-36a.

[14] In the Work-Sharing Agreement, CHRO is referenced as the FEPA.

[15] In the Agreement, CFEPA is referenced as "EPA".

This conclusion matches the ruling of courts that have heard this issue.  *See Edwards v. William Raveis Real Estate, Inc.*, Case No. 08-cv-1907 (JCH), 2009 WL 1407233 at *3-4 (D.Conn. May 19, 2009)(reading the Work -Sharing agreement to limit automatic initiation of a CHRO claim upon filing with the EEOC to Title VII claims); *Cenac v. Department of Mental Health and Addiction Services*, 2018 WL 8731549 (D.Conn. Feb. 28, 2018)("plaintiff cites no case in which the filing of an EEOC charge constituted a filing with the CHRO as well.  Indeed, prior cases in this district stand for the proposition that under past CHRO-EEOC worksharing agreements, the filing of an EEOC charge does not constitute the filing of a charge with the CHRO as well", *citing  Aukstolis v. AHEPA 58/Nathan Hale Senior Ctr*, 2007 WL 1341235 at *4; *Garcia v. Saint Mary's Hosp.*, 46 F.Supp.2d 140, 142-143 (D. Conn. 1999); and *Brewer v. Wilcox Trucking, Inc.,* 1997 WL 688778 at *3 (D. Conn. Sept. 26, 1997)); s*ee also Wellington v. Norwalk Hospital*, Case. No. 3:18-cv-02143 (WWE), 2019 WL 247578 (D.Conn. June 13, 2019) (an EEOC right-to-sue letter is not sufficient to satisfy the exhaustion requirements of the CFEPA).

Accordingly, no current CFEPA claim against Defendant Fontes can be held to have related back to the Plaintiffs' December 2019 EEOC filing.  Plaintiffs' present charges against Defendant Fontes must stand on their own; and they cannot.  They are time barred with the sole already noted exceptions applicable to Dr. Reinhart and Dr. Lori-Ann Oliver.  Any attempted amendment to assert CFEPA claims against Defendant Fontes by any of the other Plaintiffs would be futile as time-barred.  *See Miller v. Ethan Allen Global, Inc.*, Civ. No. 3:10-CV-1701 (JCH), 2011 WL 3704806 (D.Conn. Aug 23, 2011)(employee cannot recover for employer's acts that occurred prior to the deadline for filing under §

46a-82(f); but noting exceptions for waiver and equitable tolling); *Alvarez v. City of Middletown*, 2018 WL 1785544 at * 9, n.2 (Conn. Super. March 16, 2018) (finding that any cause of action arising from conduct occurring before the § 46a-82(f) prescribed period for filing was time barred); *Nelson v. City of Bridgeport*, 2012 WL 4902812 at * 6 (Conn. Super. Sept. 27, 2012) (same); *Tosado v. State*, 2007 WL 969392 (Conn. Super. March 15, 2007) at * 2 (courts can properly decline to consider allegations that occurred more than 180 days before the date that the plaintiff filed a complaint with the CHRO); *Kahn v. Fairfield University*, 357 F.Supp.2d 496, 503 (D.Conn. 2005) (finding CFEPA claims time barred).

### 3.  *The Plaintiffs Do Not State A Title VII Claim Against Dr. Fontes.*

Plaintiffs assert that the allegedly "dual filed" charges include a claim against Defendant Fontes for violation of Title VII.  (Am. Compl. at ¶ 12.)  This contradicts Plaintiffs' previous filing in this case in which they acknowledge that individual liability does not lie under Title VII.  *See* Plaintiffs' April 27, 2020 Letter [Doc. No. 32].  In their letter, Plaintiffs acknowledged that, while individual liability may lie under subsection (5) of 46a-60(b), individual liability would **not** lie against Dr. Fontes under Title VII: "***Unlike Title IX or Title VII,*** individuals, such as Defendant Fontes, may be held liable under CFEPA.  *Id.;* see, e.g., Conn. Gen. Stat. §46a-60(b)(5)."  (*See* Doc. No. 32.)  Even without Plaintiffs' admission that no Title VII liability attaches to Defendant Fontes, it is clear from applicable precedent that such is true.

