**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MIA CASTRO, M.D., HEIDI BOULES, M.D., ASHLEY ELTORAI, M.D., JODI-ANN OLIVER, M.D., LORI-ANN OLIVER, M.D. and ELIZABETH REINHART, M.D., | : : : : : |
| Plaintiffs | : Civil Action No. 3:20-CV-00330-JBA : |
| v. | : : |
| YALE UNIVERSITY, YALE NEW HAVEN HOSPITAL, INC., and MANUEL LOPES FONTES, M.D. in his individual and professional capacities, | : : : : |
| Defendants. | : JUNE 18, 2020 : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT YALE NEW HAVEN HOSPITAL, INC.'S MOTION TO DISMISS COUNTS ONE THROUGH FOUR OF PLAINTIFFS' AMENDED COMPLAINT**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Rule 7(a) of the Local Rules of this Court, and the prefiling conference held before the Court on May 13, 2020, Yale New Haven Hospital, Inc. ("YNHH"), by and through its attorneys, Jackson Lewis P.C., hereby respectfully submits this Memorandum of Law in support of its Motion to Dismiss Counts One through Four of the Amended Complaint filed by Mia Castro, M.D., Heidi Boules, M.D., Ashley Eltorai, M.D., Jodi-Ann Oliver, M.D., Lori-Ann Oliver, M.D., and Elizabeth Reinhart, M.D. (collectively, "Plaintiffs") on May 29, 2020.

In their Amended Complaint, Plaintiffs allege that YNHH discriminated against them on the basis of sex, including sexual harassment, under Title IX of the Education Amendments Act of 1972 ("Title IX") and Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts One and

1

Three); Plaintiff Eltorai alleges that YNHH discriminated against her based on her then-pregnancy under Title VII (Count Three); and Plaintiffs Castro and Eltorai allege that YNHH retaliated against them due to prior protected activity under Titles IX and VII (Counts Two and Four).  Dismissal is appropriate for the following reasons.  With respect to the Title IX claims:

1. All Title IX claims fail because Title IX does not apply to YNHH, an entity not principally engaged in the business of education;

2. The Title IX claims of Plaintiffs Boules, Eltorai, Jodi-Ann Oliver, and Lori-Ann Oliver fail because these Plaintiffs' relationships to an education program or activity are too attenuated to entitle them to coverage;

3. All Title IX claims fail because Title IX does not provide a private remedy for employment discrimination based on sex;

4. All Title IX claims fail because Plaintiffs have not established that YNHH was on "actual notice" of alleged wrongdoing; and

5. The Title IX claims of Plaintiffs Eltorai and Castro fail because these Plaintiffs have not alleged engagement in protected activity, or an adverse employment action to sustain a Title IX claim;

With respect to the Title VII claims:

6. Plaintiff Eltorai's Title VII pregnancy discrimination claim fails because she does not allege any adverse employment action; and

7. Plaintiffs Eltorai's and Castro's Title VII retaliation claims fail because these Plaintiffs do not allege engagement in any protected activity, or adverse employment actions.[1]

In sum, despite Plaintiffs' 251-paragraph 62-page Amended Complaint, they fall

---

[1] In addition to the listed reasons for dismissal, Plaintiffs cannot sustain a hostile work environment claim against YNHH under Title VII because a vast majority of Plaintiffs' allegations, brought before the EEOC for the first time in December 2019, fall outside of the 300-day statute of limitations for bringing such claims.  (*See* Am. Compl., ¶¶ 12, 98-101, 104-05, 111-16, 127-31, 149-53, 169, 172, 176-77); *Hoffman v. Williamsville Sch. Dist.*, 443 Fed. Appx. 647, 649, 649 n.1 (2d Cir. 2011) (affirming district court's dismissal of Title VII hostile work environment claim, where almost all allegations took place outside of the limitations period).  Plaintiff Jodi-Ann Oliver and the other Plaintiffs also cannot sustain a Title IX claim of hostile educational environment against YNHH, where their allegations fall outside of the three-year statute of limitations for bringing such claims.  (*See* Am. Compl., ¶¶ 112, 168-72, 184, 191); *Curto v. Edmundson*, 392 F.3d 502, 504 (2d Cir. 2004) (per curiam) (affirming dismissal of Title IX claim because the allegations fell outside out of the three-year statute of limitations and were, thus, time-barred).

woefully short of stating even one legally cognizable claim of discrimination or retaliation against YNHH. Counts One to Four against YNHH should be dismissed.

## I.   Relevant Factual Allegations[2]

### A.   Relationships among the Parties

Plaintiffs Boules, Eltorai, Jodi-Ann Oliver, and Lori-Ann Oliver ("Attending Physician Plaintiffs") were and are currently employed by Yale University as assistant professors of anesthesiology. (Am. Compl., ¶¶ 21, 23-25). They are also all attending physicians with privileges to work at YNHH. (*Id.*). They are not students of YNHH. (*See id.*). Plaintiff Castro is a pediatric anesthesiology fellow employed by YNHH. (Am. Compl., ¶ 22). Plaintiff Reinhart is an anesthesiology resident employed by YNHH. (Am. Compl., ¶ 26). Plaintiffs Castro and Reinhart "signed employment agreements with YNHH." (Am. Compl., ¶ 209).

YNHH is a teaching hospital affiliated with Yale University. (Am. Compl., ¶ 29). While YNHH "operate[s] a medical residency and subspecialty fellow program," Plaintiffs acknowledge that YNHH "is principally engaged in the business of providing health care." (Am. Compl., ¶¶ 29, 31). Co-defendant Manuel Fontes is a professor of anesthesiology employed by Yale University. (Am. Compl., ¶ 37).

