**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | : | |
| MIA CASTRO, M.D., HEIDI BOULES, M.D., | : | CIVIL ACTION NO. |
| ASHLEY ELTORAI, M.D., JODI-ANN | : | 3:20-cv-00330-JBA |
| OLIVER, M.D., LORI-ANN OLIVER, M.D., | : | |
| AND ELIZABETH REINHART, M.D. | : | |
| | : | |
| PLAINTIFFS | : | |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY, YALE NEW HAVEN | : | |
| HOSPITAL, INC., AND MANUEL LOPES | : | |
| FONTES, M.D. | : | |
| | : | |
| DEFENDANTS | : | JUNE 19, 2020 |

### YALE UNIVERSITY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, MOTION TO STRIKE AND MOTION FOR A MORE DEFINITE STATEMENT

Pursuant to Rules 12(b)(6), 12(f), and 12(e) of the Federal Rules of Civil Procedure, Rule 7(a) of the Local Rules of this Court, and the prefiling conference held before the Court on May 13, 2020, the defendant, Yale University, hereby respectfully submits this Memorandum of Law in support of its Motion to Dismiss, Motion to Strike, and Motion for a More Definite Statement.

In their May 29, 2020 Amended Complaint, the plaintiffs, Mia Castro, M.D., Heidi Boules, M.D., Ashley Eltorai, M.D., Jodi-Ann Oliver, M.D., Lori-Ann Oliver, M.D., and Elizabeth Reinhart, M.D., allege that Yale University discriminated against them on the basis of sex under Title IX of the Education Amendments Act of 1972 ("Title IX") and Title VII of

**DONAHUE, DURHAM & NOONAN, P.C.**
Concept Park  •  741 Boston Post Road
Guilford, Connecticut 06437
Tel:  (203) 458-9168  •  Fax:  (203) 458-4424
Juris No. 415438

the Civil Rights Act of 1964 ("Title VII") (Counts One and Three).  Drs. Castro and Eltorai

further allege that Yale University retaliated against them under Titles IX and VII (Counts Two

and Four).  Dismissal of all Four Counts is appropriate for the following reasons.  With respect

to the Title IX claims:

1. All Title IX claims fail to state a claim because Title IX does not provide a private
   remedy for employment discrimination based on sex;

2. Drs. Jodi-Ann and Lori-Ann Oliver's Title IX hostile work environment claims fail to
   state a claim because they have not alleged severe or pervasive harassment by Dr.
   Manuel Lopes Fontes;

3. Dr. Castro, Boules, Lori-Ann Oliver and Jodi-Ann Oliver's Title IX hostile work
   environment claims fail to state a claim because the complaint does not contain an
   allegation that Yale University was on "actual notice" of any alleged wrongdoing;
   and

4. Drs. Eltorai and Castro's Title IX retaliation claims fail to state a claim because
   they have not alleged an adverse employment action which necessary to sustain a
   Title IX claim.

With respect to the plaintiffs' Title VII claims:

1. All Title VII hostile work environment claims must fail because the plaintiffs have
   not alleged severe or pervasive harassment by Dr. Fontes;

2. Dr. Castro, Boules, Lori-Ann Oliver and Jodi-Ann Oliver's Title IX hostile work
   environment claims fail to state a claim because they have not alleged that Yale
   University was on "actual notice" of any alleged wrongdoing; and

3. Drs. Eltorai and Castro's Title VII retaliation claims fail to state a claim because
   they have not alleged an adverse employment action which is necessary to sustain
   a Title VII claim.

Therefore, the plaintiffs' claims against Yale University should be dismissed in their

entirety.

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Yale University has also

moved to strike Paragraphs 38 through 61 of the plaintiffs' Amended Complaint—which describe

in detail several prior and pending sexual misconduct lawsuits brought against Yale University by parties not involved in the present litigation, as well as findings from a survey regarding sexual harassment of undergraduate students at Yale University—and are "irrelevant, immaterial and impertinent" within the meaning of Rule 12(f).  Accordingly, those allegations should be stricken.

Pursuant to Rule 12(e) of the Federal Rules of Civil Procedure, Yale University has also moved for a more definite statement of the allegations contained in Paragraphs 69-73, 76-77, 82-88, 112 and 198, which reference unnamed physicians dubbed Drs. X and Y who have also allegedly been sexually assaulted by Dr. Fontes.  Yale University has also moved for a more definite statement of the allegations contained in Paragraphs 91, 101, 107, 118, 136, 138, 140-141, 146-147, 151, 157, 161-162, 164, 171, 176, 179, 180, 184, 190, 194-195, 199-201, which reference various unnamed individuals who have either witnessed the alleged sexual harassment or to whom complaints were made. Without knowing the names of the individuals mentioned anonymously in all of those paragraphs, Yale University cannot properly respond to the allegations of those paragraphs.  Accordingly, the Court should order the plaintiffs to list the names of the individuals in the paragraphs listed above.

## I.      FACTUAL BACKGROUND

### A.      *Relationship Between the Parties*

The plaintiffs initiated the present action against Yale University, Yale New Haven Hospital, and Dr. Fontes, by way of a Complaint dated March 12, 2020.  The plaintiffs filed an Amended Complaint on May 29, 2020.[1]  All six plaintiffs are anesthesiologists.  Drs. Boules,

---

[1] On June 12, 2020, plaintiffs' counsel contacted defense counsel to inquire if Yale University consented to the filing of a second amended complaint adding claims under the Connecticut Fair Employment Practices Act ("CFEPA").  Yale University did not consent because the CFEPA claims asserted by Drs. Castro, Boules, Eltorai, and Jodi-Ann Oliver are barred by the statute of limitations.  Pursuant to Conn. Gen. Stat. § 46a-82(f), the

Eltorai, Jodi-Ann Oliver, and Lori-Ann Oliver are attending physicians; Dr. Castro will finish her anesthesiology fellowship on June 30, 2020; and Dr. Reinhart is about to complete her residency.  (Amended Complaint, at ¶¶ 21-26.)  The plaintiffs allege that they are employed by both Yale University and Yale New Haven Hospital.[2]  (Id.)  In their Amended Complaint, the plaintiffs allege that they were sexually harassed by the co-defendant, Dr. Fontes, during the course of their employment.

**B.**    ***None of the Plaintiffs Have Alleged an Adverse Employment Action***

The Amended Complaint does not contain *any* allegation whatsoever that Yale University took an adverse employment action against any of the plaintiffs; none of the plaintiffs allege that they were terminated or demoted, or that their compensation packages

---

plaintiffs were required to file their CFEPA claims with the Commission on Human Rights and Opportunities ("CHRO") within 180 days after the alleged acts of sexual harassment occurred, with the exception that if the alleged acts took place on or after October 1, 2019, they had 300 days to file.  The plaintiffs filed their complaints alleging violations of Title VII and CFEPA with the CHRO on May 1, 2020.  On December 4, 2019, Drs. Castro, Reinhart, Boules, and Eltorai filed charges of discrimination with the EEOC; Drs. Lori-Ann and Jodi-Ann Oliver filed their charges the following day.  Although the plaintiffs contend that the EEOC charges were cross-filed with the CHRO in December, 2019, the "dual filing" provision of the current worksharing agreement between the EEOC and CHRO *only* applies to the plaintiffs' Title VII claims, *not* to their state employment law claims asserted under CFEPA.  See Edwards v. William Raveis Real Estate, 2009 U.S. Dist. LEXIS 42400 (D. Conn. May 18, 2009) (Hall, J.) ("Edwards concedes that she did not file a complaint with the CHRO…Instead, she asserts that because she filed a charge with the EEOC, she satisfied her obligations under CFEPA because the EEOC and CHRO have a work-sharing agreement.  The court disagrees."); Paris-Purtle v. State, 2015 Conn. Super. LEXIS 537 (Mar. 11, 2015) (Dooley, J.) ("Filing with the EEOC, even if permitted under the work sharing agreement, could not and did not satisfy the [Connecticut] statutes").  Thus, the plaintiffs did not file their CFEPA claims until May 1, 2020, when they first filed their complaints with the CHRO.  Since Drs. Castro, Boules, Eltorai, and Jodi-Ann Oliver have alleged misconduct that occurred more than 180 *before* they filed their complaints with the CHRO, their claims are time-barred.  Drs. Reinhart and Lori-Ann Oliver have each alleged only a single, isolated instance of alleged sexual harassment that falls within the statute of limitations, and thus, the alleged conduct cannot possibly meet the "severe or pervasive" threshold required to state a claim for hostile work environment.  See Majewski v. Bridgeport Board of Education, 2005 Conn. Super. LEXIS 209, at *39-40 (Super. Jan. 20, 2005) (Arnold, J.) citing Harris v. Forklift Systems, 510 U.S. 17, 21 (1993) ("To establish a claim of hostile work environment, the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment").

[2] This allegation is contested – Drs. Castro and Reinhart are employed by YNHH, and the other physicians are employed by Yale University.

were affected in any way. In the absence of an allegation of an adverse employment action, the retaliation claims must be dismissed.

     **C.**     ***Drs. Castro, Boules, Lori-Ann Oliver and Jodi-Ann Oliver Have Not Alleged Facts From Which it Could be Concluded That Yale University was on Notice of the Alleged Wrongdoing.***

Dr. Boules has entirely failed to allege that Yale University was aware of Dr. Fontes' alleged misconduct; she alleges *only* that she sent an email to Alan Friedman, Yale New Haven Hospital's Chief Medical Experience Officer, in August 2019, telling him she had "'[s]omething rather serious'" she wanted to discuss with him. (<u>Id.</u>, at ¶ 108.) When he did not respond, she chose not to follow up, or take any further action. (<u>See</u> <u>id.</u>) Dr. Castro has likewise failed to allege that she put Yale University on notice of the alleged misconduct; she alleges only that she submitted an "anonymous evaluation" of Dr. Fontes to an unidentified person in mid-August 2018. (<u>Id.</u>, at ¶ 117.)

