# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


————————————————————————————— )
MIA CASTRO, ET AL.,            )
                              ) No. 3:20-CV-00330-JBA
              Plaintiffs,      )
                              ) May 13, 2020
                              )
v.                             ) 11:00 a.m.
                              )
                              ) 141 Church Street
YALE UNIVERSITY, ET AL.,       ) New Haven, Connecticut
                              )
              Defendants.      )
————————————————————————————— )




           TELEPHONE PREFILING CONFERENCE



B E F O R E:

          THE HONORABLE JANET BOND ARTERTON, U.S.D.J.








                  Official Court Reporter:
                  Melissa J. Cianciullo, RMR, CRR, CRC
                  (203) 606-1794

```
1    A P P E A R A N C E S:

2    For the Plaintiffs:

3         TANVIR H. RAHMAN, ESQ.
          MICHAEL J. WILLEMIN, ESQ.
4         Wigdor LLP
          85 5th Avenue, 5th Floor
5         New York, NY 10003
          (212) 257-6800
6         E-mail:  trahman@wigdorlaw.com
                   mwillemin@wigdorlaw.com
7

8    For the Defendant Yale University:

9         PATRICK M. NOONAN, ESQ.
          Donahue, Durham & Noonan
10        Concept Park
          741 Boston Post Road
11        Guilford, CT 06437
          (203) 458-9168
12        E-mail:  pnoonan@ddnctlaw.com

13
     For the Defendant Yale New Haven Hospital Inc.:
14
          Sarah R. Skubas
15        Jackson Lewis - P.C.
          90 State House Square, 8th Floor
16        Hartford, CT 06103-3708
          (860) 522-0404
17        E-mail:  sarah.skubas@jacksonlewis.com

18
     For the Defendant Manuel Lopes Fontes, M.D., in his
19   individual and professional capacities:

20        ROBERT BURDETTE MITCHELL, ESQ.
          MARGARET M. SHEAHAN, ESQ.
21        Mitchell & Sheahan, P.C.
          999 Oronoque Lane, Suite 203
22        Stratford, CT 06614
          (203) 873-0240
23        E-mail:  rmitchell@mitchellandsheahan.com
                   msheahan@mitchellandsheahan.com
24

25
```

1          THE COURT:  Counsel.  We're here this morning

2   on *Castro, et al. v. Yale, et al.*, 20-CV-330.

3          May I please have appearances starting with

4   plaintiffs' counsel.

5          MR. RAHMAN:  Yes, good morning.  For

6   plaintiffs', Counsel Tanvir Rahman and Michael

7   Willemin from Wigdor LLP.

8          THE COURT:  Thank you.  And for the

9   defendants?

10          MR. NOONAN:  For Yale University, Your Honor,

11   it's Pat Noonan.

12          THE COURT:  Thank you.  And for the hospital?

13          MS. SKUBAS:  Good morning, Your Honor, Sarah

14   Skubas on behalf of the hospital.

15          THE COURT:  And Professor Fontes?

16          MR. MITCHELL:  It's Bob Mitchell and Peg

17   Sheahan, Your Honor.

18          THE COURT:  All right.  Now, we have two

19   things that I'd like to accomplish, even though it's

20   calendared only as a prefiling conference, is to

21   confirm a schedule for you.  I recognize that

22   Professor -- that Dr. Fontes has -- also intends to

23   move or has moved to stay discovery in Docket Number

24   35.  But with respect to the discovery that you

25   anticipate, you have set out in your 26(f) report a

1   process of doing written discovery which would be

2   completed October 1, fact discovery which would be

3   completed -- excuse me, fact depositions which would

4   be completed March 1, 2021, and experts that would be

5   completed for the plaintiff by about April 15th, by

6   the defendants in about the first week in June.

7         You also -- summary judgement motion, that

8   would be filed ten days -- ten days from the

9   completion of discovery; is that right?  It should --

10        MR. NOONAN:  That seems a little quick.

11        THE COURT:  It seems ambitious, doesn't it?

12  Ordinarily we would have it be 30 days from the

13  completion of discovery, and in order to accommodate

14  the prefiling conference requirement, we would set

15  down a status conference anticipatory prefiling

16  conference that would be about two weeks before

17  discovery concludes.  And then we can keep on that

18  schedule.  And people should know what their grounds

19  for summary judgement would be by that time.

20        Today we're only going to be discussing the

21  motions to dismiss.  Then your trial-ready date is

22  triggered by your joint trial memo filing.  Let me

23  just say that we would customarily have our

24  trial-ready date of six months after the filing of a

25  summary judgement motion and a -- the joint trial

1    memo would be fit within that along with the final

2    pretrial conference.

3            As you might anticipate, the -- while your

4    anticipated jury trial is far in the future, who

5    knows how much catch up we're going to have to be

6    playing with those who come before.  So we'll get

7    this set down simply to have that schedule and to try

8    very hard to work around it.

9            MR. NOONAN:  Your Honor, can I make one

10   suggestion for a change?  This is Pat Noonan, Your

11   Honor.

12           I'm concerned about getting a summary

13   judgement motion done 30 days after the last

14   deposition.

15           THE COURT:  This is the last -- this is after

16   the defendants' expert's deposition.

17           MR. NOONAN:  Right.  But we are likely to

18   want to, since it's summary judgement, quote

19   extensively from transcripts.  Most court reporters

20   get the transcript back to you, you know, within two

21   weeks.  Some can be more.  And, frankly, to put

22   together this kind of motion in two more weeks would

23   be awfully difficult.

24           THE COURT:  I tell you what.  Why don't we

25   see where we are at our status conference that will

1   be in the prefiling conference that's a couple weeks

2   before discovery closes.

3        MR. NOONAN:  That's fine.

4        THE COURT:  And then we can adjust that

5   schedule according to whatever is the problem at that

6   point.

7        MR. NOONAN:  Okay.  That makes perfect sense.

8        THE COURT:  Okay.  And then I'd also like to

9   just have a status report in order to be able to keep

10   track of you and have you be able to let me know of

11   any problems that are coming up so that we can head

12   them -- address them earlier rather than letting them

13   linger on.  And what I'd like to do is have that

14   date, so that would be in November.  And I'll -- in

15   the written schedule that we'll send out, we'll give

16   you a specific date in November, approximately

17   mid-November.  It's just a report from you, both

18   sides or all sides, to let me know what's going on.

