# Exhibit I

2013 WL 6335273
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut,
Judicial District of New Britain.

Ganpat CHOUHAN
v.
UNIVERSITY OF CONNECTICUT HEALTH CENTER et al.

No. CV096002439S.
|
Nov. 5, 2013.

**Attorneys and Law Firms**

Nancy A. Brouillet, Hartford, CT, for University of Connecticut Health Center et al.

PETER EMMETT WIESE, Judge.

I

Procedural History

***1** This action arises out of an employment relationship between the plaintiff, Ganpat Chouhan, M.D., a former employee of the defendant, State of Connecticut, University of Connecticut Health Center (UCHC). On May 21, 2013, the plaintiff filed the operative, eight-count, second revised complaint. Therein the plaintiff generally alleges that he was subjected to an ongoing pattern of harassment by the defendant in violation of a collective bargaining agreement and the defendant's own policies and procedures. More specifically, count one alleges racial discrimination in violation of the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a–60(a). Count two alleges racial discrimination in violation of § 46a–60(a)(4). Count three alleges age discrimination in violation of § 46a–60(a)(1). Count Four alleges age discrimination in violation of § 46a–60(a)(4). Count five alleges a violation of the Connecticut Wage Statutes, General Statutes § 31–71 et seq. Count six alleges a breach of express contract. Count seven alleges a breach of implied contract/promissory estoppel. Count eight alleges a violation of General Statutes § 46a–71.

On May 29, 2013, the defendant filed the present motion to dismiss counts two, four, five, six, seven, eight, and the plaintiff's claims for relief, along with a memorandum of law in support. On July 16, 2013, the plaintiff filed his objection thereto. On July 19, 2013, the defendant filed a reply. On July 22, 2013, the plaintiff filed a rejoinder. The court heard oral argument on July 22, 2013.

II

DISCUSSION

"[A] motion to dismiss is governed by Practice Book §§ 10–30 through 10–34. Properly granted on jurisdictional grounds, it essentially asserts that, as a matter of law and fact, a plaintiff cannot state a cause of action that is properly before the court ... [See Practice Book § 10–31.]." (Internal quotation marks omitted.) *Mulcahy v. Mossa,* 89 Conn.App. 115, 128, 872 A.2d 453, cert. denied, 274 Conn. 917, 879 A.2d 894 (2005). "By contrast, [a] motion to strike attacks the sufficiency of the pleadings. Practice Book § 10–39 ... There is a significant difference between asserting that a plaintiff cannot state a cause of action and asserting that a plaintiff has not stated a cause of action, and therein lies the distinction between the motion to dismiss and the motion to strike." (Internal quotation marks omitted.) *Pecan v. Madigan,* 97 Conn.App. 617, 621, 905 A.2d 710 (2006), cert. denied, 281 Conn. 919, 918 A.2d 271 (2007).

"Trial courts addressing motions to dismiss for lack of subject matter jurisdiction pursuant to § 10–31(a)(1) may encounter different situations, depending on the status of the record in the case ... [L]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts ... Different rules and procedures will apply, depending on the state of the record at the time the motion is filed." (Citation omitted; internal quotation marks omitted.) *Conboy v. State,* 292 Conn. 642, 650–51, 974 A.2d 669 (2009). Nevertheless, "[i]t is well established that, in determining whether a court

has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Wilcox v. Webster Ins., Inc.,* 294 Conn. 206, 214, 982 A.2d 1053 (2009).

A

Counts Two & Four

**\*2** The defendant argues that counts two and four should be dismissed because the plaintiff did not exhaust his administrative remedies with the Connecticut Commission on Human Rights and Opportunities (CHRO). Specifically, the defendant argues that the operative, second revised complaint contains allegations of retaliation, under § 46a–60(a)(4),[1] that were not raised in either of the plaintiff's two CHRO complaints,[2] and that these allegations are not "reasonably related" to the CHRO allegations for purposes of any exception to exhaustion. In response, the plaintiff simply contends that the retaliation claims before this court are reasonably related to the previous CHRO filing. The defendant replies that any allegations of retaliation that occurred after the plaintiff's initial CHRO complaint, but were not raised in the plaintiff's subsequent amended CHRO complaint, must be dismissed. Furthermore, the defendant maintains that in light of the Supreme Court's recent decision in *University of Texas Southwestern Medical Center v. Nassar,* 570 U.S. ––– U.S. ––––, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), retaliation claims impose additional pleading requirements to meet *Nassar's* "but-for" standard of causation which, in the present case, have not been met.

"Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum ... In the absence of exhaustion of that remedy, the action must be dismissed." (Internal quotation marks omitted.) *Levine v. Sterling,* 300 Conn. 521, 528, 16 A.3d 664 (2011).

Our courts look to federal precedent for guidance with regard to the CFEPA. "Our Supreme Court has determined that when an overlap between state and federal law is deliberate, federal precedent is particularly persuasive ... Additionally, we have been reluctant to interpret state statutory schemes in a manner at odds with federal schemes on which they are modeled ... In drafting and modifying [the CFEPA] ... § 46a–51 et seq., our legislature modeled that act on its federal counterpart, Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq., and it has sought to keep our state law consistent with federal law in this area ... Accordingly, in matters involving the interpretation of the scope of our antidiscrimination statutes, our courts consistently have looked to federal precedent for guidance ..." (Citations omitted; internal quotation marks omitted.) *Ware v. State,* 118 Conn.App. 65, 81–82, 983 A.2d 853 (2009).

It is clear that the court has jurisdiction to hear claims that are either: (1) included in a CHRO complaint, or (2) based on conduct subsequent to a CHRO complaint that can be deemed "reasonably related" to the CHRO filing. See, e.g., *Butts v. N.Y.C. Dept. of Housing Preservation & Development,* 990 F.2d 1397, 1401 (2d Cir.1993), superseded by statute on other grounds, Civil Rights Act of 1991, Pub.L. No. 102–66, 105 Stat. 1071 (analyzing "relationship between Title VII claims and Equal Employment Opportunity Commission (EEOC) charges). In general, "[t]he United States Court of Appeals for the Second Circuit has recognized that [a] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made ... In this inquiry, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving ... The central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases ... The reasonably related exception to the exhaustion requirement is essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [he] is suffering ... This determination will in large part rest on our interpretation of the plaintiff's pleadings, which is always a question of law for the court ..." (Citation omitted; internal quotation marks omitted.) *Ware v. State, supra,* 118 Conn.App. at 82–83, 983 A.2d 853.

**\*3** Specifically with regard to retaliation claims, the Appellate Court concluded that the claims at issue in *Ware* should have been dismissed by the trial court for failure to

exhaust administrative remedies because the plaintiff had the opportunity to allege retaliation before the EEOC but chose not to. See *id.,* at 85–86, 983 A.2d 853. In detail, the plaintiff in *Ware* was already discharged from employment before filing a complaint with the CHRO but failed to allege any retaliation. See *Id.* Nevertheless, in her subsequent suit before the Superior Court, the plaintiff added a claim for retaliation. See *Id.* The Appellate Court then reasoned that "nothing in the complaint to the [EEOC] gave that agency adequate notice to investigate a claim for retaliation. It alleges that the plaintiff was discharged because of her sex and because she was pregnant. Only after her discharge did she bring the claim before the commission. There are no allegations that she opposed any discriminatory practice or filed a complaint alleging any discriminatory practice *prior* to her discharge or was subject to any otherwise discriminatory treatment for doing so." (Emphasis added.) *Id.,* at 86, 983 A.2d 853.

The concerns that the Appellate Court had in *Ware* are not applicable to the present case. To begin with, the plaintiff was still actively employed when he filed his first complaint with the CHRO on August 28, 2008. In that initial complaint, the plaintiff made various allegations of discrimination including that the defendant improperly demoted the plaintiff and decreased his pay level. Subsequently, in the plaintiff's amended CHRO complaint filed on April 1, 2009, the plaintiff further alleged that although the defendant insisted that the complainant was demoted because the plaintiff's board certification lapsed, the defendant still refuses to re-instate the plaintiff to his prior position and pay-level even though he became duly re-certified. (Pl.'s Memo, 7/16/13, Ex. B.) [3] The plaintiff also alleged that the defendant "refused to supply a reasonable explanation for its actions." (*Id.,* ¶ 8, 983 A.2d 853.)

