## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| | : | |
| MIA CASTRO, M.D., HEIDI BOULES, M.D., | : | CIVIL ACTION NO. |
| ASHLEY ELTORAI, M.D., JODI-ANN | : | 3:20-cv-00330-JBA |
| OLIVER, M.D., LORI-ANN OLIVER, M.D., | : | |
| AND ELIZABETH REINHART, M.D. | : | |
| | : | |
| PLAINTIFFS | : | |
| | : | |
| v. | : | |
| | : | |
| YALE UNIVERSITY, YALE NEW HAVEN | : | |
| HOSPITAL, INC., AND MANUEL LOPES | : | |
| FONTES, M.D. | : | |
| | : | |
| DEFENDANTS | : | JULY 23, 2020 |

## YALE UNIVERSITY'S REPLY TO THE PLAINTIFFS' OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

The defendant, Yale University, hereby respectfully replies to the plaintiffs' Omnibus Memorandum of Law in Opposition to Motion to Dismiss ("Plaintiffs' Opposition Brief"). (Doc. Entry No. 61.)

## I.  MOTION TO DISMISS

### a.  *The Plaintiffs' Title IX Claims are Preempted by Title VII.*

In a last-ditch effort to save their Title IX claims, the plaintiffs argue that this Court should *entirely ignore* the plethora of cases within the Second Circuit that have addressed this very issue, and instead adopt the Third Circuit's decision in Doe v. Mercy Catholic Medical Center.  As discussed at length in Yale University's Memorandum of Law in Support of Motion to Dismiss, "[a]n overwhelming majority" of District Courts within the Second Circuit

**DONAHUE, DURHAM & NOONAN, P.C.**
CONCEPT PARK  •  741 BOSTON POST ROAD
GUILFORD, CONNECTICUT 06437
TEL:  (203) 458-9168  •  FAX:  (203) 458-4424
JURIS NO. 415438

have held that "an implied private right of action *does not* exist under Title IX for employees alleging gender discrimination in the terms and conditions of their employment." (Emphasis in original) Gayle v. Children's Aid College Prep Charter School, 2019 U.S. Dist. LEXIS 126997, at *14-17 (S.D.N.Y. July 29, 2019).  Likewise, the U.S. District Court for the District of Connecticut has itself *repeatedly* held that "there is no private remedy under Title IX for employment discrimination claims." See, e.g., Othon v. Wesleyan University, 2020 U.S. Dist. LEXIS 53580, at *22 (D. Conn. Mar. 27, 2020) (Dooley, J.); Uyar v. Seli, 2017 U.S. Dist. LEXIS 30853 (D. Conn. Mar. 6, 2017) (Bryant, J.); Urie v. Yale University, 331 F. Supp. 2d 94, 95 (D. Conn. 2004) (Chatigny, J.).  The plaintiffs do not even attempt to argue otherwise or distinguish the cases cited by Yale University.  In fact, in a recently-issued decision, Judge Dooley specifically *rejected* the Court's holding in Doe v. Mercy Catholic Medical Center, and determined that the analysis contained in the cases cited by the plaintiffs, including Lipsett v. Univ. of Puerto Rico, Preston v. Com. of Va. ex rel. New River Com. Coll., and Ivan v. Kent State Univ., was "spartan or . . .  made in the context of an issue not directly on appeal."  Id., at *22, 18 n.8.  The caselaw within the Second Circuit on this issue dictates but one conclusion – the sex-based employment discrimination and retaliation claims asserted by the plaintiffs are not actionable under Title IX.

Further, although the plaintiffs have attempted to persuade the Court to believe otherwise, the Supreme Court "has never addressed, in *dicta* or otherwise, how Title IX's implied private remedy will apply to employment claims or the relationship between Title VII and Title IX."  Othon, 2020 U.S. Dist. LEXIS 53580, at *24.  Moreover, the Department of Justice ("DOJ") Publication to which the plaintiffs cite has been removed by the DOJ from its website and appears to be accessible only on a non-government website called feminist.org.  It

is clearly outdated as it was published in 2001 and Title IX caselaw has significantly changed since then; the DOJ itself recognized these changes by removing the document from its website.  Even if the publication which the plaintiffs cite were still endorsed by the DOJ, DOJ publications are considered "non-binding guidance documents."  See, Executive Order 13891. Thus, even if the DOJ still endorsed that publication, it could not possibly be used by the Court as support for overturning the established caselaw within the Second Circuit.  Accordingly, the plaintiffs' Title IX claims must be dismissed.