The Second Circuit has held that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII".  *Tomka v. Seiler Corp*., 66 F.3d 1295, 1317 (2d. Cir. 1995) *abrogated on other grounds*, *Burlington Ind. v. Ellerth*,

524 U.S. 742 (1998); *see also Miner v. Town of Cheshire*, 126 F.Supp.2d 184, 200 (D.

Conn. 2000)(same); *Grey v. City of Norwalk Bd. of Educ.*, 304 F.Supp.2d 314, 322 (D.

Conn. 2004)(a Title VII claim cannot be brought against individual supervisory employees,

but only against the employer itself); *Bolick v. Alea Group Holdings, Ltd.*, 278 F.Supp.2d

278, 281 (D. Conn. 2003)(noting there is no individual liability under Title VII); *Levin v*

*New Haven Bd. of Educ.*, 2006 WL 8448012 at * 3 (D. Conn, Dec. 8, 2006)(same).

Complainants cannot state a claim against Dr. Fontes under Title VII, and any further

amendment to the Amended Complaint asserting such would be subject to dismissal.

      4.    *Complainants Cannot State a Claim Under 46a-60 (b)(1) or (b)(8) As There Is No Individual Supervisor Liability Under These Sections.*

Nor can Plaintiffs state a claim against Defendant Fontes under subsections (1) and

(8) of § 46a-60(b) of CFEPA. It is well established that there is no individual liability

under these Sections.

Conn. Gen. Stat. 46a-60(b) provides in relevant part that "[i]t shall be a

discriminatory practice in violation of this section:

> (1)    **For an employer**, by the employer or the employer's agent … to … discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex….

> (8)    **For an employer,** by the employer or the employer's agent …to harass any employee, person seeking employment or member on the basis of sex or gender identity or expression…..As used in this subdivision, 'sexual harassment' means any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (A) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (B) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.

(Emphasis added).

Defendant Fontes is not an employer of any of the Plaintiffs.  Pursuant to Conn. Gen. Stat § 46a-51, "'Employer' includes the state and all political subdivisions thereof and means any person or employer with three or more persons in such person's or employer's employ."   Plaintiffs have alleged that "Dr. Fontes is an employee of and supervisor at Yale University and Yale New Haven Hospital, Inc."  (Am. Compl. at ¶ 37.) While they allege in a conclusory fashion that "thus, Dr. Fontes meets the definition of "employer" under all relevant statutes" (*id*. at 37), it is clear from the face of the definition above that that is not the case.   Insofar as a supervisor is not included in the definition of "employer", Dr. Fontes is not an employer under CFEPA, and thus cannot be liable under subsections (1) or (8) of the statute by the terms of these sections.

In fact, the Connecticut Supreme Court has expressly held that there is no individual supervisor liability under subsection (1).  *Perodeau v. City of Hartford*, 259 Conn. 729, 744 (2002)("we conclude that § 46a-60a(a)(1) [now 46a-60(b)(1)] does not impose liability on individual employees")[16]; *see also Mercer v. Brunt*, 272 F.Supp.2d 181, 188 (D. Conn. 2002)(finding no individual liability in reliance on *Perodeau*); *Grey v. City of Norwalk Bd. of Educ*., 304 F.Supp.2d 314, 328 (D. Conn. 2004)(same); *Schaefer v. General Elec. Co*, 2008 WL 2001244 at *3 (D.  Conn. May 8, 2008)(same); *Levin v. New Haven Board of Education,* 2006 WL 8448012 (D. Conn. Dec. 8, 2006)(same); *Miner v. Town of Cheshire*, 126 F.Supp.2d 184, 203-204 (2000) (there is no individual supervisory liability under sections 46a-60(a)(1)[now 46a-60(b)(1)]); *Barclay v. Michalsky*, 451 F.Supp.2d 386, 401, fn 1 (D. Conn. Sept. 12, 2006)(same).