### B.   Plaintiffs Do Not Allege Protected Activity That Put YNHH on Notice of Any Alleged Wrongdoing, and Do Not Allege Any Adverse Employment Action.

There are no allegations in the Amended Complaint that Plaintiffs engaged in protected activity that notified YNHH (let alone anyone in YNHH's human resources or management) of any alleged wrongdoing by Dr. Fontes. Instead, the allegations all concern alleged reports to

---

[2] For purposes of this motion only, YNHH accepts as true all factual allegations in the Amended Complaint, in accordance with the Federal Rules of Civil Procedure. In submitting this motion, YNHH does not concede any of Plaintiffs' factual allegations or legal conclusions.

Yale University or generic statements without any factual amplification as to whom complaints were made or what the alleged complaints even concerned.  Nor does the Amended Complaint contain any allegations that YNHH took an adverse employment action against any Plaintiff.  While the Amended Complaint is replete with extraneous allegations that do not concern Plaintiffs or YNHH in any way,[3] the relevant factual allegations on the above points are summarized as follows.

### 1. Plaintiff Boules Made No Complaint to Anyone Whatsoever.

Plaintiff Boules fails to identify any complaints she made whatsoever.  (Am. Compl., ¶¶ 94-109).  She alleges she sent an email to Alan Friedman, YNHH's Chief Medical Experience Officer, in August 2019, telling him she had "'[s]omething rather serious'" she wanted to discuss with him, but does not allege anything more that could have arguably put him on notice of harassment.  (Am. Compl., ¶ 108).

### 2. At Best, Plaintiff Castro Complained Once to Yale University, not YNHH, and Faced No Adverse Action.

As for Plaintiff Castro, she alleges she anonymously complained to an unidentified person on some unidentified day after mid-August 2018 about Dr. Fontes' alleged touching of colleagues, he somehow guessed that Plaintiff Castro was the author of the complaint, and he retaliated against her in some unidentified way.  (Am. Compl., ¶¶ 113, 117-18).  Plaintiff Castro also alleges that Dr. Fontes retaliated against her in July/August 2019 by hesitating to support her

---

[3] For example, the Amended Complaint alleges, at length, that Yale University, not YNHH, has purportedly protected male doctors accused of sexual harassment dating back to *1994*, which is twenty-two years before the earliest allegation that any Plaintiff even makes.  (Am. Compl., ¶¶ 38-66, 169).  These allegations against Yale University relate to Drs. Michael Simons, Joseph Schlessinger, Rex Mahnensmith, and Eugene Richmond, against whom none of the Plaintiffs have lodged a single allegation.  (Am. Compl., ¶¶ 42-56).  Moreover, the Amended Complaint makes irrelevant and inflammatory allegations about Dr. Fontes' jobs at Cornell University and Duke University, which do not relate to Plaintiffs' claims, and about his actions towards Drs. X and Y, who are not Plaintiffs.  (Am. Compl., ¶¶ 63-88).

4

going on a mission trip because he believed the trip would prevent her from meeting her fellowship requirements, after she complained in August 2019 to "floor runners" at work about his alleged discrimination.  (Am. Compl., ¶¶ 118-19).  Plaintiff Castro admits that Dr. Fontes ultimately did not prevent her from going on the mission trip, and she went on the trip.  (Am. Compl. ¶ 124).  Finally, Plaintiff Castro alleges making a sexual harassment complaint to Yale University, not YNHH, in August 2019.  (Am. Compl., ¶ 208).

### 3. Plaintiff Eltorai Made Complaints to Yale University (not YNHH) and Encountered No Adverse Action.

In support of her pregnancy discrimination claim, Plaintiff Eltorai alleges that Dr. Fontes made a pregnancy-based comment to her in September 2018 and was hesitant in October 2018 to support her starting a research project because she would be out on maternity leave the following year.  (Am. Compl., ¶¶ 127-28, 30-31).  Plaintiff Eltorai was allegedly out on maternity leave from about May 1, 2019 until mid-June 2019.  (Am. Compl., ¶¶ 127, 143).

As for her retaliation claim, Plaintiff Eltorai alleges that, after she complained to Yale University (not YNHH) in October 2018 and January 2019 about Dr. Fontes' treatment of her, she was counseled for poor performance in February 2019, and after she made another discrimination complaint on August 15, 2019 to Yale University, she was counseled for poor performance and transferred out of the Intensive Care Unit ("ICU") by Yale University later that month.  (Am. Compl., ¶¶ 132, 134, 136, 139, 143-44).  She concedes that, when she started in the position in 2017, she had "almost no experience" in the ICU area she would be working in; she attended a month-long individualized training in September 2018 to give her the chance to improve her work performance; she was counseled for poor performance only after failing to show improvement; and she was ultimately transferred out of the ICU in August 2019 due to

5

management's concerns of her poor performance.  (Am. Compl., ¶¶ 139-40, 143, 147).  Plaintiff Eltorai also alleges, for the first time in her Amended Complaint, that she was retaliated against after she filed the instant lawsuit in March 2020 when she had trouble in May 2020 to be permitted by Yale University to work extra volunteer shifts.  (Am. Compl., ¶¶ 161-64).

### 4. Plaintiff Jodi-Ann Oliver Vaguely Complained One Time to Yale University, Not YNHH, and Plaintiff Lori-Ann Oliver Once Casually Mentioned Dr. Fontes' Conduct to Yale University, Not YNHH.