Without providing any factual basis at all, Dr. Jodi-Ann Oliver vaguely alleges that she complained about Dr. Fontes' conduct in or after 2016, "[s]ometime in 2017," and in May of 2018 – the Amended Complaint is entirely devoid of any details about to whom the complaints were made, the dates on which they were made, or the method and substance of the complaints. (<u>Id.</u>, at ¶¶ 171-72, 175.) Dr. Lori-Ann Oliver alleges that, in passing, she casually "mentioned" Dr. Fontes alleged touching of her. (<u>Id.</u>, ¶ 184.) However, Dr. Lori-Ann Oliver specifically alleges that she decided *not* to pursue a complaint against Dr. Fontes. (<u>Id.</u>, ¶ 185.)

## II.   ARGUMENT

### A.   *Motion to Dismiss*

#### 1.   *Legal Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Controlled Air, Inc. v. Barr, 2020 U.S. Dist. LEXIS 34366 (D. Conn. Feb. 28, 2020) (Arterton, J.). Such a motion "tests, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) (Cardamone, J.). A "formulaic recitation of the elements of a cause of action will not do," "[n]or does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007 (quoting Twombly, 550 U.S. at 555, 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. In short, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown "that the pleader is entitled to relief." Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); see also, Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717 (2d Cir. 2013). A motion made under Rule 12(b)(6) is the appropriate vehicle to test the legal feasibility of employment discrimination claims brought under Title IX. Othon

v. Wesleyan University, 2020 U.S. Dist. LEXIS 53580, at *5 (D. Conn. Mar. 27, 2020) (Dooley, J.).

> 2.   *The Plaintiffs' Title IX Claims Must be Dismissed Because Title VII is the Plaintiffs' Exclusive Remedy for Their Sex-Based Discrimination and Retaliation Claims.*

The Title IX claims asserted against Yale University should be dismissed because Title IX does not contain an implied right of action to bring an employment discrimination claim. Accordingly, "[a]n overwhelming majority of district courts in this Circuit have found that an implied private right of action *does not* exist under Title IX for employees alleging gender discrimination in the terms and conditions of their employment." (Emphasis in original) Gayle v. Children's Aid College Prep Charter School, 2019 U.S. Dist. LEXIS 126997, at *14-17 (S.D.N.Y. July 29, 2019). Judge Dooley's reasoning in Othon v. Wesleyan University, 2020 U.S. Dist. LEXIS 53580 (D. Conn. Mar. 27, 2020) (Dooley, J.), is particularly pertinent here. In that case, Christina Othon asserted claims against Wesleyan University for sex-based discrimination and retaliation under both Title VII and Title IX in connection with the denial of her application for tenure, as well as her subsequent termination. Id., at *1. Wesleyan filed a motion to dismiss the Title IX claims, arguing that Title IX does not afford a private remedy for employment discrimination claims. Id. After providing a thorough analysis of relevant precedents from the Supreme Court and other Circuits, Judge Dooley held that "there is no private remedy under Title IX for employment discrimination claims," and granted the motion to dismiss. Id., at *22.

Judge Dooley's holding was based on several important considerations. First, Judge Dooley noted that it is unclear from the legislative history whether Congress anticipated that claimants would use Title IX as a vehicle for asserting employment discrimination claims,

rather than utilizing the comprehensive remedial scheme established by Title VII.  Id., at *23.  Given this lack of clarity and the Supreme Court's admonition that "unless . . . congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist," Judge Dooley determined it was appropriate to grant the motion to dismiss.  Id., at *31-32, citing Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO, 451 U.S. 77, 94 (1981).

Second, Judge Dooley noted that Title IX was enacted after Title VII, and that "[g]iven the elaborate and comprehensive nature of Title VII . . . Congress presumably intended to leave intact only pre-existing alternative remedies, not to permit future overlapping avenues of relief unless it explicitly announced . . . that it was to be in addition to Title VII." Id., at *29, citing Storey v. Bd. of Regents of Univ. of Wis. Sys., 600 F. Supp. 838, 842 (W.D. Wis. 1985); accord Gayle, 2019 U.S. Dist. LEXIS 126997, at *6; Vega v. State Univ. of N.Y. Bd. of Trustees, 2000 U.S. Dist. LEXIS 4749, at *3 (S.D.N.Y. Apr. 13, 2000).

Third, Judge Dooley explained that, although it was initially proposed that the Education Amendments would be used to close the "loopholes" in Title VII, Congress ultimately chose to close those loopholes with the 1972 Amendments to Title VII.  Id., at *23-24.  Judge Dooley reasoned:

> As the Fifth Circuit aptly observed, the notion that Congress intended to create a bypass of Title VII's intricate administrative procedures a mere three months after extending Title VII to governmental employees and educational institutions is an extraordinary proposition.  In this Court's view, the timing of the passage of the 1972 Amendments, followed by the removal from Title IX references to identical remedial provisions, and the subsequent passage of Title IX create a compelling inference that Congress did not intend Title IX to provide a private right of action for employment discrimination. Instead, the more reasonable interpretation of the legislative history, especially in light of Bell, is that Congress chose two remedies for the same right, not

> two rights addressing the same problem—a private remedy under Title VII and an administrative remedy under Title IX.

(Internal quotations marks omitted). Id., citing Lakoski v. James, 66 F.3d 751, at *756-757 (5th Cir. 1995).

Lastly, Judge Dooley found persuasive that "[t]he Supreme Court has never addressed, in *dicta* or otherwise, how Title IX's implied private remedy will apply to employment claims or the relationship between Title VII and Title IX." Id., at *24. She noted that the only case in which the Supreme Court has addressed whether Title IX encompasses employment discrimination is N. Haven Bd. of Ed. v. Bell, 456 U.S. 512, 523 (1982), but Bell is inapposite because it involved a challenge to the validity of administrative regulations terminating federal funding of educational institutions that discriminated on the basis of sex in their employment practices. Id., at *26, citing Gardner v. St. Bonaventure Univ., 171 F. Supp. 2d 118, 128 (W.D.N.Y. 2001); Lakoski, 66 F.3d 751, at *754.

Three years earlier, Judge Bryant reached the same conclusion as Judge Dooley. In Uyar v. Seli, 2017 U.S. Dist. LEXIS 30853 (D. Conn. Mar. 6, 2017) (Bryant, J.), Judge Bryant dismissed the Title IX sexual harassment claims brought against Yale University by a post-doctoral fellow at Yale School of Medicine's Department of Obstetrics, Gynecology and Reproductive Sciences, on the basis that those claims were preempted by Title VII. Id., at *16. She held:

> Title VII is Plaintiff's exclusive remedy. Plaintiff did not allege that she was a student, and all of the allegations in the Complaint focus on Plaintiff's employment with Yale. Title IX was not intended to enable employees of educational institutions complaining of gender discrimination to bypass the remedial scheme Congress established in Title VII. Because all of the allegations in the Complaint relate to the Plaintiff's employment, Count Four must be DISMISSED.

(Internal quotation marks omitted) Id., at *16, citing Urie v. Yale Univ., 331 F. Supp. 2d 94, 97-98 (D. Conn. 2004).

Judge Bryant's holding in Uyar is also consistent with Judge Chatigny's decision in Urie v. Yale University, 331 F. Supp. 2d 94, 95 (D. Conn. 2004), a case involving claims brought against Yale University by a former student and teaching fellow at the Yale Divinity School, for alleged gender discrimination in violation of Title IX.  Id., at *95.  With respect to the legal sufficiency of the Title IX claims, Judge Chatigny held: "I conclude that the allegations of the complaint fail to state a claim for relief based on teacher-student harassment, and that the exclusive remedy for the discrimination plaintiff claims to have suffered while a teaching fellow is provided by Title VII of the Civil Rights Acts of 1964."  Id.

Cases within the Second Circuit holding that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex are legion.  See e.g., Philpott v. New York, 252 F. Supp. 3d 313, 318-19 (S.D.N.Y. 2017) (Hellerstein, J.) ("I join many other courts in this district and hold that employment discrimination claims are not actionable under Title IX"); Carter v. City of Syracuse Sch. Dist., 2012 U.S. Dist. LEXIS 36612, at *3-4 (N.D.N.Y. Aug. 8, 2016) (Scullin, J.) (". . . Title VII provides the exclusive means under which a plaintiff may recover for employment discrimination on the basis of sex"); Summa v. Hofstra Univ., 2011 U.S. Dist. LEXIS 37975, at *17-18 (E.D.N.Y. Apr. 7, 2011) (Wall, J.) ("Based upon my review of the applicable case law, I am persuaded that the better argument is to limit an employee's avenue of redress to Title VII"); Towers v. State Univ. of N.Y. at Stony Brook, 2007 U.S. Dist. LEXIS 37373, at *3-4 (E.D.N.Y. May 21, 2007) (Block, J.) ("The Court agrees with those courts that have held that Title IX cannot be used to circumvent the remedial scheme of Title VII"); Mehrhoff v. William Floyd Union Free Sch.