19   There won't be any associated status conference.

20   Okay?

21        All right.  I think that will keep us on

22   track.  I am mindful of the delays in deposition

23   transcripts.  You can also discuss in advance with

24   your court reporter getting yourself earlier in the

25   queue, or you can move your depositions up.  It isn't

1    required that you take the full amount of time.  But

2    that is for you.

3         Let's move on to the substance of the coming

4    motions to dismiss.  There are two ancillary motions,

5    a motion to strike that Yale wishes to bring with

6    respect to Paragraphs 28 through 50 and then the

7    motion to stay discovery which is brought only by

8    Dr. Fontes which seems a little bit peculiar since

9    the discovery by the hospital and Yale is going to go

10   on and is undoubtedly going to encompass some of the

11   discovery that would be done as to Dr. Fontes.  But

12   we'll get to that.  Perhaps you could address that

13   concern of mine that this may be somewhat moot.

14        Let's talk about the -- Dr. Fontes's motion

15   to dismiss 3, 4 and 5 which are the state law claims

16   claiming that the Court should not exercise

17   supplemental jurisdiction.

18        I wanted to make sure that plaintiffs -- so

19   the purpose of our prefiling conference is to make

20   sure that the plaintiffs know all of the issues that

21   are going to be raised in the motion if the motion is

22   brought, and also I will give you a chance to amend

23   the complaint before these motions are filed so that

24   you have a final complaint to defend and the

25   defendants have a final complaint to attack.  What

1    that means is that having been put on notice of what

2    the issues are, and you can assume from that there

3    will be no additional issues, you don't get another

4    chance to amend when you're being given the chance

5    now.  And it just works out more efficiently.

6    Sometimes it causes parties to drop claims.

7    Sometimes it causes parties to drop -- not bring

8    motions.

9         So let's -- let me understand from

10   plaintiffs, do you wish the opportunity to amend?

11        MR. RAHMAN:  Judge, this is Tanvir Rahman.

12   Yes, we do -- while we do not agree that plaintiffs'

13   is deficient as currently pleaded, we would like the

14   opportunity to amend the issues.

15        THE COURT:  Okay.  And that's -- you know, to

16   the extent that you are hearing and you have already

17   been advised, I'm informed of what the claims of

18   deficiencies are, I want to make sure that the record

19   reflects exactly what the general -- in a general way

20   what the claims are so that there can be no question

21   that you knew and that they are limited by that

22   presentation.  Okay?

23        MR. RAHMAN:  Yes, Your Honor.

24        THE COURT:  And how long are you going to

25   need to file an amended complaint?

1    MR. RAHMAN:  Your Honor, we'd like to

2  request, given that we are dealing with six different

3  plaintiffs and they're all doctors and it's a very

4  busy time, to have until May 29th which would be

5  approximately two weeks from today to amend.

6    THE COURT:  Okay.  Now, you anticipate, let

7  me see, filing -- what is it you plan, to amend your

8  CFEPA claims with the CHRO to include claims against

9  Dr. Fontes?  But tell me why that -- why that isn't

10  done.

11    MR. RAHMAN:  Sure, Your Honor.  Yes, Your

12  Honor.  We have received from the EEOC a right to sue

13  letters for our clients.  We are -- we have been in

14  communication with the CHRO, and we've been told that

15  they're in the process of serving the respondents,

16  the defendants here, with our clients' CHRO

17  complaints.  And that -- they are aware that we're

18  requesting the release of jurisdiction.  So I'm not

19  sure, again, when the CHRO will release the

20  jurisdiction over the CFEPA claims.  Hopefully in

21  short order.  But that's why we have -- we are not

22  currently able to amend our complaint to add the

23  Connecticut FEPA claims, Your Honor.

24    THE COURT:  Okay.  So --

25    MR. NOONAN:  Can I respond to that, Your

1    Honor, for a moment?

2         THE COURT:  One second.  Let me clarify.

3         You have already amended your CFEPA claims

4    and what?  And that's pending.  You had already

5    previously amended your Title 7 claim, and you have

6    sought or already obtained your right to sue on that.

7    That includes Dr. Fontes.  Am I understanding that

8    correctly?

9         MR. RAHMAN:  Your Honor, under Title 7, we

10   would not be able to sue Dr. Fontes individually.

11        THE COURT:  True.  Okay.  Got it.

12        MR. RAHMAN:  And, yes, we have received -- we

13   have not currently pled a Title 7 because we have not

14   received the right to sue from the EEOC.  In our

15   amendment, we would include the Title 7 claims.

16        And with respect to the CHRO Connecticut

17   state claims, again, we're waiting on -- to obtain

18   those jurisdictions from the CHRO.  And once we

19   receive that, we would amend to adjust the state

20   claims which would include the states against

21   Dr. Fontes.

22        THE COURT:  All right.  So is there any --

23   I'm going to let -- hear from Mr. Mitchell.  But is

24   there any sense to letting all of this amendment

25   intention take place before we move ahead so that the

1  defendants can attack whatever portion they claim?

2  So, for instance, in the Title 9 claim, there are a

3  number of grounds they've expressed in their

4  prefiling motion papers that say Title 7 is the

5  exclusive remedy.  And so I just wonder what you

6  think about getting a finalized complaint with all

7  the claims against all the parties finished before we

8  embark on motions to dismiss.

9          Mr. Mitchell, did you want to address that at

10  all?

11          MR. MITCHELL:  Well, Your Honor, I think my

12  position is that if they want to amend, I think they

13  can go ahead and amend.  I do believe it will be

14  futile, but I have no problem waiting to let them

15  amend before we file motions to dismiss.  Otherwise,

16  as you're aware, even if we win the motions to

17  dismiss, they'll be able to try and amend again.  So

18  I'd rather just get it out of the way.

19          THE COURT:  Well, actually, that's exactly

20  what I'm trying to avoid.  The purpose of --

21          MR. MITCHELL:  No.  I understand that.

22          THE COURT:  -- the conference is to not have

23  that circular.