In the present case, the plaintiff alleges that he exhausted his administrative remedies in connection with his discrimination claims and that the defendant retaliated against the plaintiff for pursuing legal redress. The plaintiff maintains that the defendant retaliated against him in various ways, including the defendant's continued refusal to reinstate the plaintiff to his proper position and pay-level following his renewal of certification. (Compl.¶ 66.) Although the plaintiff did not explicitly allege retaliation in his amended complaint before the CHRO on April 1, 2009, the alleged retaliation at issue in the present case includes the defendant's continued refusal to reinstate the plaintiff without any reasonable explanation

following the plaintiff's recertification. "When an employee brings a claim alleging retaliation for filing a complaint with the EEOC, the retaliation claim is deemed 'reasonably related' to the original EEOC filing. In such a case, the allegations of retaliation are seen as stemming from the earlier discriminatory incident, including plaintiff's attempt to vindicate her federal rights against discrimination. The retaliation claim may thus be heard notwithstanding plaintiff's failure to state it in a separate complaint filed with the EEOC." *Owens v. New York City Housing Authority,* 934 F.2d 405, 410–11 (2d Cir.1991). Accordingly, the fact that the plaintiff failed to include an explicit allegation of retaliation in his previous complaint with the CHRO is excusable because the agency had adequate notice to investigate the underlying discriminatory acts at issue. The fact that the plaintiff now characterizes the demotion as retaliatory is of no moment—the factual predicate remains the same. Namely, the plaintiff takes issue with his demotion and feels that it was part and parcel of an overall campaign of discrimination. Consequently, the claims before the court are reasonably related to the previous CHRO filings for purposes of exhaustion.

*4 Finally, the defendant's argument that, in light of the Supreme Court's decision in *University of Texas Southwestern Medical Center v. Nassar,* 570 U.S. ––––, ––––, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), retaliation claims impose additional pleading requirements to meet *Nassar's* "but-for" standard of causation is without merit. The defendant cites no case law to support its position and the court agrees with the plaintiff's analysis that "although *Nassar* imposes a more stringent proof requirement for retaliation claims, it imposes no new or additional pleading requirements." (Pl.'s Memo, July 22, 2013, p. 3.)

For the foregoing reasons, the defendant's motion to dismiss counts two and four is denied.

B

Count Five

The defendant argues that count five, brought under the Connecticut Wage Statutes, General Statutes § 31–71a et seq.,[4] should be dismissed because the plaintiff failed to allege or show that he exhausted his administrative remedies

under the collective bargaining agreement prior to filing suit. In response, the plaintiff points out that he explicitly alleges that "he exhausted his administrative remedies" in paragraph sixty-two of the second amended complaint, which is incorporated by reference in count five; and that the arbitration award under the collective bargaining agreement was issued on July 30, 2012, thus rendering the issue moot. Nevertheless, the defendant maintains, in its rejoinder, that even though the arbitration award was issued on July 30, 2012, the plaintiff did not seek the necessary review of that award under General Statutes § 52–418.

Because the arbitration award under the collective bargaining agreement was issued on July 30, 2012, and the plaintiff specifically alleges that he exhausted his administrative remedies, the only remaining issue is whether the plaintiff should have sought review of the arbitration award under § 52–418. Section 52–418 provides, in relevant part: "(a) Upon the application of any party to an arbitration, the superior court ... shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."

"There is no authority of which the court is aware that requires a motion to vacate an arbitration award as a prerequisite to exhaustion. In fact, such a proposition makes little sense in relation to the Connecticut jurisprudence on arbitration." *O'Connor v. Wethersfield Board of Education,* Superior Court, judicial district of Hartford, Docket No. CV–01–08083760–S (July 7, 2003, Booth J.) (35 Conn. L. Rptr. 267, 269), decision vacated in part on reconsideration on other grounds by, *O'Connor v. Wethersfield Board of Education,* Superior Court, judicial district of Hartford, Docket No. CV–01–08083760–S (August 22, 2003, Booth, J.) (35 Conn. L. Rptr. 326). In *O'Connor,* the court reasoned that moving to vacate would essentially be futile because, "[t]here is nothing apparent in the extensive file which would seem to have given the plaintiff any reasonable hope of succeeding under the standards set forth in ... § 52–418 ..." *Id.* In contrast to *O'Connor,* the Appellate Court came to a different conclusion in *Administrative & Residual Employees Union v. State,* 77 Conn.App. 454, 823 A.2d 399 (2003), finding that moving to vacate under § 52–418 would *not* be futile because, there, the plaintiff could have filed an application to vacate the arbitration award on public policy grounds. *Id.,* at 461–62, 823 A.2d 399. The Appellate Court reasoned, "[t]he challenge raised by the union is that the state has acted in violation of [General Statutes] §§ 5–247 and 5–250 by calculating vacation leave accrual on the basis of hours rather than on the basis of days, thus providing employees with less than that to which they are entitled by statute. *We interpret that claim as one raising a public policy challenge* to the legality of the award; as such, the union could have filed an application to vacate the arbitration award on public policy grounds pursuant to § 52–418 ... In light of the foregoing, we conclude that the union failed to exhaust the specific statutory procedures established for obtaining review of arbitration awards." (Emphasis added.) *Id.,* citing to *Hunt v. Prior,* 236 Conn. 421, 431–32, 673 A.2d 514 (1996).