**b.  _The Plaintiffs Did Not Sufficiently Plead Claims for Hostile Work Environment Under Title VII and Title IX._**

  i.  _The Plaintiffs Must Plead Facts Showing "Severe or Pervasive" Harassment, and Have Failed to Do So._

Although the plaintiffs argue that, in order to survive a motion to dismiss, they must allege _only_ that they were faced with harassment which altered the conditions of their employment (Plaintiffs' Opposition Brief, p. 16), that is incorrect; they must also plead facts from which it can be concluded that the harassment was objectively "severe or pervasive." The U.S. District Court for the District of Connecticut has unequivocally held that:

> To state a hostile work environment claim, a plaintiff must allege conduct (1) that is objectively severe or pervasive - that is, [conduct that] creates an environment that a reasonable person would find hostile or abusive [the objective requirement], (2) that the plaintiff subjectively perceive[s] as hostile or abusive [the subjective requirement], and (3) that creates such an environment because of plaintiff's sex . . . [the prohibited causal factor requirement].

Zito v. Federal Express Corp., 2016 U.S. Dist. LEXIS 112613, at *15-16 (D. Conn. Aug. 24, 2016) (Thompson, J.) (dismissing hostile work environment claims because the incidents alleged by the plaintiff "do not rise to the level of a pervasive or severe hostile work environment").  See also, Brown v. Coach Stores, 163 F.3d 706, 713 (2d Cir. 1998) (Parker,

J.) (on a review de novo, dismissing the plaintiff's hostile work environment claim on the basis that she failed to allege "discriminatory behavior that is sufficiently severe or pervasive").  In Cowan v. City of Mount Vernon, 2017 U.S. Dist. LEXIS 45812 (S.D.N.Y. Mar. 28, 2017) (Karas, J.), the primary case cited by the plaintiffs in support of their erroneous contention, the Court likewise held that the plaintiff must allege facts in her complaint from which it can be concluded that the claimed harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Id., at *9.  Making the conclusory statement that an employer's conduct is "severe or pervasive" is simply not enough; the plaintiff must plead specific facts from which that conclusion can be reasonably drawn.  Judge Karas in Cowan dismissed the plaintiff's hostile work environment claims because the plaintiff did not plead facts sufficient to permit a conclusion of "severe or pervasive" harassment.  Id., at *15.  Cowan also makes clear that plaintiffs alleging employment discrimination claims have an "obligation to submit well-pleaded facts as to permit the court to infer more than the mere possibility of misconduct" in accordance with the pleading standards set forth in Bell Atl. Corp. v. Twombly and Ashcroft v. Iqbal.  Id., at *6-7, 15.  Thus, the caselaw cited by the present plaintiffs demonstrates that, contrary to their contention, they are not held to "lenient notice pleading standards," (Plaintiffs' Opposition Brief, p. 2), and they must plead specific facts in support of their conclusory allegations of "severe or pervasive" harassment in order to survive a motion to dismiss.

As explained in detail in Yale University's Memorandum of Law, the present plaintiffs have fallen far short of alleging "severe or pervasive" harassment.  (See, Yale University's Mem. Of Law, pp. 12-22.)   It is axiomatic that in order to be deemed pervasive, incidents "must be more than episodic; they must be sufficiently continuous and concerted . . . [A] court

should look to all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance." Gaynor v. Martin, 77 F. Supp. 2d 272, 278 (D. Conn. 1999) (Goettel, J.).  "Indeed, a single instance of sexual harassment is typically insufficient to establish liability under Title IX unless the conduct consists of extreme sexual assault or rape." Carabello v. N.Y.C. Dep't of Educ., 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013) (Azrack, J.).