---

[16] The Court in *Perodeau* relied in part on federal court authority interpreting the "agent" provision in 42 U.S.C. § 2000e and holding that the purpose of this language was not to create individual liability, but rather to incorporate respondeat superior liability into the statute.  259 Conn. at 739-741.

Likewise, there is no individual supervisor liability under subsection (8) of the statute:

> "The legislature, by failing to extend liability expressly to 'persons' in sections 46a-60(a)(1) and (8) and instead limiting liability in that section, did not intend to hold employees, whether supervisory or not, individually liable.  Moreover, the fact that the Connecticut legislature extended liability to 'any person' in other sections of CFEPA, but did not do so in sections 46a-60(a)(1) and (8) is significant.  Accordingly, section 46a-60(a)(1) and (8)[17] do not provide for individual supervisory liability."

*Miner v. Town of Cheshire*, 126 F.Supp.2d 184, 203-204 (D.Conn., 2000); *see also Bolick v. Alea Group Holdings, Ltd.*, 278 F.Supp.2d 278, 281-282 (D. Conn. 2003)(as (1) and (8) refer to an "employer" specifically, they create no individual supervisory liability); *Denault v. Community Mental Health Affiliates*, 2017 WL 1240435 at * 4 (Conn. Super. Jan. 25, 2017) (no individual liability created by 46a-60(a)(8)).  Accordingly, any amendment by Plaintiffs seeking to add CFEPA claims under § 46a-60(b) (1) and (8) would be subject to dismissal and thus futile.[18]

     5.     *The Plaintiffs Cannot State A Claim Under 46a-60 (b)(5).*

In contrast to subsections (1) and (8), subsection (5) of § 46a-60(b) provides that it shall be a discriminatory practice "*for any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or attempt to do so.*" (Emphasis added.)[19]  However, Plaintiffs cannot

---

[17] The 2017 amendment to this statute re-lettered these sections to become 46a-60(b)(1) and (b)(8).

[18] Nor can Plaintiff Eltorai state a claim against Defendant Fontes for pregnancy discrimination under subsection (7) of 46a-60(b), as this, section, like subsections (1) and (8), applies on its face only to employers.  Subsection (7) provides in relevant part that it shall be a discriminatory practice "For an employer, by the employer or the employer's agent…to discriminate against an employee…on the basis of her pregnancy in the terms or conditions of her employment."

[19] While subsection (4) governing retaliation claims under CFEPA also provides for individual liability, as stated earlier, the only retaliation claims are brought by Plaintiffs Castro and Eltorai and are time-barred as to Dr. Fontes.  Conn. Gen. Stat. § 46a-60(b)(4) provides in relevant part that it shall be a discriminatory practice:  "(4) For any person, employer, labor organization or employment agency to discharge ,expel or otherwise discriminate against any person because such person has opposed any discriminatory practice or

allege a claim for aiding and abetting in this case, because the claims against Defendant

Fontes involve allegations that he, himself, sexually harassed Plaintiffs. The courts have

held that a sole alleged harasser cannot be held to have "aided and abetted" himself.  As

Defendant Fontes is the only actor who the Plaintiffs in this case claim allegedly engaged

in sexually harassing them, he cannot be held liable for aiding and abetting his own actions.

*See Bolick v. Alea Group Holdings, Ltd*., 278 F.Supp.2d 278, 282 (D. Conn. 2003).

In *Bolick*, *supra*, the plaintiff brought claims for gender discrimination and sexual

harassment in violation of CFEPA against her supervisor.  The court dismissed the claims

for gender discrimination and sexual harassment under CFEPA, finding that there was no

individual liability for those claims, as discussed above.  The court likewise dismissed the

aider and abettor claim under subsection (5), finding that one cannot aid and abet his own

wrongful conduct.   The court noted that the dictionary defines "abettor" as "a person who

abets (incites or encourages) *an offender*." *Id*. at 282.  The court noted "it is a term of art

meaning to *assist the perpetrator* of the crime while sharing the requisite intent." *Id*. at

282.  Finally, the court went on to note that:

> "To apply the aiding and abetting provision of CFEPA against an employee
> who was the sole perpetrator of the alleged harassment would produce an
> illogical result.   'Such an application creates a strange and confusing
> circularity where the person who has directly perpetrated the harassment
> only becomes liable through the employer whose liability in turn hinges on
> the conduct of the direct perpetrator.'"