Plaintiff Jodi-Ann Oliver alleges she complained about Dr. Fontes' conduct only to Yale University management, rather than YNHH managers.  (Am. Compl., ¶¶ 171-72, 175).  She vaguely claims these complaints occurred at an unidentified point in or after 2016, and then "[s]ometime in 2017" and in May of 2018.  *Id.*

Plaintiff Lori-Ann Oliver makes only one allegation that she complained about Dr. Fontes' conduct in or around Fall 2018.  (Am. Compl., ¶ 184).  She claims that, in passing, she casually "mentioned" his alleged touching of her to the Division Chief of Pain Management at Yale University.  *Id.*

### 5. Plaintiff Reinhart's Complaints Were Only Made to Yale University, Not YNHH.

Plaintiff Reinhart alleges that Yale University managers were told about Dr. Fontes' conduct in about June 2019.  (Am. Compl., ¶ 201).  She further alleges that she followed up and made complaints to Yale University herself in July and August 2019.  (Am. Compl., ¶¶ 203-04, 208).

## III. Procedural and Administrative Background

On December 4, 2019, Plaintiffs Castro, Boules, Eltorai, and Reinhart each filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), asserting that

YNHH and Yale University discriminated against them in violation of Title IX based on their sex, including sexual harassment.  Plaintiffs Castro and Eltorai additionally asserted in their complaints that YNHH and Yale University retaliated against them due to their discrimination complaints.  On December 5, 2019, Plaintiffs Jodi-Ann Oliver and Lori-Ann Oliver each filed a complaint, asserting that YNHH and Yale University discriminated against them in violation of Title IX based on their sex, including sexual harassment.  By December 6, 2019, the EEOC had received all Plaintiffs' Charges.  At that time, Plaintiffs did not file any complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO").[4]

## IV.   <u>Legal Analysis</u>

### A.   **Standard for Motion to Dismiss**

"The function of a motion to dismiss is merely to assess the legal feasibility of the complaint."  *Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 775, 779 (2d Cir. 1984) (internal quotation marks and citation omitted).  In evaluating a motion to dismiss under Rule 12(b)(6), the district court must construe the complaint liberally, accepting as true all factual allegations set out in a plaintiff's complaint and drawing all reasonable inferences in plaintiff's favor.  *See Grullon v. New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

However, "a complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."  *DeJesus v. Sears, Roebuck & Co., Inc.*, 87 F. 2d 65, 70 (2d Cir. 1996).  Stated a different way, although "legal conclusions can

---

[4] On March 12, 2020, Plaintiffs filed a complaint, asserting only Title IX claims against YNHH.  In the pre-filing teleconference on the defendants' anticipated motions to dismiss, Plaintiffs' counsel admitted that he had thought Plaintiffs' EEOC complaints had been automatically dual-filed with the CHRO without affirmative action from Plaintiffs.  On May 1, 2020, Plaintiffs (considered Complainants at the CHRO) submitted to the CHRO, for the first time, their CHRO complaints.  In response to each CHRO complaint, on June 15, 2020, YNHH filed a general denial and a position statement, asserting that Plaintiffs' state claims were untimely and should be dismissed.

provide the framework of a complaint, they must be supported by factual allegations." *Hutchison v. CBRE Realty Finance, Inc.*, 638 F. Supp. 2d 265, 270 (D. Conn. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)).  A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (internal citation omitted).  Thus, a motion to dismiss is properly granted when "it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations*." Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2d Cir. 1985).

**B.     Plaintiffs' Title IX Claims against YNHH (Counts One and Two) Fail Because Title IX Does Not Apply to YNHH, an Entity Not Principally Engaged in the Business of Education.**

Dismissal of Plaintiffs' Title IX claims (Counts One and Two) is warranted because YNHH is not an education program or activity to which Title IX applies.

Congress' original intent in enacting Title IX was to prohibit sex-based discrimination by education programs or activities that are federally funded.  20 U.S.C. § 1681(a); *see Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286-90 (1998).  20 U.S.C. § 1687(2)(A) defines "program or activity" as "a college, university, or other postsecondary institution, or a public system of higher education."  Here, based on the plain language of the statute, the well-defined statutory intent and factual allegations as framed by Plaintiffs' own Amended Complaint, YNHH is not a college, university, other postsecondary institution, or public system of higher education, and dismissal is appropriate.  (*See* Am. Compl., ¶¶ 29-36).

The recent Title IX regulations reiterate that Title IX does not apply to YNHH.  The regulations define education programs or activities as those that include a "research, occupational training, or other education program or activity."  34 C.F.R. § 106.31(a). The

Preamble to the regulations clarifies that "[a]cademic medical centers are not postsecondary institutions," despite the fact that "an academic medical center may be affiliated with a postsecondary institution or even considered part of the same entity as the postsecondary institution." Preamble at 1538, 1540. Therefore, YNHH's affiliation with Yale University does not make YNHH a postsecondary institution that would fall within the ambit of Title IX.