Dist., 2005 U.S. Dist. LEXIS 46326 *25 (E.D.N.Y. August 22, 2005) (Seybert, J.) (dismissing Title IX claims, observing that "many district courts in the Second Circuit have agreed with the Fifth Circuit which held that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex'"); Gardner v. St. Bonaventure Univ., 171 F. Supp. 2d 118, 128 (W.D.N.Y. 2001) (Foschio, J.) ("the court finds that no private right of action exists for employees of federally funded educational institutions who are the victims of employment discrimination"); George v. Liverpool Cent. Sch. Dist., 2000 U.S. Dist. LEXIS 14793 *38 (N.D.N.Y. September 29, 2000) (Mordue, J.) ("Therefore, the Court finds that Title VII provides the exclusive means for plaintiff to recover against defendant in her employment discrimination claims and dismisses her claims brought under Title IX"); Vega v. State Univ. of N Y. Bd. of Trustees, 2000 U.S. Dist. LEXIS 4749, at *3 (S.D.N.Y. Apr. 13, 2000) (Cote, J.) ("This Court agrees with the Fifth Circuit and numerous district courts that have held that Title VII provides the exclusive remedy for individuals alleging employment discrimination on the basis of sex"); Burrell v. City University of New York, 995 F. Supp. 398 (S.D.N.Y. 1998) (Sweet, J.) ("Title VII is meant to offer the exclusive remedy for employment discrimination based on sex").

In accordance with Othon, Uyar, and Urie, and the vast majority of cases within the Second Circuit on this issue, the sex-based employment discrimination and retaliation claims asserted by the present plaintiffs, who by their own admission are all employees of Yale University and/or Yale New Haven Hospital,[3] are not actionable under Title IX; Title VII is

---

[3] As noted above, Yale University disputes the allegation of joint employment; four of the plaintiffs are employed by Yale University and two are employed by YNHH.

the plaintiffs' exclusive remedy.   Therefore, the plaintiffs' Title IX claims asserted in Counts One and Two must be dismissed.

> 3.      *The Plaintiffs' Title VII Hostile Work Environment Claims are Legally Insufficient Because the Alleged Harassment Cannot be Considered "Severe" or "Pervasive."*

Yale University moves to dismiss the hostile work environment claims asserted under Title VII because the Amended Complaint does not allege severe or pervasive harassment as a matter of law.  To prevail on the Title VII hostile work environment claims based on alleged sexual harassment by Dr. Fontes, the plaintiffs must offer specific allegations to allow a finder of fact to conclude that his inappropriate conduct was "sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment." Newtown v. Shell Oil Co., 52 F. Supp. 2d 366, 371 (D. Conn. 1999) (Goettel, J.).  "Finding the harassment 'pervasive' means that the challenged incidents are 'more than episodic; they must be sufficiently continuous and concerted."  Hayut v. State University of New York, 352 F.3d 733, 745 (2d Cir. 2003) (Calabresi, J.) (quoting Carrero v. N.Y.C. Housing Auth., 890 F.2d 569, 577 (2d Cir. 1989) (Cardamone, J.).  "Indeed, a single instance of sexual harassment is typically insufficient to establish liability under Title IX unless the conduct consists of extreme sexual assault or rape." Carabello v. N.Y.C. Dep't of Educ., 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013) (Azrack, J.).

It is undisputed that "[a]n aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act." Petrosino v. Bell Atlantic, 385 F.3d 210, 219 (2d Cir. 2004) (Raggi, J.).  Drs. Castro, Reinhart, Eltorai, and Boules filed their Complaints with the EEOC on December 4, 2019, and Drs. Jodi-Ann and Lori-Ann Oliver filed their Complaints on

December 5, 2019.  Thus, any alleged inappropriate conduct that occurred before February 4, 2019 is not actionable.  Since the vast majority of the conduct alleged by each plaintiff falls outside the 300-day statute of limitations, the plaintiffs have failed to allege "severe" or "pervasive" sexual harassment by Dr. Fontes.  The plaintiffs alleged that Dr. Fontes sexually harassed them on the following occasions:

| Dr. Lori-Ann Oliver, MD | | |
|---|---|---|
| Incident | Date/Allegation | Occurred Within 300 Days of the EEOC Filing? |
| 1 | *Fall, 2018* – Grabbed around waist (Amended Complaint, ¶ 184) | NO |
| 2 | *April, 2019* – Inappropriate conduct during new hire dinner at Heirloom (Id., ¶ 179) | YES |
| 3 | *October, 2019* – Inappropriate conduct during conference in Orlando, Florida (Id., ¶ 186) | YES |

| Dr. Jodi-Ann Oliver, MD | | |
|---|---|---|
| Incident | Date/Allegation | Occurred Within 300 Days of the EEOC Filing? |
| 1 | *2016* – Inappropriate touching at Anesthesiology Retreat (Id., ¶ 169) | NO |
| 2 | *Mid-2018* – Inappropriate conduct at colleague's going away party (Id., ¶ 176) | NO |
| 3 | *April, 2019* – Inappropriate conduct during new hire dinner at Heirloom (Id., ¶ 179) | YES |

| Dr. Castro | | |
|---|---|---|

| Incident | Date/Allegation | Occurred Within 300 Days of the EEOC Filing? |
|---|---|---|
| 1 | *August, 2018 – Fall, 2018 –* Dr. Fontes stood unnecessarily close to her in operating rooms (Id., ¶ 111) | NO |
| 2 | *Mid-August 2018 –* Unwanted touching while working together in operating room (Id., ¶ 113) | NO |

**Dr. Reinhart**

| Incident | Date/Allegation | Occurred Within 300 Days of the EEOC Filing? |
|---|---|---|
| 1 | *May, 2019 –* Inappropriate conduct at pharmaceutical company dinner at Union League Café (Id., ¶ 190) | YES |
| 2 | *June, 2019 –* Proposition made at New Haven Lawn Club to go to Barcelona Wine Bar later that evening and misbehave (Id., ¶ 196-197) | YES |
| 3 | *July, 2019 –* Inappropriate touching of back and shoulders in breakroom (Id., ¶ 202) | YES |
| 4 | *October, 2019 –* Dr. Fontes linked arms with her and pulled her toward him during conference in Orlando, Florida (Id., ¶ 211) | YES |

**Dr. Boules**

| Incident | Date/Allegation | Occurred Within 300 Days of the EEOC Filing? |
|---|---|---|
| 1 | *2017* – Inappropriate conduct during interview dinner (<u>Id.</u>, ¶ 98) | NO |
| 2 | *Mid-2018* – Inappropriate conduct at colleague's going away dinner at Union League Café (<u>Id.</u>, ¶ 99) | NO |
| 3 | *October, 2018* – Inappropriate conduct during dinner at Union League Café (<u>Id.</u>, ¶¶ 102-104) | NO |
| 4 | *October/November, 2018* – Incident at elevator when Dr. Fontes tried to kiss her (<u>Id.</u>, ¶ 105) | NO |
| 5 | *July, 2019* – Dr. Fontes hugged her (<u>Id.</u>, ¶ 106) | YES |
| 6 | *Mid-September, 2019* – Dr. Fontes asked her out for drinks, grabbed back, and shoulders, and put cheek against hers (<u>Id.</u>, ¶ 106) | YES |

| Dr. Eltorai | | |
|---|---|---|
| Incident | Date/Allegation | Occurred Within 300 Days of the EEOC Filing? |
| 1 | *September, 2018* – Dr. Fontes commented on her body after learning she was pregnant (<u>Id.</u>, ¶¶ 127-128) | NO |
| 2 | *June, 2019* – Inappropriate conduct at dinner for graduating anesthesiology fellows (<u>Id.</u>, ¶¶ 149 -153) | YES |

| 3 | *July, 2019* – Inappropriate conduct in Dr. Fontes' office (Id., ¶¶ 155 -156) | YES |
| 4 | *August, 2019* – Inappropriate conduct in patient's room (Id., ¶ 158) | YES |

As the above chart indicates, Dr. Castro has *not* alleged a single incident of sexual harassment that falls within the statute of limitations; Dr. Jodi-Ann Oliver has alleged only one; Dr. Lori-Ann Oliver and Dr. Boules have each alleged two; and Drs. Eltorai and Reinhart have alleged three and four, respectively.  (See id.)  Since none of the inappropriate conduct alleged by Dr. Castro falls within the statute of limitations, her claim must be dismissed. Likewise, given that Dr. Jodi-Ann Oliver has alleged only a single actionable incident of sexual misconduct, her claim is legally insufficient.  Courts in the Second Circuit have held that "[n]o reasonable person could have believed that [a] single incident of sexually inappropriate behavior by a co-worker could amount to sexual harassment."  Chenette v. Kenneth Cole Productions, 345 F. App'x 615, 619 (2d Cir. 2009) (Winter, J.).  See also, Brodsky v. Trumbull Board of Education, 2009 U.S. Dist. LEXIS 8799, at *6 (D. Conn. Jan. 30, 2009) (Dorsey, J.) (finding that one incident of male student touching a female student's breasts and buttocks, and other incidents of name-calling, insults, and physical harassment, were "not sufficiently pervasive or severe from an objective standpoint").  Thus, Dr. Jodi-Ann Oliver fails to state a claim.

Dr. Lori-Ann Oliver and Dr. Boules, who have both alleged only two incidents of sexual harassment, similarly cannot maintain claims for hostile work environment.  District Courts in this Circuit have frequently held that two separate occurrences of alleged inappropriate behavior are not sufficient to maintain a claim for hostile work environment.  See

e.g., Soriano ex rel. Garcia v. Bd. of Educ. of City of N.Y., 2004 U.S. Dist. LEXIS 21529, at *6 (E.D.N.Y. Oct. 27, 2004) (Gleeson, J.) (finding two separate incidents in which two male students inappropriately touched a female student not sufficiently pervasive under Title IX).[4]

Dr. Eltorai has asserted three incidents of sexual harassment over a three-month period, and Dr. Reinhart has alleged four incidents in a six-month span of time, including one in 2019 when Dr. Fontes linked arms with her.   However, linking arms cannot be considered "objectively offensive," and therefore, Dr. Reinhart, like Dr. Eltorai, has effectively also alleged only three incidents of sexual harassment.   Neither Dr. Eltorai nor Dr. Reinhart can prevail on their claims based on three incidents of alleged sexual misconduct because courts in this Circuit have held that four to five incidents of alleged harassment over several months are not sufficient to state a hostile work environment claim.   See, Legnani v. Alitalia Linee Aeree Italiane, 1997 U.S. Dist. LEXIS 16151, at *3 (S.D.N.Y. Oct. 16, 1997) (Scheindlin, J.) (four to five instances over a two month period did not establish pervasiveness); Lamar v. Nynex Service Co., 891 F. Sup. 184 (S.D.N.Y. 1995) (Knapp, J.) (five incidents of a sexual nature over the course of approximately seventeen months were too sporadic to constitute sexual harassment as a matter of law).   Certainly then, the three incidents alleged by Drs. Eltorai and Reinhart do not rise to the level of frequency required to establish the pervasiveness element of a hostile work environment claim.   Accordingly, the plaintiffs' Title VII hostile work environment claims asserted in Count Three must be dismissed.