24          MR. MITCHELL:  That's my understanding.  I

25  agree with that, Your Honor.  I think that -- I don't

1  have any problem as long as we're not required to

2  answer, and I don't want to start -- as you know, I

3  don't want to start discovery until we have this

4  resolved for our client.  I have no problem letting

5  them amend.  I also said I think it will be futile.

6  We talked to CHRO this week, and they just filed the

7  first CHRO claim Monday.

8          THE COURT:  All right.  So tell me,

9  Mr. Willemin, what do you think should be a date for

10  a final amended complaint that would have Title 7 and

11  CFEPA claims all fleshed out?

12          MR. WILLEMIN:  So, Your Honor, I think you

13  had said Mr. Willemin.  This is Mike Willemin.  I was

14  going to respond.

15          THE COURT:  Okay.  Yup.

16          MR. WILLEMIN:  I think -- I mean, the issue

17  is that we're not going to be able to -- we won't

18  know when the Connecticut -- Connecticut will release

19  jurisdiction.  And Connecticut is obligated to

20  release jurisdiction after 180 days.  So

21  theoretically, we could be looking at six months.

22  But I think given the fact that there's a federal

23  case pending and that the claims are already, you

24  know, pled herein that are identical to those that

25  will be brought under Connecticut law, my hope is

1  that the CHRO will provide the release of

2  jurisdiction sooner than that but --

3          THE COURT:  But you don't know?

4          MR. WILLEMIN:  I don't know.  And so, you

5  know, we would try to seek that release of

6  jurisdiction as soon as possible to bring the claims.

7  And there may be issues -- and Tanvir can speak to

8  this better than I.  There may be issues that I --

9  ordinarily, I would say it doesn't really matter

10 because all the claims are identical anyway.  But

11 here where there's issues about whether or not, you

12 know, Title 9 usurps Title 7 and so on and so forth,

13 it probably does make sense to wait until we get the

14 CHRO in order -- you know, in order for the motions

15 to be filed.

16         We certainly don't have any issue, I suppose

17 if the defendant is not answering in the meantime,

18 they have the right to make the motions.  But I think

19 we do have -- we would take issue with the idea of

20 staying discovery pending the disposition of the

21 motions.  But we can -- that's a different issue

22 obviously.

23         THE COURT:  We'll get to that.  Okay.  So

24 with respect to the CFEPA claims, they will be

25 against all three defendants?

1        MR. WILLEMIN:  Correct, yup.

2        THE COURT:  All right.  So, Mr. Noonan, do

3   you think there's any problem with postponing, kind

4   of delaying this a little bit so we get everything in

5   as -- and able to address at the same time?  Same for

6   Ms. Skubas.

7        MR. NOONAN:  Your Honor, Pat Noonan.

8        I don't have any objection to postponing.  I

9   do want to point out that I didn't yet file a motion

10  to stay discovery because I didn't yet have

11  permission to file my motion for -- motion to

12  dismiss.  But if I do get permission to do that, I

13  would like to stay discovery.  It does seem to me

14  that it's -- I think there are serious questions

15  about this case, including if they're just filing

16  their CHRO complaints now.  I don't have a CHRO

17  complaint from them and any of these six people.  I

18  was unaware that they planned to file.  Their filing

19  date for most of them, if not all of them, has long

20  since passed.  So I think there will be some serious

21  questions about their ability to maintain these

22  claims.

23        And then I would seek a stay of discovery in

24  order to, you know, really fulfill the dictates of

25  Rule 1 which includes the -- seeking the inexpensive

1   resolution of disputes.

2          THE COURT:  All right.  But in if fact the

3   CHRO claim and the Title 7 claim are twins, we're not

4   going to achieve too much by staying discovery on one

5   and not the other.

6          MR. NOONAN:  Not really twins.  I mean, as

7   Your Honor knows, there's significant differences

8   between the two statutes.

9          THE COURT:  There are differences indeed.

10  All right.

11         MR. NOONAN:  And they're significant.

12         THE COURT:  All right.  Ms. Skubas, do you

13  want to be heard?

14         MS. SKUBAS:  Just briefly, Your Honor.  I

15  would echo Attorney Noonan's sentiments.

16         And I just -- to your earlier point, my

17  biggest concern at this point is just making sure

18  that we proceed expeditiously on discovery, and I

19  don't see how we can do that with so many unknowns.

20  We similarly have not been served with a CHRO

21  complaint.  As we probably all are aware, it could

22  take a bit of time between filing and actual service

23  of the CHRO complaint.  We would then have, of

24  course, at least 45 days to respond to the CHRO

25  complaint.  So I don't see any CHRO relief of

1   jurisdiction coming, certainly not within the next

2   three months realistically.  So I just wanted to

3   bring that to the Court's attention.  I agree that

4   I'm --

5        THE COURT:  So if this is on efficiency and

6   dispatch if we take up these issues, you're

7   suggesting that we not hold off amendment to await

8   release of jurisdiction by the CHRO.

9        MS. SKUBAS:  No, I think we should.  I think

10  they raise issues, and I'd rather have everything on

11  the table at once for appropriate motion practice.

12  To echo what I think my co-defendant's counsel's

13  indicated, I think there are going to be timeliness

14  issues with respect to the CFEPA claims.  I just

15  wanted to be realistic.  I know that the plaintiffs'

16  counsel, you know, suggested they were hoping to get

17  the CHRO released soon but they don't know.  But I

18  just don't imagine that happening.  And that was my

19  only point, Your Honor.

20       MR. WILLEMIN:  Your Honor, if I may, this is

21  Michael Willemin, just briefly.

22       THE COURT:  Yes.

23       MR. WILLEMIN:  The CHRO complaint that was

24  more recently filed was just a form that we had to

25  fill out that's going to -- that relates back to the

1   original filing of the EEOC complaint which was

2   cross-filed with CHRO at the time that it was filed.

3   So I mean, the -- well, first of all, the idea that

4   these are untimely, I think, is going to be -- is

5   just not accurate.