**\*5** The present case is more like *O'Connor* than *Administrative & Residual Employees Union,* because, here, the plaintiff's claims *cannot* be interpreted as a public policy challenge to the legality of the arbitration award in the underlying action. Furthermore, the plaintiff's application to vacate under § 52–418 would be futile. "The [exhaustion] doctrine is applied in a number of different situations and is, like most judicial doctrines, subject to [certain] exceptions ... [W]e have recognized such exceptions [however] only infrequently and only for narrowly defined purposes ... such as when recourse to the administrative remedy would be futile or inadequate ... It is well established that [a]n administrative remedy is futile or inadequate if the agency is without authority to grant the requested relief ... It is futile to seek a remedy only when such action could not result in a favorable decision and invariably would result in further judicial proceedings." (Citations omitted; internal quotation marks omitted .) *Piteau v. Board of Education,* 300 Conn. 667, 684–85, 15 A.3d 1067 (2011).

For the foregoing reasons, the defendant's motion to dismiss count five is denied.

C

### Counts Six & Seven

The defendant argues that counts six and seven alleging breach of express contract, or, in the alternative, breach of implied contract/promissory estoppel are barred by sovereign immunity, and that the plaintiff failed to allege that he exhausted his administrative remedies under the collective bargaining agreement. Furthermore, the defendant argues that the plaintiff failed to exhaust his remedies by failing to obtain permission to sue the state from the Claims Commissioner for such common-law claims. In response, the plaintiff contends that he alleges exhaustion under the bargaining agreement, and that the plaintiff was not required to obtain permission from the Claims Commissioner before bringing suit because General Statutes § 4–142(3)[5] specifically excepts his claim. Additionally, the plaintiff argues that his breach of implied contract/promissory estoppel claims are excepted from immunity pursuant to our Supreme court's decision in *Kimberly Clark Corp. v. Dubno,* 204 Conn. 137, 527 A.2d 679 (1987), because there are special circumstances that make it highly inequitable or oppressive not to estop the agency. See *id.,* at 146–51, 527 A.2d 679.

"In the absence of a statutory waiver of sovereign immunity, the plaintiff may not bring an action against the state for monetary damages without authorization from the claims commissioner to do so." (Internal quotation marks omitted.) *DePietro v. Dept. of Public Safety,* 126 Conn.App. 414, 418, 11 A.3d 1149, cert. granted on other grounds, 300 Conn. 932, 17 A.3d 69 (2011) (appeal withdrawn June 26, 2012). "When sovereign immunity has not been waived, the claims commissioner is authorized by statute to hear monetary claims against the state and determine whether the claimant has a cognizable claim ... This legislation expressly bars suits upon claims cognizable by the claims commissioner except as he may authorize, an indication of the legislative determination to preserve sovereign immunity as a defense to monetary claims against the state not sanctioned by the commissioner or other statutory provisions." (Internal quotation marks omitted.) *Cox v. Aiken,* 278 Conn. 204, 212 n. 11, 897 A.2d 71 (2006).

*6 When construing a statute, the court must first look to its text, as directed by General Statutes § 1–2z, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." "In construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." (Internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc. v. Seventh BRT Development Corp.,* 245 Conn. 1, 26, 717 A.2d 77 (1998).

General Statutes § 4–142 provides, in relevant part: "There shall be a Claims Commissioner who shall hear and determine all claims against the state except: ... (3) claims for which an administrative hearing procedure otherwise is established by law ..." The issue thus becomes whether § 4–142(3) excepts the plaintiff's claims for breach of express contract, or, alternatively, breach of implied contract/promissory estoppel.