With respect to the plaintiffs' Title IX claims, the vast majority of the conduct alleged by each plaintiff falls outside the 300-day statute of limitations and thus cannot be considered when assessing whether the plaintiffs have met the standard for "severe or pervasive" harassment.  (Yale University's Mem. Of Law, pp. 12-16.)  Dr. Castro has alleged *not a single incident* of sexual harassment that falls within the statute of limitations; Dr. Jodi-Ann Oliver has alleged only one; Dr. Lori-Ann Oliver and Dr. Boules have each alleged two; and Drs. Eltorai and Reinhart have alleged three and four, respectively.  (Id.)  Since none of the inappropriate conduct alleged by Dr. Castro falls within the statute of limitations, her claim must be dismissed.  Likewise, the single actionable incident of sexual misconduct alleged by Dr. Jodi-Ann Oliver cannot possibly constitute "severe or pervasive" harassment,  since "[n]o reasonable person could have believed that [a] single incident of sexually inappropriate behavior by a co-worker could amount to sexual harassment." Chenette v. Kenneth Cole Productions, 345 F. App'x 615, 619 (2d Cir. 2009) (Winter, J.).  See also, Brodsky v. Trumbull Board of Education, 2009 U.S. Dist. LEXIS 8799, at *6 (D. Conn. Jan. 30, 2009) (Dorsey, J.) (finding that one incident of a male student touching a female student's breasts and buttocks,

and other incidents of name-calling, insults, and physical harassment, were "not sufficiently pervasive or severe from an objective standpoint").

Similarly, Dr. Lori-Ann Oliver and Dr. Boules, who have both alleged only two incidents of sexual harassment, cannot maintain claims for hostile work environment.  District Courts in this Circuit have frequently held that two separate occurrences of alleged inappropriate behavior are not sufficient to maintain a claim for hostile work environment. See, e.g., Soriano ex rel. Garcia v. Bd. of Educ. of City of N.Y., 2004 U.S. Dist. LEXIS 21529, at *6 (E.D.N.Y. Oct. 27, 2004) (Gleeson, J.) (finding two separate incidents in which two male students inappropriately touched a female student not sufficiently pervasive under Title IX).

The harassment alleged by Drs. Eltorai and Reinhart is sporadic at best; Dr. Eltorai has asserted three actionable incidents of sexual harassment over a three-month period, and Dr. Reinhart has alleged four incidents in a six-month span of time, including one in 2019 when Dr. Fontes linked arms with her.  Linking arms cannot be considered "objectively offensive," and therefore, Dr. Reinhart has effectively also alleged only three incidents of sexual harassment.  Courts in this Circuit have held that four to five incidents of alleged harassment over a several month period are not sufficient to state a hostile work environment claim, and therefore neither Dr. Eltorai nor Dr. Reinhart can prevail on their claims.  See, Legnani v. Alitalia Linee Aeree Italiane, 1997 U.S. Dist. LEXIS 16151, at *3 (S.D.N.Y. Oct. 16, 1997) (Scheindlin, J.) (four to five instances over a two month period did not establish pervasiveness); Lamar v. Nynex Service Co., 891 F. Sup. 184 (S.D.N.Y. 1995) (Knapp, J.) (five incidents of a sexual nature over the course of approximately seventeen months were too sporadic to constitute sexual harassment as a matter of law).  Thus, all plaintiffs' Title IX claims should be dismissed.

For the very same reasons, Drs. Jodi-Ann Oliver and Lori-Ann Oliver's Title VII claims must also be dismissed because they have failed to plead "severe or pervasive" harassment within the applicable statute of limitations.  (See, Yale University's Mem. Of Law, pp. 18-22.)

        *ii.   The Continuing Violation Doctrine Does Not Apply.*

Contrary to the plaintiffs' contention, they cannot utilize the continuing violation doctrine.  "The continuing violation exception is recognized in the Second Circuit under limited circumstances."  Valenti v. Carten Controls, Inc., 1997 U.S. Dist. LEXIS 19722, at *15-16 (D. Conn. Dec. 3, 1997) (Nevas, J.).  "The Second Circuit has held that a continuing violation may be shown in either of two ways: first, where there is proof of specific ongoing discriminatory policies or practices, or second, where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."  Zito, 2016 U.S. Dist. LEXIS 112613, at *11-12.  As to the first type of continuing violation, the doctrine "applies to cases involving specific discriminatory policies or mechanisms such as discriminatory seniority lists, or discriminatory employment tests."  Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993) (Walker, J.) overruled on other grounds by Greathouse v. JHS Sec. Inc., 784 F.3d 105 (2d Cir. 2015). With respect to the latter type, it is undisputed that "[d]iscrete acts of discrimination cannot constitute a continuing course of conduct.  To qualify, the events in question . . . cannot be 'isolated' or 'sporadic' and must constitute a 'dogged pattern.'"  Sawka v. ADP, Inc., 2015 U.S. Dist. LEXIS 130932, at *31-32 (D. Conn. Sep. 29, 2015) (Bolden, J.).  See also, Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 190 (D. Conn. 2000) (Underhill, J.) ("Discrete incidents or even similar multiple incidents of discrimination that do not result from discriminatory policies or mechanisms, however, do not amount to a continuing violation").