---

because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82,
46a-83 or 46a-84."  Plaintiff Eltorai complains about her removal from the ICU in August 2019 (Am. Compl.
at ¶ 143.)  While Plaintiff Eltorai complains of retaliation after October 1, 2019, none of those allegations are
against Dr. Fontes.   (Am. Compl. ¶¶ at 161-164.) Plaintiff Castro complains about Dr. Fontes telling her she
could not use an unapproved trip to Peru to fulfill her fellowship requirements, in July and August 2019.
(Am. Compl. at ¶ 119.)  These claims against Dr. Fontes are time barred.

*Bolick v. Alea Group Holdings, Ltd*., 278 F.Supp.2d 278, 282 (D. Conn. 2003); *see also, Bates v. City of Bristol*, 2018 WL 1472523 at *7 (D. Conn.  Mar. 26, 2018) (dismissing aiding and abetting claim where alleged harasser could not aid and abet himself); *Denault v. Community Mental Health Affiliates*, 2017 WL 1240435 at *5 (Conn. Super. Jan. 25, 2017) (same).   Accordingly, any further amendment by Plaintiffs to allege a claim for aiding and abetting would be subject to dismissal.

> 6.       *Even If There Were Individual Liability, and Even If Plaintiffs' Charges were Timely, Plaintiffs Cannot State a Claim for Hostile Work Environment.*

As shown herein, and CFEPA claim of sexual harassment is time-barred, and there is no individual liability against Fontes under CFEPA.  Even were this not the case, however, Plaintiffs would still fail to state a claim for sexual harassment under CFEPA. To establish a sexual harassment claim based on hostile work environment, a plaintiff must show "the workplace…permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Brittell v. Dept. of Correction*, 247 Conn. 148, 166-67 (1998); *see also, Denault v. Community Mental Health Affiliates,* 2017 WL 1240435 at *3 (J.D. of Waterbury, January 25, 2017).  "In order to be actionable…a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so…"  *Brittell* at 167; Denault at *3.  "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive…Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."  *Denault* at *3, *citing, Alfano v. Costello*, 294 F.3d 365, 374 (2d.Cir. 2002)).  "In short, a plaintiff alleging a hostile work environment must demonstrate either

that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Denault* at *3.

Plaintiffs' allegations here simply to do not meet this standard. As set forth above, each Plaintiff alleges a limited number of discrete incidents, primarily allegations of standing too close, touching shoulders, back or waist, or an occasional hug or kiss as greetings or goodbyes at social gatherings, all spaced out over the course of years. Accordingly, even if Defendant Fontes could be held individually liable under CFEPA or Title VII for such a claim (he cannot) and even if these claims were timely brought (they were not), Plaintiffs would still not be able to make out a claim for hostile work environment, and any such amendment would be clearly futile.

For each of these reasons, Plaintiffs will not be able to further amend the Complaint to address the issues raised by this Motion.

## III.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant Fontes requests that this Court decline to exercise supplemental jurisdiction over the state-law claims against him, and dismiss the Fifth, Sixth and Seventh Counts of the Complaint.

THE DEFENDANT

By:   /s/ Aimee J. Wood
Robert B. Mitchell (ct02662)
Reese B. Mitchell (ct30226)
Aimee J. Wood (ct18702)
Mitchell & Sheahan, P.C.
999 Oronoque Lane, Suite 203
Stratford, CT 06614
203-873-0240
203-873-0235 (fax)
awood@mitchellandsheahan.com
Counsel for Manuel L. Fontes, M.D.

25

## <u>CERTIFICATION</u>

I hereby certify that on June 17, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be served by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/ Aimee J. Wood*
Aimee J. Wood (ct18702)