Caselaw supports this interpretation of the plain language of the statute and regulations, concluding that Title IX does not extend to a private hospital like YNHH. In *O'Connor v. Davis*, the defendant hospital did not qualify as an "education program," as contemplated by Title IX, because its "'primary purpose' [wa]s in no sense to educate," even though it provided on-the-job vocational training to the plaintiff." *O'Connor v. Davis*, 126 F.3d 112, 117-18 (2d Cir. 1997); *see Robideaux v. North Dakota Dep't of Corr. and Rehab.*, 570 F.3d 966, 978 (8th Cir. 2009) (affirming district court's decision, stating "that the type of on-the-job training provided by" the defendant "does not transform it from principally a work program into an occupational training program or education program" under Title IX); *Crandell v. New York College of Osteopathic Med.*, 87 F. Supp. 2d 304, 307 n.5 (S.D.N.Y. 2000) (finding, on a motion to dismiss, that Title IX did not reach the private hospital defendant where the osteopathic intern had done her internship); *Loewen v. Grand Rapids Med. Educ. Partners*, No. 10-cv-1284, 2012 U.S. Dist. LEXIS 49476, *33 (W.D. Mich. Apr. 9, 2012)[5] (where the defendant hospitals argued on a motion to dismiss that the plaintiff's Title IX claims failed "because they are not educational institutions and do not conduct an 'education program or activity,' as required for liability under Title IX . . . [t]he [c]ourt tends to agree"); *Winfield v. Chicago State Univ.*, No. 05-cv-5224, 2006 U.S. Dist. LEXIS 61841, *6-7 (N.D. Ill. Aug. 30, 2006) (granting defendants' motions to dismiss

---

[5] All unreported cases are attached to this memorandum as Exhibit 1.

Title IX claims in a post-graduate practicum because the education programs administered by New Horizons, the entity at which the plaintiff was assigned to complete his practicum, were only "incidental" to its primary mission).

The Amended Complaint acknowledges, as it must, that YNHH "is principally engaged in the business of providing health care," not education. (Am. Compl., ¶ 31). Based on *O'Connor* and the other numerous cases cited, Plaintiffs' allegations that YNHH serves, in part, as a teaching hospital does not convert it into the type of entity that can be held liable for discrimination under Title IX. *O'Connor*, 126 F.3d at 117-18; *see Robideaux*, 570 F.3d at 978; *Loewen*, No. 10-cv-1284, 2012 U.S. Dist. LEXIS 49476, at *33; *Winfield*, No. 05-cv-5224, 2006 U.S. Dist. LEXIS 61841, at *6-7; *Crandell*, 87 F. Supp. 2d at 307 n.5. For these reasons, grounded in statute, regulations, and case law, Title IX does not apply to YNHH. Counts One and Two against YNHH should be dismissed.

**C.     The Attending Physician Plaintiffs' Title IX Claims against YNHH (Counts One and Two) Fail Because Their Relationship to an Education Program or Activity Is Too Attenuated for Title IX to Apply to Them.**

Even if this Court finds that Title IX could apply to YNHH, Title IX's reach is limited to individuals who have *some direct relationship* to an educational program receiving federal financial assistance. Plaintiffs Boules, Eltorai, and Olivers fail to demonstrate such a direct relationship and their claims in Counts One and Two fail.

Not everyone is protected under Title IX; courts, including the Second Circuit and district courts in this jurisdiction, have limited the reach of Title IX to plaintiffs who have a direct relationship with the defendant. *See* 20 U.S.C. § 1681(a); 34 C.F.R. § 106.31(a); *Burgess v. Harris Beach PLLC*, 346 Fed. Appx. 658, 661 (2d Cir. 2009) (affirming dismissal of Title IX

10

retaliation claims against a defendant because the plaintiff had no "direct relationship" with the defendant); *O'Connor*, 126 F.3d at 116-17 (noting the limit of Title IX's protection to "students and employees"); *Doe v. Univ. of Kentucky*, 357 F. Supp. 3d 620, 627, 633 (E. D. Ky. Jan. 11, 2019) (dismissing Title IX claims because "[a]t best, it is arguable that Plaintiff could have potentially used" the defendant's educational resources "to learn something, but the potential to learn is not enough to transform the use of" those resources "into educational programs or activities under Title IX"); *Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 398-99 (S.D.N.Y. 2019) (dismissing plaintiff's Title IX claims, stating: "Because Glaser's allegations establish that he was neither a student nor an employee of Defendants," nor even a "prospective applicant[]," "he fails to allege facts sufficient to demonstrate that Title IX affords him a right to relief for that discrimination"); *Lopez v. San Luis Valley, Bd. of Coop. Educ. Servs.*, 977 F. Supp. 1422, (D. Colo. 1997) (Title IX claim failed because the plaintiff was not a "direct beneficiar[y] of the federal funds provided to the education program in question," was not "paid by" the defendant, and only "work[ed] with" the defendant) (emphasis omitted).

Here, the relationships that the Attending Physician Plaintiffs have with YNHH are too attenuated to allow them to sustain claims against YNHH under Title IX. They are not students or employees of YNHH. (Am. Compl., ¶¶ 21, 23-25). At best, these Plaintiffs only have medical privileges to perform medical services at YNHH. (*See* Am. Compl., ¶ 32) (stating that Plaintiffs Boules, Eltorai, and Olivers are "credentialed" to work at YNHH). YNHH is not aware of a single court decision extending Title IX to apply to physicians with only staff privileges at a hospital, and no such extension should be made now.[6] To extend the protections

---

[6] Even the Third Circuit in *Doe v. Mercy Catholic Med. Center*, which held that a hospital's residency program was an "education program or activity" under Title IX, recognized that Title IX has limits to its protection. *Doe v. Mercy*

afforded by Title IX so far absent any compelling authority or factual amplification to suggest

such application is appropriate is unwarranted.  For these reasons, the Attending Physician

Plaintiffs' Title IX claims against YNHH should be dismissed.[7]

> ### D. Plaintiffs' Title IX Claims against YNHH (Counts One and Two) Fail Because Title IX Does Not Provide a Private Cause of Action for Employment Discrimination Based on Sex.