---

[4] Torres v. Pisano, 116 F.3d 625, 630 n.3 (2d Cir.) (Calabresi, J.) (same legal standards apply in Title IX cases as in Title VII cases), cert. denied, 522 U.S. 997 (1997).

      4.      *The Hostile Work Environment Claims Asserted by Drs. Jodi-Ann and Lori-Ann Oliver Under Title IX are Legally Insufficient Because the Alleged Harassment Cannot be Considered "Severe" or "Pervasive."*

Drs. Jodi-Ann and Lori-Ann Oliver's hostile work environment claims under Title IX must meet the same fate as their hostile work environment claims asserted under Title VII; since they have not alleged sexual harassment that is "severe" or "pervasive," their Title IX claims must be dismissed, even if there were any claim for discrimination available under Title IX in the employment context.  The same legal standards apply to hostile work environment claims advanced under both Title IX and Title VII.  <u>See</u>, <u>Torres</u>, 116 F.3d 625, 630 n.3 (same legal standards apply in Title IX cases as in Title VII cases), cert. denied, 522 U.S. 997 (1997); <u>Yusuf v. Vassar College</u>, 35 F.3d 709 (2d Cir. 1994) (Winter, J.) ("Because the statutes share the same goals and because Title IX mirrors the substantive provisions of Title VI of the Civil Rights Act of 1964, courts have interpreted Title IX by looking to the body of law developed under Title VI, as well as the caselaw interpreting Title VII").

Dr. Jodi-Ann Oliver has alleged that Dr. Fontes harassed her on three occasions: (1) at an anesthesiology research retreat in or around 2016; (2) at a colleague's going away party in mid-2018; and (3) at an applicant dinner in April, 2019.  (Amended Complaint, at ¶¶ 169, 176, 179-180.)  Specifically, Dr. Jodi-Ann Oliver alleged that Dr. Fontes acted inappropriately by touching her lower back, hugging her and slipping his hand down her backside during the 2016 retreat (<u>Id.</u>, at ¶ 169); touching her arm and back during the 2018 going away party, and whispering sexual advances in her ear (<u>Id.</u>, at ¶ 176); and touching her arms, neck, back and shoulders during the 2019 applicant dinner, whispering inappropriate comments to her, and giving her a hug and kiss on the lips at the end of the night.  (<u>Id.</u>, at ¶¶ 179-180.)  Like her twin sister, Dr. Lori-Ann Oliver has also alleged that Dr. Fontes sexually harassed her on three

occasions: (1) when he grabbed her around the waist in 2018; (2) when he gave her a kiss on the lips at the end of the 2019 applicant dinner; and (3) when he squeezed her shoulders and put an arm around her waist and back at a conference in Orlando, Florida in 2019.[5]  (Id., at ¶¶ 183-184, 186.)

As indicated above, the plaintiffs commenced the present action in March, 2020.  Thus, the sexual harassment that Dr. Jodi-Ann Oliver claims occurred in 2016 falls outside the three-year statute of limitations applicable to Title IX claims.  See, Curto v. Edmundson, 392 F.3d 502, 504 (2d Cir. 2004) (per curiam) ("While we have not yet had occasion to determine the appropriate statute of limitations for Title IX claims, our sister circuits that have confronted the issue have concluded that Title IX claims are most closely analogous to personal injury actions and, therefore, have borrowed the state statute of limitations for personal injury actions"); Aslin v. University of Rochester, 2019 U.S. Dist. LEXIS 146873, at *44 (W.D.N.Y. Aug. 28, 2019) (Vilardo, J.) ("A three-year statute of limitations period applies to Title IX claims"); Lounsbury v. Jeffries, 25 F.3d 131 (2d Cir. 1994) (Kearse, J.) (applying three-year statute of limitations contained in Conn. Gen. Stat. Section 52-577 when applicable statute did not specify limitations period).  Those allegations, therefore, cannot be used to support Dr. Jodi-Ann Oliver's claim for hostile work environment against Yale University.

While Dr. Lori-Ann Oliver has alleged that Dr. Fontes inappropriately touched her on three occasions, only one episode of the alleged touching was sexual in nature (the kiss in 2019).  Apart from that incident, Dr. Lori-Ann Oliver alleges that Dr. Fontes grabbed her around the waist in 2018, and touched her shoulders, back and waist during an encounter in

---

[5] In the initial Complaint, Dr. Lori-Ann Oliver alleged that she had been sexually harassed only once.

2019.  (Amended Complaint, at ¶¶ 183-184, 186.)  Touching of the back, shoulders and waist does not, on its face, constitute sexually charged behavior.  See e.g., Lucas v. South Nassau Communities Hospital, 54 F. Supp. 2d 141, 147 (E.D.N.Y. 1998) (Seybert, J.) (holding that the sexual misconduct alleged, including touching the plaintiff's back or shoulder briefly on five to seven unidentified occasions, did not constitute sufficiently severe conduct that it altered the conditions of the plaintiff's employment); Buddle v. Heublein, Inc., 613 F. Supp. 491, 492 (S.D.N.Y. 1985) (Stewart, J.) (defendant's off-color jokes and touching of plaintiff's knee and shoulder did not constitute sexual harassment, but were "only a reflection of his bumptious personality"); Lamar v. Nynex Service Co., 891 F. Supp. 184, 185 (S.D.N.Y. 1995) (Knapp, J.) (supervisor's touching of plaintiff's hand while observing that she "looked really hot," combined with vulgar sexual remarks on four other occasions was "too mild and innocuous to constitute sexual harassment as a matter of law"); Gregg v. New York State Dept. of Taxation & Finance, 1999 U.S. Dist. LEXIS 5415, at *1 (S.D.N.Y. Apr. 15, 1999) (Mukasey, J.) (four minor instances of offensive touching, including a "pat[] on the behind," was not sufficiently severe or pervasive to alter the conditions of plaintiff's employment).

Since Dr. Lori-Ann Oliver has effectively alleged only one incident of sexual harassment, her claim must be dismissed.  As noted above, the District Courts in this Circuit have repeatedly held that "a single instance of sexual harassment is typically insufficient to establish liability under Title IX unless the conduct consists of extreme sexual assault or rape." See e.g., Carabello v. N.Y.C. Dep't of Educ., 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013) (Azrack, J.).  Dr. Lori-Ann Oliver's allegations fall far short of that exacting standard.  See e.g., Brodsky, 2009 U.S. Dist. LEXIS 8799, at *6 (finding that one incident of a male student touching a female student's breasts and buttocks, and other incidents of name-calling, insults,

and physical harassment, were "not sufficiently pervasive or severe from an objective standpoint").

To the extent that Drs. Jodi-Ann and Lori-Ann Oliver have alleged that, "[t]hroughout their employments, Dr. Fontes has repeatedly come up behind each of them and inappropriately and unwantedly touched their backs and shoulders," (Complaint, at ¶ 168), that too is insufficient to state a hostile work environment claim.[6] It is well-established that, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   A "formulaic recitation of the elements of a cause of action will not do," "[n]or does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557).  Since Drs. Jodi-Ann and Lori-Ann Oliver have alleged nothing more than a conclusory statement that Dr. Fontes touched their backs and shoulders, they have not stated a hostile work environment claim, nor can the Court possibly determine from that conclusory statement that the conduct was sufficiently severe or pervasive that it meets the exacting standard required for stating a hostile work environment claim. Furthermore, the present complaint is too vague and conclusory to satisfy the standard for pleading a hostile work environment claim.  See, Martinetti v. Mangan, 2019 U.S. Dist. LEXIS 45320, at *14-15 (S.D.N.Y. Mar. 19, 2019) (Karas, J.) (dismissing the plaintiff's Title IX claims and stating, "Although Plaintiff alleges a sexual assault, she has pled no facts explaining

---

[6] Dr. Lori-Ann Oliver has also asserted a separate, similarly vague allegation that "approximately three to four times each year, [Dr. Fontes] inappropriately touched her nearly every single time they would run into each in the YNHH hallways or operating rooms."  (Id., at ¶ 184.)

what exactly occurred, preventing the Court from determining whether the alleged assault was the type of attack that is sufficiently serious to state a claim under Title IX").

Accordingly, the hostile work environment claims asserted by Drs. Jodi-Ann and Lori-Ann Oliver asserted in Count One should be dismissed.