6         But also I think the -- and understand that

7   we still are not criticizing.  But I think defense

8   counsel's understanding of the timeline is off

9   because of the communications that we've had with

10  CHRO on -- in which they've told us this is going to

11  relate back to the original charge.

12        And I don't see why CHRO -- I mean, if we're

13  asking for the release of jurisdiction, CHRO may give

14  it to us, they may not.  I have no idea whether it's

15  going to be, you know, one week, three months or six

16  months.  And I think we're all in agreement that it

17  probably makes sense to wait until we add the CHRO

18  claims in order to deal with motion practice.

19        I think in terms of the stay, I just don't

20  see that making sense.  I mean, unless the entire

21  case gets dismissed, if any claims for bias in this

22  case, it's going require the same discovery as if any

23  other claim survives.  And if all the federal claims

24  get dismissed and Your Honor does choose to remand,

25  then at that point the state claims in state court,

1    we're going to be doing discovery on those claims.

2        So, I mean, I don't see a reason why we would

3    stay discovery because the claims -- even if the

4    burdens of proof are different, the claims are

5    essentially duplicative of each other, including the

6    state law common law claims which is part of the

7    reason why it doesn't make sense to jettison those.

8    And so I don't see a situation in which we're not

9    going to be taking discovery in this case unless the

10   whole case gets dismissed, which is in my view

11   obviously extremely unlikely.

12       So that's the perspective that we take with

13   respect to the stay, and we're -- you know, we're

14   open to the idea of delaying the motions pending the

15   amendment to add the FEPA claims.

16       THE COURT:  So I'd like to put out a

17   different view which is if the CHRO claims, whenever

18   jurisdiction is released, are going to be challenged

19   on timeliness or futility, that is discrete and

20   separate, is it not, from basis -- basis for the

21   motions to dismiss that you all have proposed in your

22   motion.  And thus if we were to take up the motion as

23   currently contemplated, we would be able to, number

24   one, decide whether the state law claims are staying.

25   I don't think they get remanded.  I think they --

```
 1   because they never came from state court.  I think
 2   they just get dismissed.
 3              MR. WILLEMIN:  I apologize.  That's correct,
 4   Your Honor.
 5              THE COURT:  And, secondly, that we would know
 6   whether the Title 9 and the Title 7 claims as pled
 7   are legally sufficient.  And we can just do that
 8   apart from whatever is going to be happening with the
 9   Fair Employment Practices Act claims.  Or to the
10   extent the result of those motions dictates the
11   future of those claims in part or in whole, we've
12   already got that work done.
13              So I guess, even though I hear an agreement
14   that all of the amendment should be put off, I'm
15   suggesting another view which is you guys are going
16   to get really far behind if we don't get moving now
17   on some of these issues that can be done without
18   regard, I think, to whether there is a state Fair
19   Employment Practices Act claim that is viable against
20   one or more defendants.
21              Does that -- does that hold any water for
22   you?
23              MR. MITCHELL:  I think it does.  This is Bob
24   Mitchell, Your Honor.
25              I think it does.  The only reason this all
```

1    came up is when we filed the request for this

2    premotion conference, plaintiffs opposed the request

3    on the grounds that they were filing all these CFEP

4    claims that would in fact somehow override our motion

5    to dismiss.  I don't think they do personally.  So

6    I'm prepared to go forward and get those decided.

7          But insofar as the plaintiffs would argue

8    that somehow the CHRO claims would override our

9    motion, I don't see how you get around postponing

10   deciding these motions to dismiss until after the

11   CHRO either rules or doesn't rule.

12         MR. WILLEMIN:  Your Honor, just to, I guess,

13   respond to it.  I think it's fine to do it the way

14   Your Honor suggested.  I mean, yes, part -- I mean,

15   essentially, I guess one thing that could happen that

16   could just be logistically, I don't know, I guess

17   undesirable but it wouldn't be the end of the world

18   is if we all briefed the motions, we make our

19   opposition based on the fact that the common law

20   claims are inextricably intertwined with the federal

21   law claims.

22         And to the extent -- I guess it could be the

23   case that Your Honor decides to grant the motion

24   before we get the release of jurisdiction, although I

25   think that's unlikely.  But if that happens, I

1   suppose then once we got our release of jurisdiction,

2   we could then in fact, you know, seek amendment again

3   to add the claims under FEPA, and we'd be adding

4   Dr. Fontes back in at that point, but at which point

5   we'd still be litigating a discrete issue, as Your

6   Honor pointed out, anyway.  It would just be a

7   logistical hurdle, I suppose, of amending to add

8   Dr. Fontes back in to then potentially have him, I

9   guess, file another motion to dismiss on grounds of

10  untimeliness.

11          So I don't see an issue with doing that.  And

12  I -- you know, I guess that would be the only thing

13  I'd point out.  But I'm fine proceeding as Your Honor

14  suggested.

15          MR. MITCHELL:  Well, what counsel has just

16  indicated implies colossal ways to find.

17          THE COURT:  Well, I don't know about that.

18  But there is two parts to Rule 1 which is the speedy

19  and cost-effective prosecution of civil cases, and

20  the speedy is what I was focusing on.  But I think as

21  you present your views, that maybe there's no way

22  around the wisdom of just postponing this whole

23  series of steps that have to be taken that start with

24  amending the complaint once the CHRO has acted.  And

25  if counsel wouldn't mind letting them know that we

1    would really appreciate if this -- what the intention

2    is to amend the complaint once they release

3    jurisdiction, thereafter all the motions will be

4    taken up and to do so in good time -- timely fashion

5    would be appreciated, if they would keep that in mind

6    as they schedule their consideration of those climbs,

7    those administrative claims.

8           All right.  That said, I think it will

9    behoove us to talk about the bases for the motions to

10   dismiss that which currently does exist and because

11   it will give the plaintiff the full picture of what

12   they are amending around which is not just to add the

13   CHRO claims.

14          And, in addition, in terms of discovery,

15   which your 26(f) report that you filed last month

16   says that you would start discovery on May 1.  And I

17   wonder if we should figure out some partial beginning

18   of discovery, particularly where it's not altogether

19   clear to me that even if the defendants were 100

20   percent successful on everything, that starting

21   discovery now would be a waste of time because you

22   would be in state court in -- on new claims and you

23   can use that discovery.  It would not be a waste.