Research reveals that a common-law claim for breach of contract is not a claim for which an administrative hearing procedure otherwise is established by law. For example, in *Chotkowski v. State,* 240 Conn. 246, 690 A.2d 368 (1997), our Supreme Court found that a plaintiff's claim that "his wages were improperly reduced by the state when he was reclassified to the position of chief of medicine," was not "a claim for which an administrative hearing procedure otherwise is established by law," under § 4–142(3), "because the plaintiff's action ... [was] *predicated solely on principles of contract law,*" and thus the administrative board was unable to grant remedy that the plaintiff sought. (Emphasis added.) *Id.,* at 264–65, 690 A.2d 368. Additionally, other courts have stated that "the legislature has not created a right to sue the state under a common law theory of breach of employment contract." *Morse v. State,* Superior Court, judicial district of Hartford, Docket No. CV–92–0393050 (September 2, 1992, Hennessey, J.) (7 Conn. L. Rptr. 786, 786,) see also *Berg v. Mansfield,* Superior Court, judicial district of Tolland, Docket No. CV–12–60004421 (September 18, 2012, Sferrazza, J.) (54 Conn. L. Rptr. 698, 700) ("court is unaware of any statute or case law that would support [the] argument that only statutory claims, and not common law claims, are subject to the exhaustion doctrine"), citing to *Hunt v. Prior, supra,* 236 Conn. at 429, 673 A.2d 514 (concluding that court lacked subject matter jurisdiction over common-law breach of contract claim because plaintiff failed to exhaust administrative remedies); and *Chief Information Officer v. Computers Plus Center, Inc.,* 310 Conn. 60, 96 A.3d (2013) ("the defendant's failure to present its counterclaims

for damages to the claims commissioner and to obtain legislative permission to sue the department pursuant to [General Statutes] § 4–160 prior to bringing its counterclaims deprives the trial court of subject matter jurisdiction ...."). In response, the plaintiff fails to cite, and the court is unaware of, any authority supporting his argument that a common-law claim for breach of contract is a claim for which an administrative hearing procedure otherwise is established by law and thus it is not subject to exhaustion.

**\*7** Next, the court turns to the plaintiff's argument that his breach of implied contract/promissory estoppel claims are excepted from immunity because special circumstances exist that would make it highly inequitable or oppressive not to estop the agency.

Although estoppel against a public agency is limited and may be invoked in certain circumstances, the plaintiff again has cited to no authority in support of his position that estoppel may be used to overcome a lack of subject matter jurisdiction. Only the claims commissioner, acting pursuant to the authority conferred upon him, may grant the plaintiff permission to sue the state. "[A]ny claim of estoppel is predicated on proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated or intended to induce another to believe that certain facts exist and to act on that belief; and the other party must change its position in reliance on those facts, thereby incurring some injury ... In addition, estoppel against a public agency is limited and may be invoked: (1) only with great caution; (2) only when the action in question has been induced by an agent having authority in such matters; and (3) only when special circumstances make it highly inequitable or oppressive not to estop the agency." (Citations omitted; internal quotation marks omitted.) *Kimberly–Clark Corporation v. Dubno, supra,* 204 Conn. at 148, 527 A.2d 679; see also *Trustees, Southern Connecticut State University v. Morin Bros. Auction Service Corp.,* Superior Court, judicial district of Hartford, Docket No. CV–00–0594471 (November 6, 2000, Solomon, J.) ("just as the executive cannot waive sovereign immunity, that incapacity likewise prevents a finding ... that the action in question has been induced by an agent having authority in such matters. Simply stated, neither the Attorney General nor his representatives have the requisite authority to consent to suit against the State").

In the present case, the plaintiff has not alleged, nor can he, that the state officials in charge of his employment had the authority to waive the state's sovereign immunity with regard to bringing suit. Additionally, the plaintiff failed to obtain permission from the Claims Commissioner before bringing these common-law claims. Consequently, the motion to dismiss counts six and seven is granted.

D

Count Eight

The defendant argues that count eight, alleging a violation of General Statutes § 46a–71,[6] should be dismissed because the plaintiff failed to assert the claim within ninety days of receiving his CHRO release of jurisdiction. Specifically, it is pointed out that the plaintiff's original complaint, filed on November 6, 2009, lacked the § 46a–71 claim that is now included in the operative complaint filed on May 21, 2013. The plaintiff responds that the relation back doctrine saves count eight because the § 46a–71 claim arises out of the same nucleus of operative facts alleged in the initial complaint, and the § 46a–71 claim was included in his CHRO complaints.

**\*8** The issue is whether the plaintiff's amended complaint relates back to the plaintiff's original complaint. The issue is not whether the plaintiff may include claims that were not included in the CHRO charges because it is undisputed that the § 46a–71 claims were raised before the CHRO.

A proposed amendment relates back if the allegations do not alter the general theory of liability alleged in the original complaint. *DiLieto v. County Obstetrics & Gynecology Group, P.C.,* 297 Conn. 105, 142–43, 998 A.2d 730 (2010). "If the alternate theory of liability may be supported by the original factual allegations, then the mere fact that the amendment adds a new theory of liability is not a bar to the application of the relation back doctrine ... If, however, the new theory of liability is not supported by the original factual allegations of the earlier, timely complaint, and would require the presentation of new and different evidence, the amendment does not relate back." (Citation omitted.) *Sherman v. Ronco,* 294 Conn. 548, 563, 985 A.2d 1042 (2010).