The present plaintiffs have failed to allege facts sufficient to trigger the continuing violation doctrine.  First, the plaintiffs have not alleged that Yale University had a specific gender-discriminatory policy or mechanism in place, and thus the plaintiffs cannot assert the continuing violation doctrine on that basis.  Second, the plaintiffs have not alleged "a dogged pattern" of discrimination by Dr. Fontes; instead they have each alleged distinct and isolated instances of claimed misconduct that occurred periodically over the course of several years. See, Sawka, 2015 U.S. Dist. LEXIS 130932, at *31-32.  In fact, none of the incidents alleged by the plaintiffs even occurred within the same month.  Since the plaintiffs have alleged nothing more than "isolated" and "sporadic" incidents, they cannot utilize the continuing violation doctrine.  See id.; Zito v. Federal Express Corp., 2016 U.S. Dist. LEXIS 112613, at *15-16 (D. Conn. Aug. 24, 2016) (Thompson, J.) (holding that the continuing violation exception does not apply because the plaintiff alleged "distinct, completed incidents").

Drs. Castro, Boules, Jodi-Ann Oliver and Lori-Ann Oliver cannot assert the continuing violation doctrine for the additional reason that they have failed to establish a *prima facie* case of hostile work environment.  District Courts sitting in the Second Circuit have held that in order for a plaintiff to utilize the continuing violation doctrine, she must *first* establish a *prima facie* case of discrimination.   See, e.g., Alers v. New York City Human Resources Administration, 2008 U.S. Dist. LEXIS 72949, at *19 (E.D.N.Y. Sep. 24, 2008) (Townes, J.) ("Since plaintiff is unable to establish a *prima facie* case of a hostile work environment claim, she cannot show that defendant committed a continuing violation"); Quarless v. Bronx Leb. Hosp. Ctr., 75 Fed. Appx. 846, 848 (2d Cir. 2003) (Sotomayor, J.) (holding that the court "need not reach plaintiff's arguments that his untimely disparate pay allegations can be salvaged under the continuing violation doctrine because plaintiff's evidence failed to establish a prima

facie disparate pay claim"); <u>Vargas v. Stanley</u>, 2010 U.S. Dist. LEXIS 107694, at \*24 (S.D.N.Y. Sep. 29, 2010) (Daniels, J.) (holding that the plaintiff's "claims do not qualify for the continuing violation doctrine" because he failed to allege a *prima facie* claim).  As discussed in more detail in the following section, since Drs. Castro, Boules, Jodi-Ann Oliver and Lori-Ann Oliver have failed to plead that Yale University had "actual notice" of any alleged wrongdoing, they have not presented a *prima facie* case of hostile work environment and thus cannot rely on the continuing violation doctrine.  (<u>See</u>, Yale University's Mem. Of Law, pp. 22-24; infra, pp. 9-10.)

> iii.  *Drs. Castro, Boules, Lori-Ann Oliver and Jodi-Ann Oliver Have Failed to Plead That Yale University had "Actual Notice" of Any Alleged Wrongdoing.*

By their own admission in the Amended Complaint, Drs. Castro, Boules, Lori-Ann Oliver and Jodi-Ann Oliver *never* advised anyone at Yale University of Dr. Fontes' alleged misconduct, and thus their hostile work environment claims must be dismissed.  (Amended Complaint, at ¶¶ 94-109, 117, 171-72, 175, 184-185.)  As explained in Yale University's Memorandum of Law, Dr. Boules *never* told a single person that Dr. Fontes had discriminated against her; certainly, the vague email she sent to Yale New Haven Hospital's Chief Medical Experience Officer that she wanted to speak with him about an *unidentified* topic is not sufficient to put Yale University on "actual notice" of a discrimination complaint.  (<u>Id.</u>, at ¶¶ 94-109.)  Likewise, Dr. Castro alleges only that she submitted an "anonymous evaluation" of Dr. Fontes at an unidentified time.  (<u>Id.</u>, at ¶ 117.)  That anonymous "evaluation" is not sufficient to establish "actual notice" under Title VII and Title IX.  Dr. Lori-Ann Oliver alleges in the Amended Complaint that she decided *not* to pursue a complaint against Dr. Fontes, and Dr. Jodi-Ann Oliver alleges that she did nothing more than casually "mention" Dr. Fontes' alleged touching of her to the Division