Notwithstanding the foregoing deficiencies, Plaintiffs' claims also fail because, without

conceding the veracity of the allegations, they all suggest some employment relationship with

YNHH (although only Plaintiffs Castro and Reinhart are employees of YNHH), their Title IX

claims are, therefore, precluded by Title VII and must be dismissed.

Although there is an open question in the Second Circuit about "whether there is a private

right of action for employment discrimination under Title IX,"  *Summa v. Hofstra Univ.*, 708

F.3d 115 131, 131 n.5 (2d Cir. 2013), numerous district courts in the Second Circuit, including

the United States District Court for the District of Connecticut, have squarely considered this

issue and concluded that Title VII is the exclusive remedy for employees alleging discrimination

or retaliation.  *See Gayle v. Children's Aid Coll. Prep Charter Sch.*, No. 18-cv-9874, 2019 U.S.

---

*Catholic Med. Center*, 850 F.3d 545, 556 (3d Cir. 2017) ("Indeed by merely including the word 'education' in § 1681(a), Congress signified that Title IX has some boundary.") (emphasis omitted).  *Doe* does not stand for the proposition that non-medical resident or non-employee doctors can sue for sex-based discrimination under Title IX. *Id.* at 562. Rather, *Doe* restricted the reach of Title IX only to plaintiffs who are employees or students.  *Id.* at 559 (finding "it's plausible" that the medical resident plaintiff was an employee of the defendant in this isolated case, but noting that it "won't (and can't) speak for *all* residents" in other cases or for other "any other status" a plaintiff may hold).

[7] Not only are the Attending Physician Plaintiffs' relationships with YNHH too attenuated for them to sue YNHH under Title IX, their status as non-YNHH-employees also prevents them from stating Title VII claims against YNHH.  These Plaintiffs' cherry-picked allegations of employment with YNHH, which do not even include that they signed employment agreements identifying YNHH as their employer, are insufficient to demonstrate employment with YNHH.  (Am. Compl., ¶ 209); *see Levitin v. Northwest Cmty. Hosp.*, 923 F.3d 499, *6 (7th Cir. May 8, 2019) ("a physician with hospital practice privileges is not the hospital's employee merely because he is subject to peer review"); *Perry v. Pediatric Inpatient Critical Care Servs., P.A.*, No. SA-18-cv-404-XR, 2020 U.S. Dist. LEXIS 44853, *50 (W.D. Tex. Mar. 16, 2020) ("the requirement to comply with detailed hospital regulations and use of Hospital facilities does not indicate an employment relationship because all doctors, whether employees or simply those with privileges at the Hospital, must do so").

Dist. LEXIS 126997, *16-17 (S.D.N.Y. July 29, 2019); *Philpott v. New York*, 252 F. Supp. 3d

313, 318-19 (S.D.N.Y. 2017); *Carter v. City of Syracuse Sch. Dist.*, No. 10-cv-690, 2012 U.S.

Dist. LEXIS 36612, *3-4 (N.D.N.Y. Aug. 8, 2016); *Towers v. State Univ. of New York at Stony*

*Brook*, No. 04-cv-5243, 2007 U.S. Dist. LEXIS 37373, *3-4 (E.D.N.Y. May 21, 2007); *Burrell*

*v. City Univ. of New York*, 995 F. Supp. 398, 408 (S.D.N.Y. 1998).

    Joining the overwhelming majority in this Circuit that has held that Title VII offers the

exclusive remedy for employment discrimination based on sex, in a thoughtful decision issued

less than two months ago, the U.S. District Court for the District of Connecticut dismissed a

plaintiff's Title IX discrimination and retaliation claims for this very reason.  *See Othon v.*

*Wesleyan Univ.*, No. 18-cv-00958 (KAD), 2020 U.S. Dist. LEXIS 53580, *22 (D. Conn. Mar.

27, 2020) (holding that "there is no private remedy under Title IX for employment

discrimination claims").  After discussing the legislative histories of Titles IX and VII and

United States Supreme Court decisions on these two statutes, the court in *Othon* concluded:

> [T]here is no indication that Congress intended to create
> concurrent private remedies when passing Title IX. To the
> contrary, this Court believes that the legislative history of the 1972
> Amendments, read in conjunction with the legislative history of the
> Educational Amendments, reflect Congress' selection of Title VII
> as the available private remedy for claims of employment
> discrimination.  The disruption recognizing such a right would
> cause to Title VII further counsels against such recognition.

*Id.* at *29-30.

    A mere three years before *Othon*, and in another instructive case before that, the U.S.

District Court for the District of Connecticut in *Uyar v. Seli* and in *Urie v. Yale*, came to the

same conclusion.  *Uyar v. Seli*, No. 16-cv-186 (VLB), 2017 U.S. Dist. LEXIS 30853, *16 (D.

Conn. Mar. 6, 2017) (dismissing Title IX claim because Title VII was the plaintiff's exclusive

remedy; "Title IX was not intended to enable employees of educational institutions complaining of gender discrimination to bypass the remedial scheme Congress established in Title VII."); *Urie v. Yale*, 331 F. Supp. 2d 94, 95 (D. Conn. 2004) ("conclud[ing] that the allegations of the complaint fail to state a claim for relief based on teacher-student harassment, and that the exclusive remedy for the discrimination plaintiff claims to have suffered while a teaching fellow is provided by Title VII of the Civil Rights Act of 1964.").