> 5. *Drs. Castro, Boules, Lori-Ann Oliver's and Jodi-Ann Oliver's Title IX and Title VII Hostile Work Environment Claims Fail to State a Claim Because They Did Not Plead That Yale University had "Actual Notice" of Any Alleged Wrongdoing.*

To prevail on their Title IX and Title VII discrimination claims, the plaintiffs must show that Yale University had "actual notice" of the alleged discrimination.  See Alexander v. Hunt, 2018 U.S. Dist. LEXIS 134572 (D. Vt. Aug. 9, 2018) (Crawford, J.)  The requirement for "actual notice" is a "significant burden." Carabello v. New York City Dep't of Educ., 928 F. Supp. 2d 627, 639 (E.D.N.Y. 2013) (Azrack, J.).  Constructive notice is not sufficient, nor can the plaintiffs impute Dr. Fontes' alleged discriminatory conduct to Yale University in order to establish that Yale University had actual notice.  See Zeno v. Pine Plains Cent. Sch. Dist., 702 F.3d 655, 666 (2d Cir. 2012) (Chin, J.); Gebser v. Lago Vista Independent School District, 524 U.S. 274 (1998) ("Title IX contains no comparable reference to an educational institution's 'agents,' and so does not expressly call for application of agency principles"; knowledge of inappropriate comments by teacher does not put school district on notice of teacher's inappropriate sexual relationship). Even direct communication from a plaintiff to management employed by the defendant is insufficient to show actual notice.  See Doe v. Flaherty, 623 F.3d 577, 585 (8th Cir. 2010) (Colloton, J.) (affirming the district court's decision, finding that a principal's knowledge of the alleged harasser's suggestive text messages to female students

and the principal's conversations with a female student's parents regarding the wrongdoer's conduct was not "actual notice" under Title IX).

Drs. Castro, Boules, Lori-Ann Oliver and Jodi-Ann Oliver have failed to allege that Yale University had "actual notice" of the alleged misconduct. Dr. Boules never told *anyone* that Dr. Fontes had discriminated against her, and therefore, her claim must be dismissed; Dr. Boules' vague email to Yale New Haven Hospital's Chief Medical Experience Officer that she wanted to speak with him about an unidentified topic certainly is not sufficient to put Yale University on actual notice of a discrimination complaint. (Amended Complaint, at ¶¶ 94-109.) Likewise, Dr. Castro alleges only that she submitted an "anonymous evaluation" of Dr. Fontes at an unidentified time. (Id., at ¶ 117.) Surely this anonymous "evaluation" – which, she did not even characterize as a complaint – cannot meet the rigorous "actual notice" requirement under Title VII and Title IX. See Carabello, 928 F. Supp. 2d 627, at * 639.

Dr. Jodi-Ann Oliver alleges, in the most cursory fashion, that she complained at an unidentified time about Dr. Fontes' alleged misconduct, and Dr. Lori-Ann Oliver alleges that she did nothing more than casually "mention" Dr. Fontes' alleged touching of her. (Id., at ¶¶ 171-72, 175, 184). In fact, Dr. Lori-Ann Oliver specifically alleges that she decided *not* to pursue a complaint against Dr. Fontes. (Id., ¶ 185). As discussed, "[t]o survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft, 556 U.S. 662, at *678 (quoting Twombly, 550 U.S. 544, at *570). Drs. Lori-Ann and Jodi-Ann Oliver have alleged nothing more than "naked assertions" devoid of "further factual enhancement," which are insufficient to withstand a motion to dismiss. Id. (quoting Twombly, 550 U.S. at 555, 557). Without sufficient factual detail about the time and nature of the complaints, the Court cannot

possibly conclude that they have stated a claim on the actual notice requirement.  Thus, the

hostile work environment claims asserted by Drs. Castro, Boules, Lori-Ann Oliver and Jodi-

Ann Oliver in Counts One and Three must be dismissed.

> 6. *Drs. Castro and Eltorai's Retaliation Claims Under Both Title IX and Title VII are Legally Insufficient Because They Fail to Allege Yale University Took an Adverse Employment Action Against Them.*

Drs. Castro and Eltorai cannot prevail on their retaliation claims because they have not

alleged that Yale University took an adverse employment action against them, one of the

elements necessary to state a claim for retaliation under both Title IX and Title VII.  To

establish a *prima facie* case of retaliation, Drs. Castro and Eltorai must allege facts sufficient

to support each of the following elements: (1) they engaged in protected activity of which Yale

University was aware; (2) Yale University took an adverse employment action against them;

and (3)  a causal connection exists between the protected activity and the adverse employment

action.  Paulino v. N.Y. Printing Pressman's Union, Local Two, 301 Fed. Appx. 34, 37 (2d

Cir. 2008) (Sack, J.).  See also, Curto v. Edmundson, 392 F.3d 502, 504 (2d Cir. 2004) (per

curiam) (applying Title VII standards to Title IX cases).  The Second Circuit has ruled: "A

plaintiff sustains an adverse employment action if he or she endures 'a materially adverse

change' in the terms and conditions of employment."  Galabya v. New York City Bd. of

Educ., 202 F.3d 636, 640 (2nd Cir. 2000) (Parker, J.).  To rise to the level of "materially

adverse," "a change in working conditions must be more than a mere inconvenience or an

alteration of job responsibilities."  Id.  "A materially adverse change in working conditions

might be indicated by a termination of employment, a demotion evidenced by a decrease in

wage or salary, a less distinguished title, a material loss of benefits, significantly diminished

material responsibilities, or other [such] indices . . . ."  Id., at *640.

Drs. Castro and Eltorai have not alleged that they were terminated, demoted, or suffered a decrease in salary or benefits.  Instead, the Amended Complaint alleges only that Yale University "fail[ed] to properly investigate their claims of discrimination and sexual assault in retaliation for their protected activity."[7]  (Amended Complaint, at ¶ 225.)  The Second Circuit has specifically held that "an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint."  Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010) (Sack, J.).

Fincher is dispositive on this point.  The plaintiff there advanced claims for retaliation, hostile work environment, and constructive discharge against her employer.  Id., at *716.  The District Court dismissed all claims on a motion for summary judgment, including the retaliation claims because the plaintiff had not alleged an adverse employment action.  Id., at *716, 721.  The plaintiff appealed, arguing that her employer's failure to investigate her complaints of racial discrimination was itself retaliatory.  Id., at *716.  On appeal, the Second

---

[7] The plaintiffs also allege that Yale University "instigat[ed] retaliatory investigation practices."  (Amended Complaint, at ¶ 225.)  However, this directly contradicts the plaintiffs' assertion that Yale University failed to investigate the plaintiffs' complaints; the plaintiffs cannot plausibly claim that Yale University both investigated their complaints, and failed to do so.  In any event, the plaintiffs have alleged no factual basis for their claim that Yale University instigated retaliatory investigation practices.  Even if the plaintiffs had made such a claim, commencing an investigation does not constitute an adverse employment action.  See McInnis v. Town of Weston, 375 F. Supp. 2d 70, 84-85 (D. Conn. 2005) (Arterton, J.) (noting that "plaintiff offer[ed] no authority for the proposition that the initiation of an investigation, without more, is itself an adverse employment action," and holding that "the internal affairs investigations directed at [plaintiff] . . . cannot, in themselves, be found to violate the ADEA's proscription on retaliation"); Weber v. City of New York, 973 F. Supp. 2d 227, 269 (E.D.N.Y. 2013) (Brodie, J.) ("courts have held that commencement of an investigation alone is not sufficient to establish an adverse employment actions"); Wright v. Monroe Cmty. Hosp., 2011 U.S. Dist. LEXIS 82809, at *7 (W.D.N.Y. July 28, 2011) (Telesca, J.) ("Employee investigations . . . without attendant negative results or deprivation of position/opportunity, do not sufficiently constitute adverse employment actions under Title VII"), aff'd, 493 F. App'x 233 (2d Cir. 2012).

Circuit held that summary judgment dismissing the plaintiff's retaliation claim was proper because "an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint."  Id., at *722.  The Court explained:

> Affirmative efforts to punish a complaining employee are at the heart of any retaliation claim.  An employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint. . . . Put another way, an employee's knowledge that her employer has declined to investigate her complaint will not ordinarily constitute a threat of further harm, recognizing, of course, that it would hardly provide a positive incentive to lodge such a further challenge.

Id.

Petyan v. New York City Law Dept., 2015 U.S. Dist. LEXIS 53380 (S.D.N.Y. Apr. 23, 2015) (Cott, J.), is on all fours with the case sub judice.  In that case, the plaintiff asserted employment discrimination and retaliation claims against the City of New York.  Id., at *1.  The City of New York moved to dismiss the plaintiff's complaint on several grounds, including that he did not state a claim for retaliation because the failure to investigate his claim cannot be considered an adverse employment action.  Id., at *7.  The Court agreed with the City of New York, stating: "the HR Division's alleged failure to properly investigate Petyan's claim does not constitute an adverse employment action."  Id., at *31.