24   Isn't that correct?

25          MR. NOONAN:  Your Honor, this is Pat Noonan

1    speaking.

2          The way I generally start discovery is by

3    serving discovery requests.  The way -- and the way I

4    do that is I look at the complaint that I'm facing,

5    and I literally go through the complaint and ask

6    questions about particular allegations.  I can't do

7    that if I don't know what the complaint is.

8          THE COURT:  Well, you do know what the

9    complaint is.  You just don't know the entirety of

10   it.

11         MR. NOONAN:  Correct.  Well, that's the

12   problem.  I really -- I really resist the notion of

13   doing things multiple times if I can help it,

14   particularly since we have limitations on how many

15   interrogatories we can present.  So I really don't

16   like to have to start and -- with the knowledge that

17   there's going to be another complaint, unless it's

18   agreed that they're making no amendments to the

19   claims against Yale University.  If that's so and the

20   Court orders that, that's of record, then there's no

21   disadvantage to me to start my discovery requests

22   now.  But if that's not so, then it really is

23   duplicative.

24         THE COURT:  So I understand.  And let me ask

25   plaintiffs' counsel to respond to that, is that your

1   Title 7 complaint and your CHRO charges are tracking

2   the factual allegations of the extent complaint.  Is

3   that right, Mr. Willemin?

4           MR. WILLEMIN:  I -- yes.

5           THE COURT:  So that when Mr. Noonan and

6   Ms. Skubas and others and Fontes set out their

7   written discovery, they know what the factual

8   allegations are.  And let me back off and say,

9   however, I am giving the plaintiff the opportunity to

10  amend the complaint, which may include amending the

11  factual allegations in order to move the deficits

12  that the defendants say exist in the current

13  amendment.  So I guess that --

14          MR. WILLEMIN:  Your Honor, if -- so we can

15  provide -- to the extent that we're going to be

16  amending with actual allegations, which I suspect we

17  are, we can just provide that to defense counsel in

18  the context of, you know, some sort of disclosure in

19  the next couple of weeks.  Because we plan to add all

20  those new factual allegations, to the extent that

21  we're going to, in the next couple weeks anyway.  So

22  why don't we just by the end of the month or

23  thereabouts, we'll just provide a disclosure to

24  defendants of the additional factual allegations that

25  we are going to plead in the amended complaint and

1  then have discovery served shortly after that.

2          THE COURT:  Don't you think that's kind of

3  messy?

4          MR. WILLEMIN:  I'm not sure why but I -- I

5  mean, to the extent that they are concerned that

6  they're not going to ask us questions or seek

7  documents related to specific allegations that may

8  come, even though I think, frankly, despite defense

9  counsel's articulate representation of the way he

10  seeks discovery, I'm sure he'll be asking for broader

11  categories of documents than just those specifically,

12  you know, quoting, essentially, our allegations.  I

13  don't see why that would be, you know, problematic.

14  Although, again, I'm pretty much open to any way in

15  which the Court would prefer to pursue this.  I just

16  don't see a reason to have it -- a stay on claims

17  that are ultimately going to be litigated in all

18  likelihood.

19          THE COURT:  Now, the defendants, at least

20  Yale, says it doesn't have a copy of the CHRO charge.

21          MR. MITCHELL:  No one has one.  We talked to

22  CHRO this week, Your Honor.  They have not finished

23  processing the charge.  Folks would not receive

24  copies for some period of time, up to possibly twenty

25  days from now.

1          MR. WILLEMIN:  Well, I'll send them the

2     charge.  That's not an issue.

3          MR. NOONAN:  I didn't know until it was

4     mentioned in this call that there was a charge, Your

5     Honor.  And, by the way, I think the practice in New

6     York may be different with -- and the sharing

7     agreement may be different.  But in Connecticut,

8     you're supposed to serve within 180 days of the

9     events.  They didn't do that.  So, Your Honor, the

10    timeliness is a more serious issue here than

11    plaintiffs' counsel may realize.

12         MR. MITCHELL:  Your Honor, the reality is

13    that there is not a two-way street in Connecticut

14    under our work sharing agreement.  CHRO claims cannot

15    be pursued by filing with the EEOC.  They don't get

16    started until you file with CHRO directly.

17         MR. NOONAN:  That's my understanding of

18    Connecticut law, Your Honor.  It has been since I

19    started in practice here doing employment law.  With

20    respect, I'm sure Your Honor saw the same thing when

21    you were practicing employment law.

22         MR. WILLEMIN:  To the extent that we need to

23    litigate over the issue of timeliness which I suspect

24    is going to happen, I disagree that the complaint is

25    not effective at the time we filed the EEOC claim.

1    But we can litigate that issue.  But that's neither

2    here nor there to the conversations that we were just

3    have.  And taking shots at me and my potential

4    knowledge of Connecticut law, I don't think is going

5    to get us anywhere.

6            I think what we're discussing is can we

7    effectively start discovery now, and I think the

8    answer to that is yes.  I'm happy to --

9            THE COURT:  Here's what I'm thinking.  The

10   CHRO is processing the recently filed charges.  The

11   defendants will all get copies of that.  That

12   describes the outside potential for the claims that

13   would be brought in an amended complaint.  That would

14   permit -- I was going to say, that would permit

15   discovery to go forward, at least written discovery,

16   to get that underway.  But I think what it would mean

17   is that in some formalized way, the amendment, the

18   factual allegations have to be memorialized.  I

19   recognize that if it's a matter of just notice, it's

20   just -- when I say "messy," it's my term of art to

21   mean that we really should have this be formal.  What

22   that says is that we should have an initial amendment

23   such as was contemplated to be filed by the plaintiff

24   by May 29th on the existing claims of the motion to

25   dismiss.  That would give all of the factual

1   substance for the parties to go forward on written

2   discovery.  That would also -- we can entertain the

3   motions to dismiss now.  We can wait.  I suspect

4   waiting probably makes sense.  We can stay discovery

5   beyond written discovery until further order, and we

6   get this moving.