In the present case, the plaintiff's initial complaint with the CHRO included a claim under § 46a–71. (Def.'s Memo. 5/29/13, Ex. A.) The CHRO issued its release of jurisdiction regarding the § 46a–71 claim on August 7, 2009 stating that, "the complainant must bring an action in

Superior Court within ninety (90) days of receipt of this release ..." (Def.Memo.5/29/13, Ex. C.) The plaintiff did bring an action within ninety days but failed to include the reference to § 46a–71 in the initial complaint. Nevertheless, the facts have not changed and the CHRO clearly had a sufficient opportunity to investigate the § 46a–71 claim. Furthermore, the § 46a–71 claim in the operative May 21, 2013 complaint is clearly supported by the factual allegations of the earlier November 6, 2009 complaint and thus the claim relates back.

Consequently, the motion to dismiss count eight is denied.

E

"Discrete Acts"

The defendant argues that the court lacks jurisdiction over discrete acts of alleged discrimination pled in support of the plaintiff's claims under the CFEPA that occurred prior to the statutory filing period, because such claims are untimely and were not independently exhausted. Additionally, the defendant maintains that these discrete acts of discrimination "cannot be transformed" into a hostile work environment claim to be made timely pursuant to the continuing violation exception. Thus, it is argued that the court does not have jurisdiction over any time-barred discrete acts of discrimination. In response, the plaintiff maintains that he alleged from the outset that he was subjected to a hostile work environment that existed from 2004 and continued until he left in 2008. Accordingly, it is argued that he need not "transform" his action into a claim for a hostile work environment because it already is one. Consequently, the plaintiff argues that his claims that occurred prior to the statutory filing period are timely under the continuing violation exception.

**\*9** As a threshold issue, the court must address whether it can dismiss only those portions of the complaint that allege "discrete acts." "While, generally, a motion to dismiss seeks dismissal of a complaint, there is nothing in the practice book precluding dismissal of certain claims within a complaint as the defendant seeks, see [Practice Book] § 10–30 et seq., particularly when the plaintiff has commingled allegations upon which this court has jurisdiction with allegations upon which this court has no jurisdiction. The validity of such a motion has been recognized by the Connecticut courts as concerns sovereign immunity, which implicates subject matter jurisdiction. *Paragon Construction Co. v. Dept. of Public Works,* 130 Conn.App. 211, [221 n. 10], A.3d 732 (2011) ('[T]he appellate courts of this state have ordered the dismissal of *portions of a count* of a complaint on the basis of sovereign immunity')." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Lloyd v. Connection, Inc.,* Superior Court, judicial district of New Haven, Docket No. CV–11–6023491 (December 21, 2011, Young, J.) ("court prefers the position that the valid portions of a complaint should be salvaged if at all feasible"). Accordingly, the court will consider the merits of the defendant's motion to strike.

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire arc easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." (Internal quotation marks omitted.) *Jackson v. Water Pollution Control Authority of Bridgeport,* 278 Conn. 692, 706 n. 12, 900 A.2d 498 (2006). "In a recent decision interpreting Title VII of the Civil Rights Act of 1964, the United States Supreme Court recognized that 'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges ... The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.'

*National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002) The court also concluded that a statute of limitations that may bar a claim that is based on prior discriminatory acts does not bar an employee 'from using the prior acts as background evidence in support of a timely claim.' " *Id.* *United Technologies Corp. v. Commission on Human Rights & Opportunities,* 72 Conn.App. 212, 229–30, 804 A.2d 1033, cert. denied, 262 Conn. 920, 812 A.2d 863 (2002).

The continuing violation doctrine is an exception to the general rule that discrete discriminatory acts are not actionable if time barred. "According to the continuing violation doctrine, if a plaintiff files an administrative charge that is timely as to any incident of discrimination that is in furtherance of an ongoing policy of discrimination, all claims of discrimination under that policy will be timely ...

In *Burrowes [v. Brookdale Hospital and Medical Center,* 66 Fed.Appx. 229, 231 (2d Cir.2003) ], however, the Second Circuit suggested that this doctrine has been, at best, severely

limited by the Supreme Court's decision in *Morgan,* and even may not be viable at all ..." (Citations omitted; internal quotation marks omitted.) *O'Hazo v. Bristol–Burlington Health District,* 599 F.Sup.2d 242, 253 (D.Conn.2009).