Chief of Pain Management at Yale University, which surely does not satisfy the "actual notice" requirement.  (Id., at ¶¶ 171-72, 175, 184, 185.)   The plaintiffs' position that Dr. Jodi-Ann Oliver put Yale University on notice of the alleged sexual harassment when she complained that Dr. Fontes called her a "malingerer" after she suffered a wrist injury is frivolous on its face.  (Plaintiffs' Opposition Brief, p. 24.)  Such a statement does not relate even tangentially to her gender.  See, e.g., Scott v. City of New York Dept. of Correction, 641 F. Supp. 2d 211, 228 (S.D.N.Y. 2009) (Gorenstein, J) (holding that the defendant was never put on notice of the alleged sexual harassment because the only complaints made by the plaintiff concerned matters unrelated to his alleged sexual harassment); Higgins v. Metro-North Railroad, 318 F.3d 422, 427 (2d Cir. 2003) (Walker, J.) (holding that the defendant's knowledge that an employee had difficulty controlling his temper was not sufficient to put the defendant on notice that the employee was prone to sexually harass his co-workers).

Having apparently recognized that they *never* notified Yale University of the alleged harassment, the plaintiffs advance the baseless argument that Yale University was on notice of Drs. Fontes' alleged misconduct by virtue of statements made by Drs. X and Y and an employee of Duke University about Dr. Fontes' behavior.  (Plaintiffs' Opposition Brief, pp. 22-23.)  That, however, is irrelevant; the only relevant inquiry here is whether Yale University had *specific* knowledge of Dr. Fontes' alleged harassment towards Drs. Castro, Boules, Lori-Ann Oliver and Jodi-Ann Oliver.  See, e.g., Raspardo v. Carlone, 770 F.3d 97, 124 (2d Cir. 2014) (Droney, J.) (holding that prior complaints that an employee had made an inappropriate joke about a female; violated an order prohibiting him from driving alone with female officers; and inappropriately used the messaging system were insufficient to put his employer on notice that he would later sexually harass the two female plaintiffs, as his prior behavior did not

pertain to the plaintiffs at issue).  Additionally, the alleged statements by Drs. X and Y and an employee of Duke University were made in 2015 and 2016, several years *before* the misconduct alleged in the present complaint; and those statements could not possibly have put Yale University on notice of the alleged misconduct directed towards the plaintiffs several years later.  Tellingly, the plaintiffs have failed to cite a single case to support the proposition that statements made years before the conduct alleged in the complaint are sufficient to establish "actual notice."

Likewise, the plaintiffs cannot plausibly claim that Yale University had "actual notice" of Dr. Fontes' purported misconduct because other University employees were allegedly present when the misconduct occurred.  (Plaintiffs' Opposition Brief, p. 22.)  First, the plaintiffs have not alleged that any of those individuals reported the claimed misconduct to any supervisor.   Second, there are no allegations which suggest that those individuals are "official[s] with authority to address the alleged harassment and institute corrective measures," as the plaintiffs acknowledge they must be for notice to attach.  Wyler v. Connecticut State Univ. Sys., 100 F. Sup. 3d 182, 189 (D. Conn. 2015) (Chatigny, J.).  In some instances, the plaintiffs did not even identify the witnesses by name, and therefore the Court cannot possibly determine whether the individuals had authority to address the alleged harassment and institute corrective measures.  (See, e.g., Amended Complaint, ¶¶ 190-195, 197-200.)  See also, Torres v. Pisano, 116 F.3d 625, 637 (2d Cir. 1997) (Calabresi, J.) ("If a co-worker has knowledge of a harassee's complaint, but that co-worker lacks authority to counsel, investigate, suspend, or fire the accused harasser, or to change the conditions of the harassee's employment, the co-worker's inaction does not spark employer liability").  Accordingly, the hostile work

environment claims asserted by Drs. Castro, Boules, Lori-Ann Oliver and Jodi-Ann Oliver must be dismissed.

c. **_Drs. Castro and Eltorai Have Failed to State a Claim for Retaliation Because They Did Not Allege an Adverse Employment Action._**