Here, Plaintiffs allege they are employees, (Am. Compl., ¶¶ 21-26), and are, therefore, subject to the exclusive remedy afforded employees, for purposes of Title VII, as set forth in *Othon*, *Uyar*, and *Urie*, and the numerous other cited district court cases in this Circuit. *See Othon*, No. 18-cv-00958 (KAD), 2020 U.S. Dist. LEXIS 53580, at *22; *Uyar*, No. 16-cv-186 (VLB), 2017 U.S. Dist. LEXIS 30853, at *16; *Urie*, 331 F. Supp. 2d at 95. For this reason, Plaintiffs' Counts One and Two against YNHH are subject to dismissal.

     **E.**      **The Title IX Discrimination Claims against YNHH (Count One) Fail Because They Have Not Established That YNHH Had "Actual Notice" of any Alleged Wrongdoing.**

Even if Plaintiffs were somehow able to get past all of the deficiencies above (which they cannot), to be actionable, their Title IX discrimination claim requires a showing that YNHH had "actual notice" of the discrimination to which it then acted with "deliberate indifference." *Naumovski v. Norris*, 934 F.3d 200, 221 n.85 (2d Cir. 2019). Because YNHH did not have any such actual notice as framed by Plaintiffs' own allegations, Plaintiffs' Title IX claim against YNHH in Count One must fail.

The requirement for "actual notice" under Title IX is a "significant burden." *Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 639 (E.D.N.Y. 2013). Constructive

knowledge, that YNHH should have known of the alleged harassment, is not enough to state a claim under Title IX. *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012). Nor can Plaintiffs impute the alleged discriminatory conduct of Dr. Fontes, a Yale University employee, to YNHH to establish actual notice to YNHH of such claim. *See Gebser*, 524 U.S. at 283 ("Title IX contains no comparable reference to an educational institution's 'agents,' and so does not expressly call for application of agency principles"; knowledge of inappropriate comments by teacher does not put school district on notice of teacher's inappropriate sexual relationship). Even direct communications from a plaintiff to management employed by the defendant is insufficient to show actual notice. *See Doe v. Flaherty*, 623 F.3d 577, 585 (8th Cir. 2010) (affirming the district court's decision, finding that a principal's knowledge of the alleged harasser's suggestive text messages to female students and the principal's conversations with a female student's parents regarding the wrongdoer's conduct was not "actual notice" under Title IX).

A simple reading of the Amended Complaint does not evidence any allegations that YNHH had the "actual notice" required by Title IX:

- Plaintiff Boules never told anyone that Dr. Fontes had discriminated against her or harassed her. (Am. Compl., ¶¶ 94-109). Her cryptic email to YNHH's Chief Medical Experience Officer that she had an unidentified topic on her mind she wanted to talk to him about is not a discrimination complaint. (Am. Compl., ¶ 108).

- Plaintiff Castro alleges she complained about Dr. Fontes' conduct to individuals at Yale University, not YNHH, in August 2019. (Am. Compl., ¶ 208). The only other harassment complaints that Plaintiff Castro alleges making is an anonymous evaluation to an unidentified person at an unidentified time after mid-August 2018, and a complaint to "floor runners" at YNHH around August 2019. (Am. Compl., ¶¶ 113, 117-18).

- The only people who Plaintiff Eltorai allegedly made complaints to about Dr. Fontes' conduct were Yale University (not YNHH) individuals, between October 2018 and

August 2019.  (Am. Compl., ¶¶ 132, 136, 143).

- Plaintiff Jodi-Ann Oliver alleges she complained about Dr. Fontes' conduct to Yale University management at an unidentified point in or after 2016, and then "[s]ometime in 2017."  (Am. Compl., ¶¶ 171-72).  She also states that the "Dean of the Yale School of Medicine," rather than anyone at YNHH, was told of Dr. Fontes' purported misconduct against her in May 2018.  (Am. Compl., ¶ 175).

- The single time that Plaintiff Lori-Ann Oliver alleges that she complained about Dr. Fontes' conduct was around Fall 2018, when she casually, in passing, "mentioned" his alleged touching of her to the Division Chief of Pain Management at Yale University.  (Am. Compl., ¶ 184).

- Plaintiff Reinhart alleges that Yale University (not YNHH) managers were told about Dr. Fontes' conduct towards her in about June 2019, and that she followed up and made complaints to Yale University (not YNHH) herself in July and August 2019.  (Am. Compl., ¶¶ 67, 196, 201, 203-04, 208).

Simply put, these types of allegations are insufficient to plead that Plaintiffs placed YNHH on any actual notice of discrimination or harassment by Dr. Fontes that YNHH then failed to investigate.  Plaintiffs' allegations that the Yale University managers to whom they complained also happened to hold positions as "attending physician[s] at YNHH" is insufficient to convert their complaints to Yale University into complaints to YNHH of which YNHH had "actual notice" of under Title IX.  (Am. Compl., ¶¶ 132, 172, 208); *see Doe*, 623 F.3d at 585. Plaintiffs' Title IX claims in Count One must fail.

**F.**     **Plaintiffs Eltorai's and Castro's Title IX retaliation claims against YNHH (Count Two) Fail Because These Plaintiffs Did Not Engage in Protected Activity and Have Not Alleged an Adverse Action to Sustain a Claim.**

Plaintiffs Eltorai and Castro allege retaliation (Count Two) but fail to allege two requisite elements to sustain a claim – engaging in protected activity and experiencing an actual adverse action.

It is well established that "a plaintiff claiming retaliation under Title IX must first

establish a *prima facie* case by showing: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action."   *Papelino v. Albany College of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011).