Numerous other District Courts in the Second Circuit have similarly concluded that the failure to investigate an employee's complaints does not constitute an adverse employment action.  See e.g., Kelly v. New York State Office of Mental Health, 200 F. Supp. 3d 378, 404-05 (E.D.N.Y. 2016) (Matsumoto, J.) ("plaintiff's allegation that defendants failed to investigate her complaints of discrimination on the basis of her alleged disability fails to state an adverse employment action"); Hong Yin v. N. Shore LIJ Health Sys., 20 F. Supp. 3d 359, 374 (E.D.N.Y. 2014) (Hurley, J.) (holding that "an employer's failure to investigate discrimination

claims is not an adverse employment action"); <u>White v. Pacifica Foundation</u>, 973 F. Supp. 2d 363, 379 n.4 (S.D.N.Y. 2013) (Gardephe, J.) ("To the extent that Plaintiff alleges that Pacifica did not properly investigate his September  2007 complaint, such conduct does not constitute an adverse employment action for purposes of stating a *prima facie* case of employment discrimination"); <u>Sesay-Harrell v. NYC Dep't of Homeless Servs.</u>, 2013 U.S. Dist. LEXIS 170160, at *14-15 (S.D.N.Y. Dec. 2, 2013) (Failla, J.) (supervisor's failure to address complaints did not constitute an adverse employment action); <u>Eldridge v. Rochester City Sch. Dist.</u>, 968 F. Supp. 2d 546, 558 (W.D.N.Y. 2013) (Payson, J.) (denying motion to amend complaint to add race discrimination claim based on insufficient investigation because that did not constitute an adverse employment action); <u>Aka v. Jacob K. Javits Convention Ctr. of N.Y.</u>, 2011 U.S. Dist. LEXIS 114002, at *14 n.10 (S.D.N.Y. Sept. 30, 2011) (Maas, J.) ("To the extent that [plaintiff] asserts a discrimination claim against [defendant] for its failure to adequately investigate his complaints . . . his claim is without merit. [Plaintiff] has not shown that [defendant's] alleged failure to investigate his complaint . . . constituted an adverse employment action"); <u>Price v. Cushman & Wakefield, Inc.</u>, 808 F. Supp. 2d 670, 690 (S.D.N.Y. 2011) (Holwell, J.) ("Defendants' failure to follow up on [plaintiff's] claims of discrimination is not an adverse employment action"); <u>Hayes v. Kerik</u>, 414 F. Supp. 2d 193, 203 (E.D.N.Y. 2006) (Feuerstein, J.) ("Defendants are correct in their contention that plaintiff's allegations . . . that [defendants] failed to properly investigate her . . . complaint of discrimination, do[es] not constitute [an] adverse employment action[]").

  At most, Dr. Eltorai alleges that, after she complained about Dr. Fontes' misconduct, she was: (1) counseled by Dr. Fontes and two of his subordinates in connection with her poor ICU performance in February 2019; (2) transferred out of the ICU in August 2019; and (3)

denied volunteer work shifts in May 2020.  (Amended Complaint, ¶¶ 132, 134, 136, 139-40, 143-44, 161-64).  None of these allegations amounts to an adverse employment action.  It is well established that poor performance evaluations and negative comments are not adverse employment actions.  See e.g., Walder v. White Plains Board of Education, 738 F. Supp. 2d 483, 499 (S.D.N.Y. 2010) (Peck, J.) ("[i]t is well-settled that negative evaluations alone, without any accompanying adverse consequences, such as a demotion, diminution of wages, or other tangible loss, do not constitute adverse employment actions"); Brierly v. Deer Park Union Free Sch. Dist., 359 F. Supp. 2d 275, 300 (E.D.N.Y. 2005) (Hurley, J.) (negative reviews or reprimands "that do not lead to materially adverse employment consequences are generally not considered actionable"); Teachout v. N.Y. City Dep't. of Educ., 2006 U.S. Dist. LEXIS 7405, at *13 (S.D.N.Y. Feb. 22, 2006) (Lynch, J.) ("Negative comments . . . are not, standing alone, adverse employment actions, because mere comments do not materially affect employment"); Weeks v. New York State (Div. of Parole), 273 F.3d 76, 86 (2d Cir. 2001) (Jacobs, J.) (criticizing an employee not an adverse employment action), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002); Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) (Jones, J.) (unfairly criticizing employee and giving unfavorable schedules and work assignments not adverse employment actions); Ragin v. East Ramapo Cent. School Dist., 2010 U.S. Dist. LEXIS 32576, at *17-18 (S.D.N.Y. Mar. 31, 2010) (Gardephe, J.) ("a negative or critical evaluation will not constitute an adverse employment action unless the evaluation is accompanied by other adverse consequences"); Fincher, 2008 U.S. Dist. LEXIS 70046, at *4 ("[N]egative evaluations alone . . . do not constitute adverse employment actions"), aff'd, 604 F.3d 712 (2d Cir. 2010); Jackson v. City Univ. of N.Y., 2006 U.S. Dist. LEXIS 43221, at *4 (S.D.N.Y. June 23,

2006) (Rakoff, J.) ("As to various negative evaluations plaintiff may have received, it is well-established that negative evaluations alone do not constitute an adverse employment action. . . .").

Courts in this Circuit have also repeatedly held that an internal reassignment does not meet the definition of an adverse employment action, and therefore, restricting Dr. Eltorai's ICU schedule does not satisfy that requirement.[8]  See e.g., Clarke v. City of New York, 2001 U.S. Dist. LEXIS 11136, at *16 (E.D.N.Y. Aug. 1, 2001) (Glasser, J.) (holding that a physician's transfer from the Emergency Department to Urgent Care was a mere reassignment and not a demotion, and thus not an adverse employment action); Nicholls v. Brookdale University Hosp. and Medical Center, 2005 U.S. Dist. LEXIS 12582, at * 31 (E.D.N.Y. June 22, 2005) (Weinstein, J.) (unfavorable work schedule, causing diminution in prestige and allowing for fewer opportunities to rotate between challenging and less challenging work on a regular basis, did not constitute an adverse employment action), aff'd, 205 Fed. Appx. 858 (2d Cir. 2006); Cotterell v. Gilmore, 64 F. Sup. 3d 406, 427 (E.D.N.Y. 2014) (Spatt, J.) ("a bruised ego, a demotion without change in pay, benefits, duties, or prestige, or reassignment to [a] more inconvenient job are insufficient to constitute a tangible or material adverse employment action"); Valenti v. Massapequa Union Free School District, 2006 U.S. Dist. LEXIS 62899, at *26 (E.D.N.Y. Sep. 5, 2006) (Bianco, J.) ("[c]hanges in assignments or duties that do not radical[ly] change the nature of work are not typically adverse employment actions").

---

[8] Tellingly, Dr. Eltorai has admitted that she had "almost no" experience treating patients in the ICU.  (Amended Complaint, ¶ 147.)

Second Circuit courts have consistently held that berating or demeaning conduct is not an adverse employment action.  See e.g., Fox v. Costco Wholesale Corp., 918 F.3d 65, 72 (2d Cir. 2019) (Hall, J.) (holding that four verbal reprimands, including yelling, were not adverse employment actions); Hahn v. Bank of Am. Inc., 2014 U.S. Dist. LEXIS 45886, at *24 (S.D.N.Y. Mar. 31, 2014) (Freeman, J.) (concluding that the plaintiff's allegations that, "on a few occasions, [her supervisor] yelled at her, and, on a few other occasions, [the same supervisor] otherwise embarrassed her in front of her co-workers" did not "rise to the level of a material adverse action under the general retaliation standard"); Pomillo v. Wachtell Lipton Rosen & Katz, 1999 U.S. Dist. LEXIS 53, at *8 (S.D.N.Y. Jan. 6, 1999) (Mukasey, J.) ("plaintiff's allegations with respect to any sarcastic comments, demeaning comments, insults, threats, and intimidation do not constitute an adverse employment action"); E.E.O.C. v. Bloomberg L.P., 967 F. Supp. 2d 816, 847 (S.D.N.Y. 2013) (Preska, J.) (noting that "yelling, without more, does not constitute an adverse employment action" for the purpose of a retaliation claim); Scott v. City of New York Dep't of Corr., 641 F. Supp. 2d 211, 231 (S.D.N.Y. 2009) (Gorenstein, J.) (explaining that "verbal abuse is typically insufficient to constitute an adverse employment action because negative or otherwise insulting statements are hardly even actions, let alone adverse actions" for the purpose of a retaliation claim); Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) (Jones, J.) ("[B]eing yelled at ... do[es] not rise to the level of [an] adverse employment action . . .  because [it does] not have a material impact on the terms and conditions of Plaintiff's employment"); Katz v. Beth Israel Md. Ctr., 2001 U.S. Dist. LEXIS 29, at *14 (S.D.N.Y. Jan. 4, 2001) (Schwartz, J.) ("Being yelled at [and] receiving unfair criticism . . .  do not rise to the level of adverse employment actions"); Sekyere v. City of N.Y., 2009 U.S. Dist. LEXIS 28960, at *9 (S.D.N.Y. Mar. 18,

2009) (Jones, J.) ("Defendants' yelling and screaming at Plaintiff anytime job related instructions were given . . . do[es] not amount to adverse employment action"); <u>Pappas v. N.Y. Bd. of Educ.</u>, 2011 U.S. Dist. LEXIS 3871, at *3 n.3 (E.D.N.Y. Jan. 14, 2011) (Block, J.) (being yelled at by supervisors is not an adverse employment action); <u>Brennan v. City of White Plains</u>, 67 F. Supp. 2d 362, 374 (S.D.N.Y. Oct. 5, 1999) (Sweet, J.) (yelling once and telling plaintiff another time that she had "made it miserable here" was not an adverse employment action).

Neither does denial of volunteer opportunities meet the requirement for an adverse employment action.  <u>See</u> <u>e.g.</u>, <u>Wharton v. County of Nassau</u>, 2013 U.S. Dist. LEXIS 129127, at *26 (E.D.N.Y. Sep. 10, 2013) (Seybert, J.) (denial of volunteer opportunities simply does not rise to the level of adverse employment actions); <u>Chamberlin v. Principi</u>, 247 F. App'x 251, 254-55 (2d Cir. 2007) (Straub, J.) (preventing plaintiff from volunteering as a replacement group leader did not satisfy standard for retaliatory act).