7            Then when the supplemental amended complaint,

8   just what I'm going to call the pleading, that will

9   reflect the CHRO charges that will have at some point

10  a release of jurisdiction, we can then jump-start the

11  motions to dismiss in light of what you all will be

12  contending, part of which is the factual allegations,

13  you will have the final factual allegations before

14  you, and you will have your legal arguments on

15  timeliness of the CHRO and effectiveness of the dual

16  filing or work sharing agreement in Connecticut.

17           MR. MITCHELL:  The problem I see with that,

18  Your Honor, this is Bob Mitchell, only that, as you

19  know, under the rules we're limited to 25

20  interrogatories.

21           THE COURT:  Do you have any idea how not

22  honored in the briefs that is?

23           MR. MITCHELL:  Yes.  But I had one case where

24  the judge refused to allow more than 25

25  interrogatories.

1          THE COURT:  Okay.  Well, we won't.

2          MR. MITCHELL:  The plaintiffs could agree to

3     stipulate that there will be no additional facts

4     raised except those that are in the current

5     complaint.  That might solve that.

6          THE COURT:  No.

7          MR. MITCHELL:  Excuse me.  Or they could

8     agree right now that we can file an additional 25

9     interrogatory requests after they amend.

10          THE COURT:  Okay.  I don't think you need

11     either because when they amend, it is to amend facts

12     so that the various 26(f) -- excuse me, the various

13     12(b)(6) claims of insufficiency of pleading are

14     addressed.  And you can either decide to pursue your

15     claims on the theory that they have inadequately

16     remedied it or you can drop that part of the claim.

17     But you are going to have what you need to file your

18     written discovery.

19          And in the event there is a need for more

20     than 25 interrogatories, I will hear you on that.

21     And as long as it is something that makes good sense

22     of why you couldn't do it all in 25, you know, we're

23     not going to unreasonably constrain discovery.  We're

24     not going to encourage huge, extra amounts.  But I

25     don't think that your reservation, Mr. Mitchell, is

1  going to be a problem.  You're going to have all your

2  facts.  You're not going to get any more facts, and

3  the plaintiffs aren't going to get any more claims on

4  the inadequacies of those facts and the legal

5  sufficiency of who gets to bring a claim under Title

6  9, who is relegated solely to Title 7 and who should

7  have -- be under supplemental jurisdiction or not is

8  then going to all be legal issues.  Doesn't that make

9  sense?

10      MR. MITCHELL:  It makes perfect sense, Your

11  Honor.  But I don't think it really solves the

12  problem of -- to the point where we shouldn't just

13  wait until they amend their complaint and then

14  undertake discovery at that juncture and go forward

15  from there.  As you said, otherwise it's going to be

16  extremely messy because I don't think management of

17  plaintiffs are going to be willing to waive their

18  right to raise new facts in their messy complaint and

19  we may --

20      THE COURT:  Oh, they're not going to waive

21  that.  That's exactly why they're being given the

22  right to amend, is to add facts.

23      MR. MITCHELL:  Right.  I think it's more

24  efficient just to start discovery after the complaint

25  is finalized.

1      MR. WILLEMIN:  I think that there's a

2  misunderstanding as to what the Judge is proposing.

3  The Judge is proposing two amendments:  the first by

4  May 29th which will contain all the additional

5  factual allegations at which point we can start

6  discovery and you can have all the information you

7  need to do your 25 interrogatories.  And then after

8  we receive the release of jurisdiction, a second

9  amendment just to simply add the cause of action

10  under FEPA, after which the motions will be

11  entertained.  So I think that maybe with that

12  clarification, I think that's what the Judge is

13  proposing.

14      THE COURT:  I'm mindful that it could prompt

15  another round of 12(b)(6) motions, but at least we'll

16  have them in two different compartments.  So --

17      MR. NOONAN:  Your Honor, this is Pat Noonan

18  again.

19      That's the part that bothers me.  It really

20  is expensive to do this, this motion practice, and I

21  really do have a strong preference to do it once.

22      MR. WILLEMIN:  This is Mr. Willemin --

23      THE COURT:  I don't understand.  You've got

24  your claims.  You're ready to file your motions.

25  You've got to wait and see what new facts are

1    alleged, decide whether your motions are well founded

2    on the basis of the new amended facts as presented,

3    we go forward, we decide whether in fact Yale --

4    whether Title 7 is the exclusive remedy, whether they

5    have alleged adverse action, whether they have

6    alleged severe harassment, and -- and we just do

7    that.  There's no -- there is no additional cost to

8    preparing that and, separately, whatever you want to

9    prepare on the supplemental amended complaint after

10   the CHRO filing is completed.  You're just doing it

11   at two different times.

12          MR. NOONAN:  Your Honor, I do understand it

13   correctly that once the first amended complaint is

14   filed, there will be no more factual allegation

15   amendments permitted?

16          THE COURT:  Yes.

17          MR. NOONAN:  Okay.  I understand.  Thank you,

18   Your Honor.

19          THE COURT:  Have you been working under that

20   assumption, Mr. Willemin and Mr. Rahman?

21          MR. WILLEMIN:  Correct.

22          THE COURT:  Okay.  So there you go.  So let's

23   -- let's do it in two stages.  I think that will be

24   of very reasonable assistance in keeping this case

25   moving in a timely fashion.  Written discovery is

1    what you can do in the shelter of your own home

2    office, and then we can set up the further -- we can

3    set up the further schedule for discovery that is all

4    deposition discovery.

5         MR. MITCHELL:  But we're going to wait to

6    file the motions until after they've amended the

7    complaint; is that correct?

8         THE COURT:  Correct.  So now we want to go

9    through -- make sure we understand what it is you are

10   claiming and so that there's no question that the

11   amended complaint that will have all of the facts

12   that are going to be alleged that are known --

13   knowable to the plaintiffs now are out there.  Right

14   now for professor -- excuse me, Dr. Fontes, Fonts

15   (phonetic)?