**\*10** A hostile work environment is a continuing violation. "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct ... The 'unlawful employment practice' therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own ..." (Citations omitted; internal quotation marks omitted.) *National R.R. Passenger Corp. v. Morgan, supra,* 536 U.S. at 115. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' " 42 U.S.C. § 2000e–5(e)(1). The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.,* at 116–17.

"To prove a workplace is actionably hostile under Title VII, a plaintiff must demonstrate that: (1) she subjectively perceived the environment to be abusive; (2) the conduct was so severe or pervasive that it created an objectively hostile work environment, meaning an environment that a reasonable person would find hostile or abusive; and (3) the conduct created an environment abusive to employees because of their race, gender, religion or national origin ..." *Martinez v. State Library of Connecticut,* 817 F.Supp.2d 28, 40–41 (D.Conn.2011). "[T]he legislature intended to create a cause of action for hostile work environment claims by prohibiting employers from discriminating in terms, conditions or privileges of employment under [the CFEPA,]" § 46a–60(a) ..." (Internal quotation marks omitted.) *Patino v. Birken Manufacturing Co.,* 304 Conn. 679, 691, 41 A.3d 1013 (2012).

In the present case, the plaintiff explicitly alleges that the defendant subjected him to a hostile work environment. (Compl., 5/20/13, ¶ 72, 74) ("Defendants violated [p]laintiff's rights guaranteed by the CFEPA as set forth in ... § 45a–60(a) by demoting the [p]laintiff based on his age and purposely depriving him of the seniority and economic benefits and privileges of his rightful and by harassing him and *subjecting him to a hostile work environment* which adversely affected his ability to perform his job.") (Emphasis added.) Whether the allegations are conclusory or whether they are truly discrete acts masquerading as a hostile work environment is of no moment for purposes of the present motion to dismiss. Again, "[t]here is a significant difference between asserting that a plaintiff cannot state a cause of action and asserting that a plaintiff has not stated a cause of action, and therein lies the distinction between the motion to dismiss and the motion to strike." (Internal quotation marks omitted.) *Pecan v. Madigan, supra,* 97 Conn.App. at 621, 905 A.2d 710.

**\*11** Consequently, the defendant's motion to dismiss the purportedly discrete acts is denied.

F

Punitive Damages & Interest

The defendant argues that sovereign immunity bars the plaintiff's claim for punitive damages and interest against the state pursuant to General Statutes § 46a–104. Specifically, the defendant argues that the state has not waived its sovereign immunity for punitive damages under the CFEPA because § 46a–104 does not expressly allow the plaintiff to seek punitive damages and the state is presumed to be immune unless a statute clearly provides otherwise. In response, the plaintiff contends that sovereign immunity is waived by the express statutory language found in General Statutes § 46a–51(10),[7] which defines "employer" to include "the state and all political subdivisions thereof ..." Hence it is argued that § 46a–51(10) and the damages provisions in the CFEPA are a complete and express waiver of sovereign immunity with respect to any and all aspects of the CFEPA, including its damages provisions.

Section 46a–104 provides that "[t]he court may grant a complainant in an action brought in accordance with [General Statutes § ]46a–100[8] such legal and equitable relief which it deems appropriate including, but not limited to, temporary or permanent injunctive relief, attorneys fees and court costs."

In previously analyzing § 46a–104, the Appellate Court concluded "that the legislature did not, either expressly or by force of a necessary implication, statutorily waive the state's sovereign immunity from liability for punitive damages under the fair employment act." *Ware v. State, supra,* 118 Conn.App. at 88, 983 A.2d 853. The Appellate Court came to that conclusion after reasoning that "there is no express waiver of liability in ... § 46a–104. Moreover, there is no necessary implication that the [state] waived its immunity to liability for punitive damages. This conclusion is supported by the policy against finding the state liable for punitive damages." (Emphasis omitted.) *Id.,* at 88–89, 983 A.2d 853. Nevertheless, the plaintiff attempts to distinguish *Ware* by arguing that it was decided under General Statutes § 51–12 [9] instead of the CFEPA. However, although the Appellate Court determined that the plaintiff's employment in *Ware* was governed by § 51–12, the court additionally explicitly addressed the CFEPA, stating that "the legislature did not, either expressly or by force of a necessary implication, statutorily waive *the state's* sovereign immunity from liability for punitive damages *under the fair employment act* [CFEPA]." [10] (Emphasis added.) *Id.,* at 88, 983 A.2d 853.