While Yale University does not dispute that Drs. Castro and Eltorai have each alleged certain decisions regarding their employment with which they were dissatisfied, *none* of those decisions constitutes an adverse employment action which is required to state a claim.  It is axiomatic that "[n]ot everything that makes an employee unhappy is an actionable adverse action."  Clarke v. City of New York, 2001 U.S. Dist. LEXIS 11136, at *14 (E.D.N.Y. Aug. 1, 2001) (Glasser, J.)  There is an abundance of caselaw demonstrating that Dr. Eltorai's allegations – that she was counseled by Dr. Fontes and two of his subordinates in connection with her poor ICU performance in February 2019; transferred out of the ICU in August 2019; and denied volunteer work shifts in May 2020 – do not constitute adverse employment actions. (See, Yale University's Mem. Of Law, pp. 28-31; Amended Complaint, ¶¶ 132, 134, 136, 139-40, 143-44, 161-64.)  The plaintiffs have not even attempted to distinguish any of the caselaw cited by Yale University, and have failed to point to any dispositive caselaw of their own.  The absence of such caselaw is telling.  Moreover, Dr. Eltorai specifically states in her Opposition Brief that the alleged adverse employment actions "*could* have far-reaching ramifications [on her] career and professional growth," thereby admitting that any damages are entirely speculative.  (Plaintiffs' Opposition Brief, p. 29.)  Thus, they cannot possibly be considered adverse employment actions.  See, e.g., Malone v. N.Y. Pressman's Union No. 2, 2011 U.S. Dist. LEXIS 58247, at *7 (S.D.N.Y. May 31, 2011) (Swain, J.) ("The elimination of speculative, potential future opportunities is insufficient to establish an adverse employment

action"); <u>Herling v. N.Y.C. Dep't of Educ.</u>, 2014 U.S. Dist. LEXIS 56442, at *7 (E.D.N.Y. Apr. 23, 2014) ("the theoretical repercussions" claimed by the plaintiff "do not constitute adverse employment actions"); <u>Woolfolk v. New York City Dept. of Education</u>, 2020 U.S. Dist. LEXIS 46948, at *18 (S.D.N.Y. Mar. 18, 2020) (Abrams, J.) ("Plaintiff's allegations about not receiving certain interview offers for future employment are too speculative to constitute an adverse employment action").

Likewise, Dr. Castro has not provided any controlling authority showing that the two adverse employment actions she claims – that Dr. Fontes denied her request to go on a mission trip to Peru unless she used her vacation time, and yelled at her to pick up a syringe cap – fit that definition. (<u>See</u>, Amended Complaint, at ¶¶ 115-116.) Yale University, on the other hand, has identified numerous cases to the contrary that are directly on point, which the plaintiffs have also not even attempted to distinguish. (<u>See</u>, Yale University's Mem. Of Law, pp. 31-32.) In addition, Dr. Castro states in her Opposition Brief and Amended Complaint that she may still get credit for the mission trip to Peru, demonstrating that any harm to her is entirely speculative. (Opposition Brief, at 31.) <u>See</u>, <u>e.g.</u>, <u>Malone</u>, 2011 U.S. Dist. LEXIS 58247, at *7; <u>Herling</u>, 2014 U.S. Dist. LEXIS 56442, at *7; <u>Woolfolk</u>, 2020 U.S. Dist. LEXIS 46948, at *18.

Yet another reason to dismiss Dr. Castro's complaint is that she has not alleged facts from which it can be concluded that she had engaged in any protected activity. To the extent that Dr. Castro claims that refusing Dr. Fontes' alleged sexual advances constitutes protected activity, she has failed to show a causal relationship between that protected activity and Dr. Fontes' denial of her request to go on the mission trip, which occurred *one year after* she allegedly resisted his advances. (<u>See</u>, Amended Complaint, at ¶ 119.) The U.S. Supreme

Court, as well as District Courts within the Second Circuit, have consistently held that a plaintiff cannot establish the requisite temporal proximity necessary to prove causation when the alleged protected activity occurred several months before the alleged adverse employment action.  See, e.g., Clark County School District v. Breeden, 532 U.S. 268, at *273-74 (2001) (citing with approval cases dismissing retaliation claims where there were three and four month periods between protected activity and adverse employment action); Cooper v. Morgenthau, 2001 U.S. Dist. LEXIS 10904, at *8 (S.D.N.Y. July 31, 2001) (Pauley, J.) (dismissing retaliation claim where alleged adverse employment action occurred seven months after protected activity); Cobian v. New York City, 2000 U.S. Dist. LEXIS 17479, at *16 (S.D.N.Y. Dec. 6, 2000) (Peck, J.) (dismissing retaliation claim where there was a four month lapse between protected activity and adverse employment action).  Accordingly, neither Dr. Eltorai nor Dr. Castro have stated a claim for retaliation.