First, Plaintiffs fail to identify any actual protected activity putting YNHH on notice of their complaints.  *See* Section IV(E), *supra*; *Naumovski v. Binghamton Univ.*, No. 3:11-cv-1097, 2018 U.S. Dist. LEXIS 229239, *57-58 (N.D.N.Y. Apr. 17, 2018) (to qualify as protected activity under Title IX, the employee must have "a good faith, reasonable belief that the underlying challenged actions of the employer violated the law"; the "plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form" and "general allegations of mistreatment" is not "a reasonable good faith belief that she was subject to" discrimination) (internal citations, and quotation marks omitted).

Second, Plaintiffs Eltorai and Castro do not allege any adverse action.  Instead, they claim that YNHH "fail[ed] to properly investigate their claims of discrimination and sexual assault in retaliation of their protected activity."  (Am. Compl., ¶ 225).  However, an employer's "failure to investigate an employee's complaint [of discrimination] is not retaliation for filing that same complaint" because "these allegations, even if true, do not show an adverse employment action." *Fahrenkrug v. Verizon Servs. Corp.*, 652 Fed. Appx. 54, 57 (2d. Cir. June 17, 2016) (brackets, internal citations, and quotation marks omitted) (Title VII case): *see Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 248 (2d Cir. 1995) ("In reviewing claims of discrimination brought under Title IX by employees," including for "retaliation, courts have

generally adopted the same legal standards that are applied to such claims under Title VII.").

At most, Plaintiff Eltorai (who YNHH did not even employ) claims that after she made complaints about Dr. Fontes' in October 2018 and January 2019 (without specifying to whom she complained), she was: (1) counseled by Dr. Fontes (non-YNHH-employee) and two of his subordinates (also not YNHH employees) for poor performance in February 2019; (2) transferred by those subordinates and the Yale University Department of Anesthesiology Chair out of the ICU in August 2019; and (3) denied volunteer shifts in May 2020 by the Yale University Department Chair, none of which amount to an adverse action.  (Am. Compl., ¶¶ 132, 134, 136, 139-40, 143-44, 161-64).  Such alleged actions (even if attributable to YNHH (which they are not, based on the allegations themselves)) are insufficient to state requisite adverse actions required to survive a motion to dismiss.  *See Edwards v. Rochester Inst. of Tech.*, No. 10-cv-6553-FPG, 2018 U.S. Dist. LEXIS 53326, *56-57 (W.D.N.Y. Mar. 28, 2018) (holding that "the November 2009 counseling meeting in which [the plaintiff's] performance was criticized, do[es] not amount to [a] materially adverse employment action[] in the absence of any negative consequences"); *Quadir v. New York State Dep't of Labor*, No. 13-cv-3327, 2016 U.S. Dist. LEXIS 84632, *15 (S.D.N.Y. June 29, 2016) ("As a result, Quadir cannot prevail on his claim that Department 'counseling memos' that detailed negative performance by Quadir but 'did not have any disciplinary sanction associated with [them]' constituted adverse employment actions."); *Yaa Asante-Addae v. Sodexo, Inc.*, No. 3:13-cv-00489 (VLB), 2015 U.S. Dist. LEXIS 41367, *20 (D. Conn. Mar. 31, 2015) ("finding that 'a bruised ego,' a demotion without change in pay, benefits, duties, or prestige,' or 'reassignment to [a] more inconvenient job' are all insufficient to constitute a tangible or materially adverse employment action." (quoting

*Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)); *Watson v. Paulson*, 578 F. Supp. 2d 554, 564 (S.D.N.Y. 2008) (the defendant employer's requirement that the plaintiff partake in a volunteer program "on her own time" was not adverse action). Moreover, Plaintiff Eltorai has never been terminated or demoted. (Am. Compl., ¶ 23). Thus, Plaintiff Eltorai's retaliation claim must fail for lack of adverse employment action.

Plaintiff Castro (who is and remains employed by YNHH)'s claim is woefully deficient because she does not plead <u>any</u> allegations of adverse action. *See* Am. Compl. generally; *Burgess v. Harris Beach PLLC*, No. 07-cv-6281-CJS, 2008 U.S. Dist. LEXIS 25166, *32 (dismissing Title IX claims "[s]ince Plaintiff has not plead that she suffered an adverse employment action as part of her retaliation claims as to any defendants"); *see also Monroe v. Xerox Corp.*, 664 F. Supp. 2d 235, 242 (W.D.N.Y. 2009) (dismissing a claim of retaliation due to a January 2007 complaint of discrimination, where the "plaintiff allege[d] no retaliatory incident occurring after her January 2007 complaint"). Instead, she asserts that Dr. Fontes was hesitant to support her going on a mission trip, but concedes that she did, in fact, go on the trip. (Am. Compl., ¶¶ 118-19, 124). Where, as is the case here, there is no adverse action, her claim of retaliation fails. *See Barcher v. New York Univ. Sch.*, 993 F. Supp. 177, 185 (S.D.N.Y. 1997) (dismissing retaliation claim, stating: "As [the plaintiff] thus acknowledges, no unlawful employment practice under Title VII had occurred about which she was complaining. It was only her speculation that one would occur.").

For these reasons, Plaintiffs Castro's and Eltorai's claims of retaliation under Title IX (Count Two) should be dismissed.

**G.     Plaintiff Eltorai Does Not Allege an Adverse Employment Action to Sustain a Title VII Pregnancy Discrimination Claim against YNHH (Count Three).**

Plaintiff Eltorai (again, not an employee of YNHH) claims Title VII pregnancy discrimination by YNHH, but she fails to satisfy one of the elements of the claim, namely that YNHH took adverse action against her.