On her part, Dr. Castro alleges: (1) that Dr. Fontes yelled at her to pick up a syringe cap;[9] and (2) that Dr. Fontes refused to support her request to go on a mission trip to Peru, unless she used her vacation time (she went anyway).  (Amended Complaint, at ¶¶ 115-116, 119.)  Similarly, telling Dr. Castro that she needed to use vacation time for the Peru trip did not constitute an adverse employment action. <u>See</u> <u>e.g.</u>, <u>Jean-Pierre v. Citizen Watch Co. of America, Inc.</u>, 2019 U.S. Dist. LEXIS 196109, at *13 (S.D.N.Y. Nov. 12, 2019) (Caproni, J.) ("Courts in this District have explained that an employer's refusal to grant days off is not an adverse employment action because while such actions may have made the work place

---

[9] As discussed above, yelling is not an adverse employment action.

unpleasant," they do not have any "attendant negative result"); <u>Kaur v. New York City Health & Hosps. Corp.</u>, 688 F. Supp. 2d 317, 332 (S.D.N.Y. 2010) (Preska, J.) ("denial of vacation time . . . do[es] not rise to the level of an adverse employment action"); <u>Gutierrez v. City of New York</u>, 756 F. Supp. 2d 491, 508 (S.D.N.Y. 2010) (Sand, J.) (refusing to grant days off is not an adverse employment action); <u>Lovera v. City of New York</u>, 2014 U.S. Dist. LEXIS 20965, at *9 (S.D.N.Y. Feb. 14, 2014) (Crotty, J.) (the Unit C.O.'s refusal to approve an out of town work trip was not an adverse employment action); <u>Negussey v. Syracuse University</u>, 1997 U.S. Dist. LEXIS 3853, at *35 (N.D.N.Y. Mar. 24, 1997) (Munson, J.) (indicating that denial of travel money to present research in Greece did not materially change the conditions of the plaintiff's employment).  Simply put, "not everything that makes an employee unhappy is an actionable adverse action."  <u>Clarke v. City of New York</u>, 2001 U.S. Dist. LEXIS 11136, at *14 (E.D.N.Y. Aug. 1, 2001) (Glasser, J.)

Dr. Castro's retaliation claim must also be dismissed for the additional reason that, as discussed above, she has failed to establish that Yale University was aware that she engaged in any protected activity; Dr. Castro's "anonymous evaluation" of Dr. Fontes is certainly insufficient to put Yale University on notice of any alleged discrimination.  (Amended Complaint, at ¶ 117.)  <u>See</u> <u>Paulino v. N.Y. Printing Pressman's Union, Local Two</u>, 301 Fed. Appx. 34, at *37.  Since neither Dr. Castro nor Dr. Eltorai has alleged an adverse employment action, they have not satisfied their burden to plead a *prima facie* claim for retaliation, and the retaliation claims asserted in Counts Two and Four must therefore be dismissed.

**B.**     <u>*Motion to Strike*</u>

    *1.*     *Legal Standard*

Federal Rule of Civil Procedure 12(f) allows a party to request that the Court strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Whether to grant or deny a motion to strike is vested in the trial court's sound discretion. <u>Tucker v. Am. Int'l Group, Inc.</u>, 936 F. Supp. 2d 1, 15 (D. Conn. March 28, 2013) (Haight, J.). A motion to strike "may be granted where the allegations challenged have no real bearing on the subject matter or are likely to prejudice the movant." <u>Red Ball Interior Demolition Corp. v. Palmadessa</u>, 908 F. Supp. 1226, 1241-42 (S.D.N.Y.1995) (Sweet, J.). "Even where matter in a pleading is relevant to the controversy, it nonetheless may be stricken if it is scandalous or set out in 'needless detail.'" <u>Cabble v. Rollieson</u>, 2006 U.S. Dist. LEXIS 7385, at *32 (S.D.N.Y. Feb. 24, 2006) (Maas, J.) (citing <u>Gleason v. Chain Service Rest.</u>, 300 F. Supp. 1241, 1257 (S.D.N.Y.1969) (Herlands, J.)). Where "[r]etention of the allegation will prejudice the defendant, or if it serve[s] no purpose except to inflame the reader, then it should be stricken." <u>Impulsive Music v. Pomodoro Grill, Inc.</u>, 2008 U.S. Dist. LEXIS 94148, at *7 (W.D.N.Y. Nov. 19, 2008) (Telesca, J.). Thus, "[t]o prevail on a Rule 12(f) motion to strike, the movant must show (1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." <u>MC1 Healthcare, Inc. v. United Health Group, Inc.</u>, 2019 U.S. Dist. LEXIS 76515, at *29-30 (D. Conn. May 7, 2019) (Dooley, J.). That standard has been met in this case.

2.      *The Allegations Contained in Paragraphs 38 Through 61 of the Plaintiffs' Amended Complaint are Immaterial, Impertinent, Scandalous, and Inadmissible.*

Paragraphs 38 through 61 appear in a section titled "Yale University's Troubling History of Protecting Male Doctors Accused of Sexual Harassment." (Amended Complaint, at ¶¶ 38-61.)   In Paragraphs 38 through 57, the plaintiffs recite the explicit details of four sexual misconduct cases that were previously brought against Yale University by third-parties, and one that is currently pending; neither the plaintiffs nor Dr. Fontes nor anyone else involved in the present case were involved in any of those cases.   (Id., at ¶¶ 28-48.)   In those paragraphs, the plaintiffs go so far as to identify each Yale employee accused of sexual misconduct by name, and then relate, chapter-and-verse, the claims alleged in each of those unrelated actions. (Id., at ¶¶ 20-48.)   Then, in Paragraphs 58 through 61, the plaintiffs list the findings from an anonymous survey conducted by the Association of American Universities regarding the presence of sexually harassing behaviors among students – not employees – at Yale University. (Id., at ¶¶ 48-50.)

The allegations contained in Paragraphs 38 through 57 are entirely irrelevant, immaterial, and impertinent to the present action.   The individual plaintiffs have asserted claims for gender-based hostile work environment and retaliation based on specific, discrete acts of allegedly inappropriate behavior by Dr. Fontes.   None of the incidents alleged in Paragraphs 38 through 57 have any similarity to the claims of the present plaintiffs.   Neither they nor Dr. Fontes were in any way connected to those prior and pending claims of sexual harassment, and none of them resulted in any adjudication of wrongdoing by anyone.   They are therefore irrelevant to the instant action; and evidence about those claims will not be admissible in this action.

Correction Officers Benevolent Assn. v. Kralik, 226 F.R.D. 175 (S.D.N.Y. 2005) (Robinson, J.), is instructive.  In that case, the Correction Officers Benevolent Association and several of its individual members alleged gender-based discrimination against the Sheriff of Rockland County, the Rockland County Office of the Sheriff, and the County of Rockland. Id., at *176.  In several paragraphs of the complaint, the plaintiffs detailed a 1992 settlement of a prior lawsuit involving similar parties and issues.  Id., at *177.  They also attached an exhibit to the complaint that referenced past litigation involving the parties.  Id.  The Court struck the paragraphs, holding that "[p]rior settlement agreements, no matter how similar the litigation, are irrelevant to this case or the facts giving rise thereto."  Id.  The Court also struck the exhibit, reasoning that the "references to past events and litigation [were] equally unrelated to the matter at hand."  Id.

The Court's holding in Smith v. AVSC International, Inc., 148 F. Supp. 2d 302 (S.D.N.Y. 2001) (Sweet, J.), is also persuasive.  In that case, the plaintiff claimed that his termination was motivated by retaliation and discrimination based on his gender and/or age. Id., at *306.  The plaintiff alleged various incidents of harassment by his direct supervisor against parties other than the plaintiff, and the defendant-employer moved to strike those allegations pursuant to 12(f) on the ground that they were immaterial and irrelevant.  Id., at *317.  The Court granted the motion to strike, holding that specific allegations about the supervisor's behavior toward other employees were not relevant to the plaintiff's claims.  Id. If prior allegations against the same supervisor must be stricken, then a fortiori the motion to strike should be granted in the present case where the extraneous allegations relate to alleged harassment by different supervisors in different departments.  See also, Corley v. Louisiana ex rel. Division of Admin. Office of Risk Management, 2010 U.S. Dist. LEXIS 84516, at *4-6

(M.D. La. Aug. 16, 2010) (Reidlinger, J.) (in a race discrimination case, striking allegations of "unrelated discriminatory actions by the defendants against other African-American employees in the agency where [the plaintiff] worked" because "the events are irrelevant to the plaintiff's individual claims of discrimination/retaliation"); <u>Tennison v. Circus Enterprises, Inc.</u>, 244 F.3d 684, 690 (9th Cir. 2001) (Boochever, J) (in a sexual harassment case, finding that the exclusion of evidence regarding complaints by other, non-plaintiff employees years prior to the conduct at issue was not appropriate, since admitting the evidence would have created "a significant danger that the jury would base its assessment of liability on remote events involving other employees, instead of recent events concerning Plaintiffs"); <u>Allocco v. Dow Jones & Co.</u>, 2002 U.S. Dist. LEXIS 12542, at *5 (S.D.N.Y. July 10, 2002) (McKenna, J.) (granting motion to strike allegations regarding the defendants' conduct unrelated to the plaintiff's claims).

The reasoning in <u>Kralik</u> and <u>Smith</u> is applicable here. The fact that four sexual misconduct cases were previously brought against Yale University by parties not involved in the subject action, in which allegations were made against different supervisors in different departments from the present plaintiffs, does not make it any more or less probable that the instant plaintiffs were the victims of discrimination or retaliation. <u>See</u>, Fed. R. Evid. 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Unlike in <u>Kralik</u>, where the Court struck allegations and an exhibit regarding prior litigation involving *similar parties*, here it is undisputed that the prior sexual misconduct cases did not involve either the present plaintiffs or Dr. Fontes or any of the other supervisors whose conduct is being challenged in the present case, nor did they involve the

same department; thus, the argument is even stronger that they bear no relationship to the claims asserted in the present action.