16        MR. MITCHELL:  Fonch (phonetic), actually,

17   Your Honor.  Fonch.

18        THE COURT:  What is it?

19        MR. MITCHELL:  It's Fonch.

20        THE COURT:  Fonch.  Okay.  You have your

21   reasons for the Court declining supplemental

22   jurisdiction over those three state law claims, and

23   you've made your analysis of there isn't legal

24   overlaps, if there's conditions of economy,

25   convenience, commodity, fairness all dictate that

1   that should be the basis for dismissing these state

2   law claims.

3          The one wrinkle I could see is that the CH --

4   the CFEPA claim would be another state law claim, and

5   I don't know whether your position would be it goes

6   too or it stays.

7          MR. MITCHELL:  As far as he's concerned, it

8   would go too, Your Honor.  But at this point, in all

9   fairness, as we said, I don't think the aiding and

10  abetting claim is going to stand up in front of the

11  CHRO for very long.

12         THE COURT:  Okay.

13         MR. MITCHELL:  Because that point now is

14  time-barred.

15         THE COURT:  Okay.  Well, I'm sure you're not.

16         MR. MITCHELL:  That may actually be resolved

17  in front of the CHRO.

18         THE COURT:  Yeah.  I hear you.  I understand

19  that the CHRO will be hearing from you.

20         MR. MITCHELL:  Yeah.

21         THE COURT:  Okay.  Okay.  So that takes care

22  of the issue.  It seems to me it's a matter of law,

23  but you will have the full factual layout in which to

24  assert that.

25         MR. MITCHELL:  After they amend?

```
 1              THE COURT:  After they amend, correct.

 2              MR. MITCHELL:  Okay.

 3              THE COURT:  Okay.  And then the second is

 4    that the Yale New Haven Hospital motion to defend

 5    claims a pleading deficit for Title 9, that there

 6    isn't any direct relationship with a federally funded

 7    program that's alleged and that the allegation of --

 8    as to -- it's one or more of the plaintiffs, I'm not

 9    quite sure, is one of an employment relationship so

10    that Title 7 should be the exclusive remedy lacking.

11    You claim that Title 9 does not confer private remedy

12    for employment discrimination, and the -- you say

13    that there is no allegation of the hospital's

14    wrongdoing, including that it was ever on notice or

15    failed to act and similarly of any adverse actions.

16              So those are all your allegations that may be

17    able to be met by the factual amendments and maybe

18    not.

19              Have I left anything out in terms of what you

20    want to be claiming, Ms. Skubas?

21              MS. SKUBAS:  I think you captured it

22    correctly, Your Honor.  The only two things I would

23    note are I think part of the issues here that

24    could -- I don't think will remedy the basis for the

25    claim but might help is they, throughout the
```

1   complaint, plead Yale University and Yale New Haven

2   Hospital as one entity.  And that's not -- it's not

3   correct.  They're two separate entities.  And I think

4   it would help if there are specific factual

5   allegations as to my client as opposed to the

6   university, that they be required to plead as such so

7   I know what allegation is against my client as

8   opposed to the university.  So that would be one

9   thing that they didn't include.

10        The second part, just to clarify, it's -- the

11   only nuance is it is our position that as to at least

12   the physicians who we maintain were not employed by

13   the hospital who were merely as pledged attendings

14   with privileges, that Title 9 in this context as pled

15   does not apply to them whatsoever but that if they

16   are going to be pleading as employees, if they

17   have -- kind of want both sides of the apple here,

18   that they would be otherwise subject to Title 7's

19   exclusivity provisions.

20        THE COURT:  So you have claimed that Boules,

21   Eltorai and the two Olivers aren't students or

22   employees, that they are Yale professors with

23   privileges, and you say that that means there is no

24   Title 9 claim, that Title 7 is their exclusive

25   remedy.

1          MS. SKUBAS:  I think it's a bit of the

2   problem with how it's pled, Your Honor.  It sort

3   of -- yes, that is our position.  I didn't want to

4   waive that they were employees because it's our

5   position that they're not.  Arguably, if a Title 7

6   claim is allowed to proceed as to them as to the

7   hospital, I think I would concede that would be an

8   issue more ripe for summary judgement as to their

9   employment status than a motion to dismiss.

10          THE COURT:  So let me ask plaintiffs'

11  counsel.  Is there any problem, for the sake of

12  clarity, since you are going to be amending, to

13  separate out, even if it is to simply repeat each

14  time the claims against Yale and the claims against

15  Yale New Haven Hospital?

16          MR. RAHMAN:  Your Honor, this is Tanvir

17  Rahman.

18          That's fine, Your Honor.  We can do that.

19          THE COURT:  Let's do that.  Because I'd like

20  as much clarity now and really getting to what the

21  issue -- legal issues are and not what is argued to

22  have been pled or not pled.

23          Okay.  And then as to Yale, again, Yale is

24  saying that Title 7 is the exclusive remedy, that

25  there hasn't been any adverse action alleged and that

1   there -- that the harassment alleged isn't as

2   severe -- alleged as severe or pervasive, and that is

3   a testing of the sufficiency of the allegations of

4   the complaint which will now be amended.

5           Is there anything else, Mr. Noonan, that Yale

6   intends to raise on --

7           MR. NOONAN:  -- which will be six, yes, Your

8   Honor.

9           THE COURT:  And so you wish to get rid of

10  also Paragraphs 28 through 50.

11          MR. NOONAN:  Yes, Your Honor.

12          THE COURT:  And we'll just see whether they

13  reappear.  And under -- so that's under 12(f).  We'll

14  see about that.  Okay.  So that seems -- have I, in

15  my really quick summary of what your claims are as I

16  gleaned them from your prefiling notices.

17          MR. NOONAN:  I believe you did, Your Honor,

18  yes.

19          THE COURT:  All right.  So you've got the

20  picture, plaintiffs' counsel, and you're ready to

21  take on this amending project by May 29th.

22          MR. RAHMAN:  Yes, Your Honor.  This is Tanvir

23  Rahman.  We are.

24          THE COURT:  All right then.  Okay.  And then

25  after that, in terms of the motions to dismiss or --

1  well, we'll just see whether the ancillary motions

2  still continue.