Furthermore, the reasoning of the Appellate Court in *Ware* with regard to punitive damages equally applies to the plaintiff's claim for interest. See, e.g., *Struckman v. Burns,* 205 Conn. 542, 558–59, 534 A.2d 888 (1987) (statutory waiver of sovereign immunity from suit not waiver of immunity from prejudgment interest), citing *State v. Chapman,* 176 Conn. 362, 366, 407 A.2d 987 (1978) ("In the absence of a specific statutory provision allowing the taxation of costs against the state, this court is required to adhere to the widely recognized principle that statutes relating to costs and authorizing the imposition of costs in various kinds of actions or proceedings, or under various prescribed circumstances, which do not in express terms mention the state, are not enough to authorize imposing costs against the state").

**\*12** For the foregoing reasons, the defendant's motion to dismiss the plaintiff's claims for punitive damages and interest is granted.

### III

### CONCLUSION

For the aforementioned reasons, the defendant's motion to dismiss is denied with regard to counts two, four, five, and eight. Additionally, the defendant's motion to dismiss the purportedly "discrete acts" of discrimination pled in support of the plaintiff's claims under the CFEPA is also denied.

The defendant's motion to dismiss is granted as to counts six and seven. Additionally, the defendant's motion to dismiss the plaintiff's claims for punitive damages and interest is also granted.

SO ORDERED.

**All Citations**

Not Reported in A.3d, 2013 WL 6335273

---

### Footnotes

1  General Statutes § 46a–60(a)(4) provides in relevant part: "(a) It shall be a discriminatory practice in violation of this section ... (4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a–82, 46a–83 or 46a–84 ..."

2  The plaintiff filed two complaints with the CHRO. The first complaint was filed on August 28, 2008, and the second, amended complaint was filed on April 1, 2009.

3  The defendant objects to the plaintiff's use of purportedly unauthenticated documents and exhibits in his objection to the motion to dismiss. Although the plaintiff maintained that counsel would authenticate the

| | |
|---|---|
| | documents at oral argument, he failed to do so. Accordingly, the court issued an order (# 147.00) on October 28, 2013, ordering the plaintiff to authenticate the same. The plaintiff complied on October 30, 2013 (# 148.00). Consequently, the court will consider the documents. |
| 4 | For example, General Statutes § 31–71b provides in relevant part: "(a)(1) Except as provided in subdivision (2) of this subsection, each employer, or the agent or representative of an employer, shall pay weekly all moneys due each employee on a regular pay day ..." |
| 5 | General Statutes § 4–142 provides in relevant part: "There shall be a Claims Commissioner who shall hear and determine all claims against the state except: ... (3) claims for which an administrative hearing procedure otherwise is established by law ..." |
| 6 | General Statutes § 46a–71 provides in relevant part that "(a) All services of every state agency shall be performed without discrimination based upon race, color, religious creed, sex, marital status, age, national origin, ancestry, mental retardation, mental disability, learning disability or physical disability, including, but not limited to, blindness." |
| 7 | General Statutes § 46a–51(10) provides " 'Employer' includes the state and all political subdivisions thereof and means any person or employer with three or more persons in such person's or employer's employ ..." |
| 8 | General Statutes § 46a–100 provides: "Any person who has timely filed a complaint with the [commission] in accordance with section 46a–82 and who has obtained a release from the commission in accordance with section 46a–83a or 46a–101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford." |
| 9 | Although the plaintiff refers to § 52–12 in its memo, this is obviously an error. *Ware* was decided under § 51–12. |
| 10 | There is a split of authority regarding whether a *private* employer defendant may be liable for punitive damages under the CFEPA, but even there the majority of courts have found that punitive damages are unavailable. See, e.g., *Dwyer v. Waterfront Enterprises, Inc.,* Superior Court, judicial district of New Haven, Docket No. CV–12–6032894–S (May 24, 2013, Fischer, J.) (56 Conn. L. Rptr. 232, 239–40); *Wright v. Colonial Motors, Inc.,* Superior Court, judicial district of Ansonia–Milford, Docket No. CV–11–6008335 (May 16, 2012, Doherty, J.) (54 Conn. L. Rptr. 63, 63) (striking prayer for relief because punitive damages not available under § 46a–60); and *Tomick v. United Parcel Service,* Superior Court, judicial district of New London, Docket No. CV–06–4008944 (October 28, 2010, Cosgrove, J.) (51 Conn. L. Rptr. 28, 34–37), aff'd in part and rev'd in part on other grounds, 135 Conn.App. 589, 43 A.3d 722, cert. denied, 305 Conn. 919, 47 A.3d 389 (2012) (examining legislative history of § 46a–104 and determining that punitive damages are not authorized). |

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.