## II.   **MOTION TO STRIKE**

In their Opposition Brief, the plaintiffs do not dispute Yale University's position that the allegations identifying each Yale University employee accused of sexual misconduct by name are scandalous and inflammatory – that comes as no surprise given the plaintiffs' argument that they should *not* be required to plead the names of various individuals referenced throughout their Amended Complaint because it "will cause substantial harm to their reputation, embarrassment, and shaming." (Opposition Brief, p. 39).  Given the absence of an objection on that point, Yale University's Motion to Strike should be granted.

In addition, as explained in detail in Yale University's Memorandum of Law, the subject allegations should be stricken because they "serve no purpose except to inflame the reader."  See, e.g., Impulsive Music v. Pomodoro Grill, Inc., 2008 U.S. Dist. LEXIS 94148, at

*7 (W.D.N.Y. Nov. 19, 2008) (Telesca, J.).   An anonymous survey which queried Yale University *students*, not Medical Center employees, as to their perception of sexual assault on the undergraduate campus is unquestionably irrelevant to the hostile work environment claims asserted by the plaintiffs, who are all physician employees, not undergraduate students, of either Yale University or Yale New Haven Hospital.  Likewise, the fact that four sexual misconduct cases were previously brought against Yale University by parties not involved in the subject action, in which allegations were made against different supervisors in different departments from the present plaintiffs, is entirely irrelevant; since the plaintiffs have not suggested that those prior incidents in any way contributed to their perception of the hostility of their work environment, they have no bearing on the present matter at all.  The plaintiffs have also failed to counter Yale University's position that evidence of the prior and pending lawsuits and anonymous survey is inadmissible.  Even if it were tangentially relevant – and it is not – that evidence is inadmissible because it constitutes character evidence under Federal Rule of Evidence 404(b).  <u>See</u>, Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character").  That evidence would also be inadmissible pursuant to Fed. R. Evid. 403 because the prejudicial effect would clearly outweigh any conceivable tangential probative value.  Given that evidence of the prior and pending lawsuits and the anonymous survey is irrelevant, inadmissible and scandalous – as the plaintiffs seem to recognize – Paragraphs 38 through 61 should be stricken.

## III.     MOTION FOR A MORE DEFINITE STATEMENT

Although the plaintiffs unhesitatingly and unapologetically identified the names of several employees of Yale University accused of sexual misconduct, ironically the plaintiffs

now argue that they should *not* be required to plead the names of various individuals referenced throughout the Amended Complaint who are allegedly victims of sexual harassment by Dr. Fontes or witnesses to the alleged sexual harassment because it "will cause substantial harm to their reputation, embarrassment, and shaming." (Plaintiffs' Opposition Brief, p. 39.) If the plaintiffs do not identify the individuals referenced in their complaint by name, Yale University will not be able to adequately investigate or respond to the plaintiffs' allegations. It is not sufficient for the plaintiffs to disclose the names through discovery because Yale University's answer will be due well in advance of the completion of discovery, which the parties have agreed will likely be lengthy. Accordingly, the Court should grant Yale University's Motion for a More Definite Statement.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, as well as those reasons stated in its initial Memorandum of Law, Yale University's Motion to Dismiss, Motion to Strike and Motion for a More Definite Statement should be granted.

**THE DEFENDANT,**
**YALE UNIVERSITY**


By:_____/s/_____
      PATRICK M. NOONAN – CT00189
      KRISTIANNA L. SCIARRA – CT30223
      DONAHUE, DURHAM & NOONAN, P.C.
      Concept Park
      741 Boston Post Road, Suite 306
      Guilford, CT  06437
      Telephone:  (203) 458-9168
      Fax:        (203) 458-4424
      Email:  pnoonan@ddnctlaw.com
                  ksciarra@ddnctlaw.com

**<u>CERTIFICATION</u>**

I hereby certify that, on the above-written date, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

_____/s/_____
Patrick M. Noonan