To state a claim for pregnancy discrimination against YNHH under Title VII, Plaintiff Eltorai must demonstrate that YNHH took an adverse employment action against her. *Hall v. Family Care Home Visiting Nurse and Home Care Agency*, 696 F. Supp. 2d 190, 198 (D. Conn. 2010). Because she did not suffer any adverse action, her pregnancy discrimination claim in Count Three must be dismissed.

Plaintiff Eltorai makes only two allegations in support of her pregnancy discrimination claim in the whole sixty-two page Amended Complaint. She alleges that Dr. Fontes made a pregnancy-based comment to her in September 2018, and that he was hesitant in October 2018 to support her starting a research project because she would be away from work on maternity leave the following year. (Am. Compl., ¶¶ 127-28, 130-31). Neither of these allegations sufficiently alleges the existence of an adverse employment action. *Wright v. Monroe Cmty. Hosp.*, 493 Fed. Appx. 233, 236-37 (2d Cir. Aug. 29, 2012) (affirming dismissal of a pregnancy discrimination claim because "unpleasant comments" related to the plaintiff's pregnancy do not "constitute[] an adverse employment action"); *see Infante v. Ambac Fin. Group*, No. 03-cv-8880 (KMW), 2006 U.S. Dist. LEXIS 4310, *21 (S.D.N.Y. 2006) (dismissing a Title VII claim of pregnancy discrimination, where the plaintiff, while on extended maternity leave, was asked whether she "really want[s] to come back" to work, among other similar comments). Plaintiff Eltorai was able to complete the research project; the Amended Complaint does not allege otherwise. For

these reasons, her discrimination claim in Count Three is subject to dismissal.

> **H.** **Plaintiffs Eltorai and Castro Do Not Allege They Engaged in Protected Activity and Do Not Allege an Adverse Action to Sustain a Title VII Retaliation Claim against YNHH (Count Four).**

Plaintiffs Eltorai and Castro claim Title VII retaliation by YNHH in Count Four, but they fail to make out two elements of their claims – that they engaged in protected conduct or that they encountered an adverse employment action.

To establish a *prima facie* case of retaliation under Title VII, Plaintiffs Eltorai and Castro have the burden to establish (1) participation in a protected activity; (2) an adverse employment action; and (3) that the protected activity was a but-for cause of the alleged adverse employment action. *Siuzdak v. Sessions*, 295 F. Supp. 3d 77, 95, 101 (D. Conn. 2018) (citing *Univ. of Texas Southwestern Med. Center v. Nassar*, 570 U.S. 338, 362 (2013)).  Because the Amended Complaint does not allege that either Plaintiff Eltorai or Castro engaged in protected activity or suffered any adverse action, their retaliation claims in Count Four must be dismissed.

First, as previously discussed, Plaintiffs Eltorai and Castro do not identify participation in any protected activity.  *See* Section IV(F), *supra*; *Cook v. CBS, Inc.*, 47 Fed. Appx. 594, 596 (2d Cir. 2002) (finding that the plaintiff "did not engage in a protected activity because the letter" did not "ever mention[], or even allud[e] to, [the plaintiffs] belief that [the defendant's] failure to comply with his requests would constitute unlawful discrimination"); *Saliga v. Chemtura Corp.*, No. 12-cv-832 (VAB), 2015 U.S. Dist. LEXIS 133135, *45 (D. Conn. Sept. 30, 2015) ("generalized complaints about a supervisor's treatment are insufficient" to establish protected activity required to state a Title VII claim).

Second, for the reasons identified earlier, Plaintiffs Eltorai and Castro do not allege that they suffered any adverse action. *See* Section IV(F), *supra*; *Murray*, 57 F.3d at 248 (discussing that "the same legal standards" apply to Title VII and Title IX retaliation claims); *Edwards*, No. 10-cv-6553-FPG, 2018 U.S. Dist. LEXIS 53326, at *56-57; *Blake v. Developmental Servs.*, 278 F. Supp. 3d 519, 530 (D. Conn. 2017) (dismissing one Title VII claim because the plaintiff's transfer "with no change in the plaintiff's shifts, duties, title or pay cannot be an adverse action even for purposes of a retaliation claim" and dismissing another Title VII claim because "reprimands and threats of disciplinary action do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation") (internal citations and quotation marks omitted); *Yaa Asante-Addae*, No. 3:13-cv-00489 (VLB), 2015 U.S. Dist. LEXIS 41367, at *20 ("finding that a bruised ego, a demotion without change in pay, benefits, duties, or prestige, or reassignment to [a] more inconvenient job are all insufficient to constitute a tangible or materially adverse employment action") (internal citation and quotation marks omitted); *Watson*, 578 F. Supp. 2d at 564 (the defendant employer's requirement that the plaintiff partake in a volunteer program "on her own time" was not adverse action).

## V.  Conclusion

For the reasons set forth above, the Court should dismiss Counts One through Four in the Amended Complaint against YNHH.

DEFENDANT,
YALE NEW HAVEN HOSPITAL, INC.


By:    */s/ Sarah R. Skubas*
       Sarah R. Skubas (ct 28327)
       Jackson Lewis P.C.
       90 State House Square, 8th Floor
       Hartford, CT  06103
       Tel: (860) 522-0404
       Fax: (860) 247-1330
       sarah.skubas@jacksonlewis.com

## <u>CERTIFICATION OF SERVICE</u>

I hereby certify that on June 18, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

/s/ *Sarah R. Skubas*
Sarah R. Skubas