Similarly, the statistics described in Paragraphs 58 through 61--which involve an anonymous survey which queried Yale University undergraduate *students*, not Medical Center employees, as to their perception of sexual assault on campus--are entirely irrelevant to the hostile work environment claims asserted by the present plaintiffs.  Even if the undergraduate students believed they were the victims of sexual assault (most often by other students), that would not make it any more or less likely that the physicians at the Medical Center who filed the present complaint were subjected to a hostile work environment.  And an anonymous survey concerning that subject would clearly be inadmissible to prove the present plaintiffs' claims.  See, Tucker, 936 F. Supp. 2d 1, 25 (Haight, J.) (granting motion to strike  because the allegations were irrelevant, and "[t]o allow such irrelevant allegations to remain would unduly prejudice Defendants").

Since the prior and pending sexual misconduct cases and statistics recited in the present complaint will not "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," that evidence is inadmissible.  See, Fed. R. Evid. 401.  Evidence of prior and pending sexual misconduct cases and sexual harassment at Yale University is further inadmissible because it constitutes character evidence under Federal Rule of Evidence 404(b).  See, Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character").  When faced with a similar issue in Gethers v. McDonald, 2017 U.S. Dist. LEXIS 65676 (D. Conn. May 1, 2017) (Bryant, J.), an employment discrimination case, Judge Bryant

held that "to the extent Plaintiff seeks to offer his coworkers' experiences with alleged discrimination as evidence of a pattern or practice of discriminatory employment practices, such evidence is inadmissible." Id., at *6.  She further stated:

> Nor may Plaintiff offer evidence of Defendant's other allegedly discriminatory hiring decisions to prove [Defendant's] character in order to show that . . . [Defendant] acted in accordance with the character when filling the May 7, 2012 job posting. . . To the extent Plaintiff impermissibly attempts to establish a pattern or practice of discrimination or that Defendant's character led him to discriminate against Plaintiff, it is inadmissible.

Id., at *6-8.

Like the evidence the plaintiff attempted to submit in Gethers, evidence of prior and pending sexual misconduct cases and sexual harassment at Yale University is inadmissible to show a pattern or practice of discrimination.  See also, McLeod v. Parsons Corp., 73 F. App'x 846, 853 (6th Cir. 2003) (Keith, J.) (finding that Rule 404(b) evidence of prior employment discrimination lawsuits against defendant to be inadmissible).

The allegations contained in Paragraphs 38 through 61 undoubtedly fall within the definition of "scandalous."  "A scandalous allegation is one that reflects unnecessarily on the defendant's moral character, or uses repulsive language that detracts from the dignity of the court."  Cabble, 2006 U.S. Dist. LEXIS 7385, at *32.  "Even where matter in a pleading is relevant to the controversy, it nonetheless may be stricken if it is scandalous or set out in 'needless detail.'"  Id. (citing Gleason, 300 F. Supp. 1241, at *1257).  There is little doubt that the allegations contained in Paragraphs 38 through 61 are inflammatory; they needlessly identify each Yale University employee accused of sexual misconduct by name – which constitutes an unwarranted invasion of privacy – and set forth the allegations against each

employee in excruciating detail.  If these allegations do not fall within the ambit of "scandalous," surely no allegations can possibly meet that threshold.

If the allegations contained in Paragraphs 38 through 61 are permitted to remain, Yale University will suffer prejudice; there exists a real danger that the jury will base its assessment of liability on remote events involving other employees or students, or will become angered by the allegations and seek to punish the defendants for conduct unrelated to the claims asserted in this action.  District Courts in the Second Circuit have held that, if "[r]etention of the allegation will prejudice the defendant, or if it serve[s] no purpose except to inflame the reader, then it should be stricken."  See e.g., Impulsive Music v. Pomodoro Grill, Inc., 2008 U.S. Dist. LEXIS 94148, at *7 (W.D.N.Y. Nov. 19, 2008) (Telesca, J.).  Accordingly, Paragraphs 38 through 61 should be stricken.

### C.    Motion for a More Definite Statement

#### 1.    Legal Standard

Federal Rule of Civil Procedure 12(e) provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  A motion for a more definite statement is appropriately granted when a pleading is "sufficiently intelligible for the district court to make out one or more potentially viable legal theories on which the claimant might proceed . . . but where the pleading is so vague or ambiguous that the opposing party cannot respond to it." P&G Auditors & Consultants, LLC v. Mega International Commer. Bank Co., 2019 U.S. Dist. LEXIS 169750, at *7-8 (S.D.N.Y. Sep. 30, 2019) (Oetken, J.).  "The granting of 12(e) motions is within the discretion of the district court."  Wisconsin Province of the Society of

Jesus v. Cassem, 2018 U.S. Dist. LEXIS 229395, at *8 (D. Conn. May 24, 2018) (Bryant, J.);

Szarmach v. Sikorsky Aircraft, 2001 U.S. Dist. LEXIS 25744, at *8 (D. Conn. Sep. 28, 2001)

(Dorsey, J.).

> **2.** *The Allegations Contained in Paragraphs 69-73, 76-77, 82-88, 91, 101, 107, 112, 118, 136, 138, 140-141, 146-147, 151, 157, 161-162, 164, 171, 176, 179, 180, 184, 190, 194-195, 198, and 199-201 are so Vague that Yale University Cannot Possibly Prepare a Response.*

To permit Yale University to prepare an appropriate response to the Amended

Complaint, Yale University requests that the Court order the plaintiffs to revise their Amended

Complaint to identify by name various individuals referenced throughout who were (1)

allegedly also victims of sexual harassment by Dr. Fontes; (2) witnesses to the alleged sexual

harassment and retaliation suffered by the plaintiffs; or (3) aware of Dr. Fontes' alleged

misconduct, all of whom are listed anonymously in the Amended Complaint. Without the

names of these individuals, Yale University cannot properly investigate or respond to the

plaintiffs' allegations.

> **i.** *Dr. Fontes' Alleged Harassment of Drs. X and Y Referenced in Paragraphs 69-73, 76-77, 82-88, 112 and 198.*

In Paragraphs 69-73, the plaintiffs allege that Dr. Fontes unwantedly kissed Dr. X, a

female Professor of Anesthesiology, on two separate occasions in 2015, and that no

disciplinary action was taken against him. (Amended Complaint, ¶¶ 69-73, 74.) In Paragraphs

76-77, 82-88, 112 and 198, the plaintiffs then allege that, in June, 2016, Dr. Fontes danced

very closely and provocatively with Dr. Y, a female resident, at Barcelona Wine Bar, after the

residency program's graduation ceremony. (Id., at ¶¶ 76-77.)

            *ii.*     *Unnamed Witnesses Referenced in Paragraphs 118, 138, 140-141, 146-147, 151, 157, 161-162, 164, 176, 179-180, 184, 190, 194-195, 199, 200-201.*

In Paragraph 118, Dr. Castro alleges that she advised several unnamed "floor runners" about Dr. Fontes' inappropriate conduct, (Id., at ¶ 118), and in Paragraph 184, Dr. Lori-Ann Oliver alleges she told "other female employees to the Division Chief of the Pain Management section of the Department of Anesthesiology" about Dr. Fontes' misconduct.  (Id., at ¶ 184.) The plaintiffs also reference numerous unnamed individuals in Paragraphs 138, 140-141, 146-147, 161-162, 164, who were involved in ICU cases leading up to Dr. Eltorai's reassignment. In Paragraphs 151, 157, 176, 179-180, 190, 194-195, 199, and 200-201, the plaintiffs describe several individuals who were either in their presence when Dr. Fontes allegedly sexually harassed them, or were otherwise aware of Dr. Fontes' inappropriate conduct, such as a "female attending physician" and "male surgeon."

            *iii.*    *Unnamed Employees of Yale University Referenced in Paragraphs 91 and 171 Who Were Allegedly Aware of Dr. Fontes' Inappropriate Behavior.*

In Paragraph 91, the plaintiffs allege that "numerous senior YNHH attending physicians" were aware of Dr. Fontes' inappropriate conduct.  (Id., at ¶ 91.)  Likewise, in Paragraph 171, the plaintiffs allege that Dr. Lichtor and "his superiors" were aware of Dr. Fontes' misconduct.  (Id., at ¶ 171.)

            *iv.*    *The "Male Surgeon" Referenced in Paragraph 107 Who Allegedly Sexually Harassed Dr. Boules.*

In Paragraph 107, Dr. Boules claims that she was sexually harassed on a separate occasion by a "male surgeon," and that although she requested assistance from Dr. Fontes, he did nothing to help her.  (Id., at ¶ 107.)

Without the names of the numerous individuals referenced by the plaintiffs throughout their Amended Complaint, Yale University cannot adequately investigate or respond to the plaintiffs' allegations.  It is not clear from the plaintiffs' Amended Complaint whether Drs. X or Y, or any of the other unnamed individuals, are still employed by Yale University or Yale New Haven Hospital.  There are more than 11,000 faculty and staff at the Yale School of Medicine alone, and it would be impossible for defense counsel to canvass all of them in order to formulate an answer to the plaintiffs' Amended Complaint.  Moreover, the alleged incidents occurred over a period of five years, making it all the more difficult for the defense to investigate the allegations.  This is exactly the situation where a motion for a more definite statement is warranted.  See e.g., P&G Auditors, 2019 U.S. Dist. LEXIS 169750, at *7-8.

III.   **CONCLUSION**

For all of the foregoing reasons, the Court should grant Yale University's Motion to Dismiss, Motion to Strike, and Motion for a More Definite Statement.

**THE DEFENDANT,**
**YALE UNIVERSITY**

By:_____/s/_____
    PATRICK M. NOONAN – CT00189
    KRISTIANNA L. SCIARRA – CT30223
    DONAHUE, DURHAM & NOONAN, P.C.
    Concept Park
    741 Boston Post Road, Suite 306
    Guilford, CT  06437
    Telephone: (203) 458-9168
    Fax:   (203) 458-4424
    Email: pnoonan@ddnctlaw.com
            ksciarra@ddnctlaw.com

## **CERTIFICATION**

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

_____/s/_____
Patrick M. Noonan