3         How much time do the defendants need to file

4  their motions to dismiss?

5         MR. MITCHELL:  A week or two for us, Your

6  Honor.

7         MR. NOONAN:  I think I'd like to get 21 days,

8  if I can, Your Honor.  I maybe able to file in less.

9  It depends on what the amendments are, right?  I

10 mean ...

11        THE COURT:  All right.  I'm going to do 21

12 days so I don't get motions to extend time.  And then

13 the plaintiffs will have -- you're going to have

14 three different motions to respond to.  Is 21 days

15 going to be sufficient for you?

16        MR. RAHMAN:  Yes, Your Honor.

17        MR. MITCHELL:  I have a question, Your Honor,

18 if I might interrupt for one moment.

19        THE COURT:  Yup.

20        MR. MITCHELL:  Our motion, as you know, is a

21 jurisdictional motion.  We would also eventually file

22 a 12(b)(6) motion if you deny the jurisdictional

23 motion.  Would you prefer that we file that as

24 duality, if you will, in alternative or should we

25 just wait?

1          THE COURT:  Yes.  What would be the -- so you

2    would be challenging the sufficiency of the

3    allegations of assault, battery and invasion of

4    privacy.

5          MR. MITCHELL:  And if they file a FEPA claim,

6    of course we'd have questions.  We'd have made the

7    same arguments Mr. Noonan has used under Title 7.

8          THE COURT:  That's coming in Phase 2.  We're

9    not going to have the Fair Employment Practices Act

10   claims before you.  But --

11         MR. MITCHELL:  Okay.

12         THE COURT:  -- for the purposes of --

13         MR. MITCHELL:  For now we're all right then.

14   For now it will just be the jurisdictional issue.

15         THE COURT:  Well, no.  We can do -- we can

16   expand it if you think that the currently planned

17   assault, battery and invasion of privacy claims are

18   inadequately pled.  You haven't included that.  I

19   understand that you were just looking at the

20   jurisdictional thing.  But if you're prepared to

21   identify what the deficits are, we can have the

22   amendment, amended complaint be on notice of those

23   claimed deficiencies and able to address them.

24         MR. MITCHELL:  Well, I'm really not in

25   detail, Your Honor.  But off the top of my head, as I

1   recall it, it was pointed out to me that what they've

2   an labeled assault claim is actually the battery

3   claim, and what they've labeled the battery claim is

4   actually the assault claim.  In Connecticut, assault,

5   as I recall, is putting somebody in fear of physical

6   harm and battery is the actual touching.  I think

7   they reversed that in their pleading to some degree.

8           THE COURT:  Okay.  All right.

9           MR. MITCHELL:  Aside from that, at the

10  moment, I haven't already focused on the 12(b)(6)

11  idea until we starting have this discussion, so I

12  don't have any particular response to your questions

13  other than maybe the lack of any real touching in

14  some instances.

15          THE COURT:  Well, you're going to get me out

16  of sequence now if you say now I've thought of all

17  these 12(b)(6) bases.  What if you went back and

18  thought about those 12(b)(6) bases and filed a

19  supplemental notice of intention to move under

20  12(b)(6) and outline what they are?

21          MR. MITCHELL:  Fine, Your Honor.  I have no

22  problem doing that.

23          THE COURT:  Okay.  Can you do that --

24          MR. MITCHELL:  Uh-huh.  I'll do that.

25          THE COURT:  -- soon?

```
 1            MR. MITCHELL:  Yes.  I can do that in a week.
 2            THE COURT:  Okay.  All right.  All right.
 3     Then we will have a combined jurisdiction and
 4     12(b)(6).
 5            MR. MITCHELL:  All right.  That's fine then.
 6     I wanted to clear up.
 7            THE COURT:  That is what I think is most
 8     efficient.  Thank you.
 9            All right.  Then we will have any replies
10     after the Plaintiffs' 21 days to oppose, and that
11     will be in 14 days.  And then we'll see what all of
12     that looks like, decide whether we want to have --
13     whether it would be beneficial to have oral argument
14     and, if so, when.  And I'll let you know and we'll
15     work out a schedule that will work with your
16     calendars, and we'll see whether we're doing it in a
17     courtroom or by Zoom.
18            Okay.  All right.  Anything else?
19            MR. NOONAN:  Not from me, Your Honor.
20            MR. MITCHELL:  Not from me, Your Honor.
21            MR. RAHMAN:  Not from me, Your Honor.
22            THE COURT:  All right.  Great.  This is very
23     helpful.  Thank you.  I think we've found --
24            MR. RAHMAN:  Your Honor?
25            THE COURT:  Yes.
```

```
1           MR. RAHMAN:  Tanvir Rahman.

2           Just one point.  Is the -- is Dr. Fontes's

3    motion for a stay of discovery now mooted?  Just to

4    make sure.

5           MR. MITCHELL:  We can stay discovery, but I

6    suspect it's already been decided.

7           THE COURT:  It -- whether we call it moot or

8    not, written discovery is going to be permitted.

9           MR. MITCHELL:  That's fine.  We're okay with

10   that, Your Honor.

11          THE COURT:  Okay.  So now it's moot.

12          Okay.  All right then.  Thank you very much.

13          MR. NOONAN:  Thank you, Your Honor.

14          THE COURT:  Enjoy the sunshine.  Bye-bye.

15          (Proceedings concluded at 11:58 a.m.)

16

17

18

19

20

21

22

23

24

25
```

1                C E R T I F I C A T E

2

3    RE: MIA CASTRO, ET AL. V. YALE UNIVERSITY, ET AL.
              No. 3:20-CV-00330-JBA

4

5           I hereby certify that the within and

6    foregoing is a true and accurate transcript taken in

7    the aforementioned matter to the best of my skill and

8    ability.

9

10          /s/_Melissa J. Cianciullo_____

11       MELISSA J. CIANCIULLO, RMR, CRR, CRC
              Official Court Reporter

12         United States District Court
          141 Church Street, Room 147

13        New Haven, Connecticut  06510
               (203) 606-1794

14

15

16

17

18

19

20

21

22

23

24

25