UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MIA CASTRO, M.D., HEIDI BOULES, M.D., ASHLEY ELTORAI, M.D., JODI-ANN OLIVER, M.D., LORI-ANN OLIVER, M.D. and ELIZABETH REINHART, M.D., <br>     Plaintiffs, <br><br> v. <br><br> YALE UNIVERSITY, YALE NEW HAVEN HOSPITAL, INC., and MANUEL FONTES, M.D., in his individual and professional capacities, <br>     Defendants. | Civil Action No. 3:20-CV-00330 (JBA) <br><br><br><br><br><br><br><br> JULY 24, 2020 |

**DEFENDANT YALE NEW HAVEN HOSPITAL, INC.'S REPLY
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure and Local Rule 7(a) of this District, Yale New Haven Hospital, Inc. ("YNHH"), by and through its attorneys, Jackson Lewis P.C., hereby respectfully submits this Reply in further support of its Motion to Dismiss Counts One through Four of the Amended Complaint.

Plaintiffs' Opposition fails to address the numerous reasons for dismissal of their claims against YNHH, including that: (1) Title IX does not apply to YNHH, an entity not primarily in the education business; (2) the Title IX claims of Plaintiffs Boules, Eltorai and Olivers ("Attending Physician Plaintiffs") against YNHH fail because their relationships to an education program or activity are too attenuated to entitle them to coverage; (3) Title IX does not provide Plaintiffs with a private remedy; (4) Plaintiffs have not established that YNHH had actual notice of any wrongdoing, as Title IX requires; (5) Plaintiffs Eltorai and Castro have insufficiently

1

alleged protected activity and adverse employment action under Titles VII or IX; and (6) Plaintiff Eltorai's Title VII pregnancy discrimination claim fails for lack of adverse action.

Instead, Plaintiffs' Opposition wrongly contends that YNHH's residency and fellowship programs, which are on-the-job *training* programs, somehow make YNHH an *education* program under Title IX; the Attending Physician Plaintiffs have standing to sue as employees but the Amended Complaint controverts this assertion; Title IX provides Plaintiffs with a private remedy but they do not address the directly applicable precedent discussed by YNHH coming to the opposite conclusion and instead cite to unpersuasive other authority; YNHH had actual notice of Dr. Fontes' misconduct, but his position cannot impute actual notice to YNHH and Plaintiffs' allegation that Yale University notified YNHH of complaints is pure speculation and insufficient; and the Opposition confirms Plaintiffs Eltorai's and Castro's lack of protected activity and no adverse action, which is fatal to their retaliation claims.

## II.   Legal Argument

**A.   YNHH's Operation of On-the-Job Training Programs Does Not Make YNHH an Education Program or Activity Covered by Title IX.**

Plaintiffs argue that YNHH may be sued under Title IX solely because, as a teaching hospital with medical residency and fellowship programs, YNHH is an "education program or activity" under Title IX.  However, the relevant caselaw has rejected this precise argument.

Plaintiffs argue that "[m]edical residency easily falls within the plain meaning of 'any education program or activity' as set forth in Title IX" because "medical residency clearly involves 'education.'"  (Opposition at 22).  They support their argument by citing to authority embellishing the degree of "education" that medical residency programs involve.  (*Id.* at 22-23).

2

For example, Plaintiffs quote to *McKeesport Hosp. v. Accred. Council for Grad. Med. Ed.*, 24 F.3d 519, 525 (3d Cir. 1994), but the issue on appeal there was whether the withdrawal of the hospital's residency's accreditation was a state action—not relevant here—and, in a single sentence—the one Plaintiffs quote—the Third Circuit described residencies in mere *dicta*.

In fact, YNHH's medical residency and fellowship programs—like all such programs—are akin to apprenticeships where employees receive on-the-job training to learn a skill. *See Johnson v. Baptist Med. Ctr.*, 97 F.3d 1070, 1072 (8th Cir. 1996) (affirming decision for hospital facing Title VII and Title IX claims, stating: "Although the residency program combines features of both employment and academic study, it appears to be primarily an employment setting not unlike an apprenticeship."); *see also Boston Med. Ctr. Corp. and House Officers' Assoc.*, 1999 NLRB LEXIS 821, 330 N.L.R.B. 152, 161 (1999) (stating that medical "residents, and fellows bear a close analogy to apprentices in the traditional sense"; "Members of all professions continue learning throughout their careers, and many professions, including those in the healthcare industry, require individuals to be trained further after graduation in order to be licensed or received in the field."). Thus, that a hospital with apprenticeship-like programs may have some training aspect to it does not subject the hospital to Title IX. *See Crandell v. New York Coll. of Osteopathic Med.*, No. 99-cv-2347 (LAK), June 30, 1999 Order (Exhibit A) (S.D.N.Y. June 30, 1999) (dismissing Title IX sexual harassment claim against private hospital).

Plaintiffs also argue that, "[h]ad Congress wished to exclude residency programs from Title IX's coverage, it could have done so explicitly, as it did for" certain other entities. (Opposition at 23 (citing 20 U.S.C. § 1681(a))). But courts have excluded from Title IX coverage entities that are not explicitly excluded in the statute. *See Robideaux v. North Dakota*

3

*Dep't of Corr. and Rehab.*, 570 F.3d 966, 978 (8th Cir. 2009) (despite no explicit exclusion in the statute, excluding a prison industries program from Title IX coverage). For these reasons, the Opposition does nothing to establish that YNHH is subject to Title IX and for those grounds previously articulated, dismissal as to the Title IX claims is warranted.

B.   **The Attending Physician Plaintiffs, Who Have No More than Staff Privileges at YNHH, Wrongly Contend They Have Standing to Sue As Employees Because the Allegations of the Amended Complaint Controvert This Very Assertion.**

In their Opposition, the Attending Physician Plaintiffs contend that they have standing to sue as employees. But, the allegations in the Amended Complaint demonstrate to the contrary.

While the Attending Physician Plaintiffs opine that they have standing to sue, they do not even touch upon YNHH's argument that having staff privileges at YNHH is insufficient to establish an employment relationship with YNHH. (Opposition at 24-27). The Opposition asserts legal conclusions about their employment status with YNHH but fails to cite to any factual amplification from the Amended Complaint that they are, in fact, employees. (*Id.* at 24-26). To the contrary, Plaintiffs Castro and Reinhart, who as a matter of fact *are* employed by YNHH, make specific factual allegations of employment with YNHH. (*See* Am. Compl., ¶ 209 ("Dr. Reinhart and Dr. Castro . . . signed employment agreements with YNHH")). There are no allegations that the Attending Physician Plaintiffs similarly signed employment agreements with YNHH. Therefore, the Opposition does not disturb that the Attending Physician Plaintiffs cannot sue YNHH under Title IX. *See Doe v. Univ. of Ky.*, 357 F. Supp. 3d 620, 631-32 (E.D. Ky. Jan. 11, 2019) (dismissing Title IX claim, despite the "intertwined nature of the [plaintiff's] status" with defendant, including that she lived on defendant's campus, paid defendant fees and costs for living there, followed defendant's policies and rules that she would not have otherwise

4

had to follow, was issued a defendant email account, identification number and card to facilitate her access to defendant, and regularly availed herself of defendant's services and activities).

C. **Plaintiffs' Opposition Ignores Directly Applicable Precedent Discussed by YNHH in Support of Its Argument That Title IX Does Not Provide a Private Remedy for Employment Discrimination Based on Sex.**

In arguing that Plaintiffs have no private remedy under Title IX, YNHH discussed eight directly applicable decisions from this Circuit. The Opposition does not address any of them, including this Court's recent, well-reasoned holding that Title IX does not provide a private remedy for employment discrimination claims. (*See* Opposition generally; *see also* Memo. at 13 (citing *Othon v. Wesleyan Univ.*, No. 18-cv-00958 (KAD), 2020 U.S. Dist. LEXIS 53580, *22 (D. Conn. Mar. 27, 2020)). Instead, Plaintiffs cite only to other Circuit decisions and the United States Department of Justice, neither of which is binding authority here. (Opposition at 17-21).

In a just-issued decision, Judge Dooley analyzed the cases cited by Plaintiffs in their Opposition, and *still* concluded that "there is no private remedy under Title IX for employment discrimination claims." *Piscitelli v. Univ. of Saint Joseph*, No. 3:19-cv-01589 (KAD), 2020 U.S. Dist. LEXIS 107335, *25 (D. Conn. June 18, 2020). Notably, Judge Dooley came to that conclusion after discussing *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 560, 562 (3d Cir. 2017), and after finding that "the analysis in [*Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881 (1st Cir. 1988), *Preston v. Com. of Va. ex rel. New River Com. Coll.*, 31 F.3d 203 (4th Cir. 1994), and *Ivan v. Kent State Univ.*, No. 94-cv-4090, 1996 WL 422496 n.10 (6th Cir. July 26, 1996) wa]s spartan or [wa]s made in the context of an issue not directly on appeal." *Piscitelli*, No. 3:19-cv-01589 (KAD), 2020 U.S. Dist. LEXIS 107335, at *21 n.9, 23-24. Judge Dooley did not find those cases persuasive because *Lipsett* "did not separately analyze why there is a private remedy

5

for employment discrimination claims under Title IX"; *Preston* misinterpreted *New Haven Bd. of Ed. v. Bell*, 456 U.S. 512 (1982) and its "statement about the existence of a private remedy" under Title VII was mere "*dicta*"; and *Ivan* "provided no reasoning for [its unpublished] decision" in a footnote that Title VII does not preempt Title IX, "it is unclear whether the issue was raised and briefed by the parties," and the footnote was "likely *dicta*." *Piscitelli*, No. 3:19-cv-01589 (KAD), 2020 U.S. Dist. LEXIS 107335, at *21 n.9. Conveniently, Plaintiffs do not mention *Piscitelli* in the Opposition, even though *Piscitteli* was issued before Plaintiffs' filing.

Moreover, *Hiatt v. Colo. Seminary*, another case Plaintiffs cited for their proposition that Title VII is not pre-emptive, did not contain any analysis of whether Title IX provides a private remedy. *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017). Specifically, citing to *Hiatt*, Plaintiffs stated that the "Tenth Circuit[]" has "weighed in" and "held that Title IX is not preempted by Title VII." (Opposition at 17-18). But that is not true. *Hiatt* did not at all weigh in on this question. Rather, the single place where *Hiatt* even remotely referred to this issue is in a short parenthetical following citation to *Jackson v. Birmingham Bd. of Ed.*, 544 U.S. 167 (2005), which *Piscitelli* analyzed at length and found unhelpful. *Piscitelli*, No. 3:19-cv-01589 (KAD), 2020 U.S. Dist. LEXIS 107335, at *12-13, 23-24, 26-28. Therefore, Plaintiffs' Title IX claims are pre-empted by Title VII and must be dismissed. (*See* Memo. at 12-14; *see also Vengalattore v. Cornell Univ.*, No. 3:18-cv-1124 (GLS/TWD), 2020 U.S. Dist. LEXIS 76929, *16 (N.D.N.Y. May 1, 2020) ("an implied private right of action does not exist under Title IX for employees alleging gender discrimination in the terms and conditions of their employment.").

**D.    Plaintiffs' Arguments That Dr. Fontes' Position Imputes Actual Notice to YNHH and That Yale University Informs YNHH of Complaints It Receives, Are Insufficient to Establish That YNHH Had Actual Notice of Any Misconduct.**

Plaintiffs argue that YNHH had actual notice of alleged wrongdoing due to Dr. Fontes' supervisory position and because Yale University allegedly informs YNHH of complaints it receives. The former argument is wrong and the latter one is pure speculation; in any event, both are insufficient to plead actual notice under Title IX.

Plaintiffs argue "knowledge can be imputed to Yale and YNHH because of Fontes's supervisory position over Plaintiffs" and try to emphasize that "the objectionable conduct is automatically imputed to the employer." (Opposition at 33). But in *Hauff v. State Univ. of New York*, 425 F. Supp. 3d 116 (E.D.N.Y. 2019), cited by Plaintiffs, actual notice was imputed to the college that employed the alleged harasser. Unlike in *Hauff*, Dr. Fontes was employed by Yale University, not YNHH, and actual notice cannot be imputed to YNHH by a non-YNHH employee. Moreover, actual notice cannot be "automatically" imputed, as Plaintiffs would have the Court believe. Rather, "for the knowledge of a supervisor to be attributed to the employer, that supervisor must be at a sufficiently high level in the hierarchy of the company." *Torres v. New York Univ.*, No. 95-cv-4106 (LLS), 1996 U.S. Dist. LEXIS 9800, *7 (S.D.N.Y. July 12, 1996); *see Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 642 (1999) (declining to hold the defendant liable under Title IX for failing to react to "harassment of which it knew or *should have known*" and seeking "to eliminate any risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions") (emphasis in original). There are no allegations that Dr. Fontes, a *Yale University* employee, was at a sufficiently high level in the hierarchy of *YNHH* to impute actual notice to YNHH.

Moreover, Plaintiffs' argument, that "Yale officials will . . . notify YNHH of . . .

7

complaints" it receives "so that the two entities could determine the proper recourse," is not only unsupported by Plaintiffs with any case law, it is also unavailing. (Opposition at 34). Plaintiffs' pure conjecture that Yale University notifies YNHH of complaints it receives, something that Plaintiffs want "further fleshed out in discovery," is insufficient to show actual notice. *See Doe v. E. Irondequoit Cent. Sch. Dist.*, No. 16-cv-6594 (CJS), 2018 U.S. Dist. LEXIS 76798, *66-67 (W.D.N.Y. 2018) (plaintiffs' "rel[iance] upon the sheer possibility that discovery may eventually provide" evidence of actual notice is "insufficient to defeat a motion under Rule 12(b)(6)").

As YNHH previously discussed, a plaintiff's requirement to show actual knowledge is a high burden, even at the motion to dismiss stage. *See id.* at *64-65 (dismissing Title IX claim, stating: "Title IX liability does not attach simply because [the defendant] should have known about [the misconduct]"; the institution, "at minimum must have possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address *the kind of harassment* upon which plaintiff's legal claim is based") (emphasis in original). Plaintiffs have not alleged *any* actual notice, let alone met their high burden of demonstrating it. The Amended Complaint: does not contain a single allegation that Plaintiff Boules *ever* told anyone that Dr. Fontes had discriminated against her (Am. Compl., ¶¶ 94-109); alleges that Plaintiffs Castro, Eltorai, Jodi-Ann Oliver, and Reinhart complained, at most, about Dr. Fontes' conduct to individuals at Yale University, not YNHH (Am. Compl., ¶¶ 67, 132, 136, 143, 171-72, 196, 201, 203-04, 208); and alleges that Plaintiff Lori-Ann Oliver, at most, casually "mentioned" Dr. Fontes' alleged misconduct one time to someone at Yale University (Am. Compl., ¶ 184). In sum, the Opposition does not fix the insufficiently pled allegations that YNHH had any actual notice of purported misconduct.

### E. Plaintiffs Eltorai and Castro Confirm in the Opposition That They Have Not Alleged Engagement in Any Protected Activity or Any Adverse Employment Action.

Nothing in the Opposition reveals that Plaintiffs Eltorai and Castro have properly pled protected activity or adverse employment action sufficient to sustain their retaliation claims.

Plaintiff Eltorai confirms in the Opposition that she complained in October 2018 and January 2019 about Dr. Fontes' lack of support for her and in August 2019 about his general misconduct. (Opposition at 39-41 (citing Am. Compl., ¶¶ 131-32, 136, 143)). Such complaints simply are not protected activity. *See Drumm v. SUNY Geneseo Coll*, 486 Fed. App'x 912, 914 (2d Cir. 2012) ("general allegations of mistreatment" by a supervisor are not protected activity); *Damarville v. Syracuse City Sch. Dist.*, No. 5:11-cv-1050 (NAM/ATB), 2013 U.S. Dist. LEXIS 34477, *51 (N.D.N.Y. March 13, 2013) (plaintiff's complaints about "how he was treated, and lack of support from [his supervisors]" are not protected activity). Plaintiff Castro reiterates in the Opposition that she anonymously evaluated Dr. Fontes' alleged "touching [of] colleagues," which includes both women and men, and that she complained in August 2019. (Opposition at 42 (citing Am. Compl., ¶¶ 117, 208)). Her actions are not protected activity. *See Wilson v. Lenox Hill Hosp.*, 19-cv-5537 (AMD) (LB), 2019 U.S. Dist. LEXIS 213349, *7 (E.D.N.Y. Dec. 11, 2019) ("an anonymous complaint to a sexual harassment hotline" was not protected activity).

Plaintiffs Eltorai and Castro also do not anywhere sufficiently allege any adverse action. Plaintiff Eltorai concedes that the sole allegations upon which she relies are: lack of support, criticism of her work performance, reassignment, denial of volunteer work, and denial of "some partial" extra shifts (with no identification of amount or monetary value allegedly lost). (Opposition at 39-42 (citing Am. Compl., ¶¶ 131-47, 161-64)). Yet, these allegations are

9

insufficient to demonstrate adverse action. (*See* Memo. at 16-19 and cases cited therein; *see also Green v. Jacobs & Co. Watches*, 248 F. Supp. 3d 458, 468 (S.D.N.Y. 2017) (on a motion to dismiss, finding allegations of "closely scrutinizing performance, wrongly citing [the plaintiff] for unsubstantiated performance deficiencies, issuing [him] verbal and written warnings without cause, [and] making unwarranted criticisms of work performance" did not "plausibly allege more than a mere inconvenience"); *Feliciano v. City of New York*, No. 14-cv-6751 (PAE), 2015 U.S. Dist. LEXIS 92623, *30 (S.D.N.Y. July 15, 2015) (dismissal because alleged denial of overtime, "a minor workplace inconvenience," was not adverse; finding dispositive that "the Amended Complaint is silent as to the amount of value of overtime lost" and "does not indicate whether the lost opportunity was for a few minutes of work, for an hour, or for more"). Plaintiff Castro's Opposition, which confirms that Dr. Fontes hesitated to support her going on a trip that she ultimately went on, is not adverse action. (Opposition at 42-43 (citing Am. Compl., ¶¶ 119-24)); *see Barcher v. New York Univ. Sch.*, 993 F. Supp. 177, 185 (S.D.N.Y. 1997) (dismissing retaliation claim where the plaintiff asserted "speculation that [adverse action] would occur"). Nor is Plaintiff Castro's "uncertain[ty about] whether [she] will receive credit towards her fellowship requirements by going on this trip because Fontes's [actions]" anything more than speculation that an adverse action could occur. (Opposition at 43).[1]

### III.   Conclusion

Based on the foregoing, and as more fully developed in its Memorandum, YNHH submits that the facts and case law confirm that Counts One through Four in Plaintiffs' Amended Complaint have no merit. As such, YNHH respectfully requests that this Court grant its Motion.

---

[1] Citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), Plaintiffs Eltorai and Castro argue they were dissuaded from complaining. (Opposition at 41). But they do not even come close to alleging *how*.

                    DEFENDANT,
                    YALE NEW HAVEN HOSPITAL, INC.

By:    */s/ Sarah R. Skubas*
       Sarah R. Skubas (ct 28327)
       Kasia M. Preneta (Pro Hac Vice #10758)
       Jackson Lewis P.C.
       90 State House Square, 8th Floor
       Hartford, CT  06103
       Tel: (860) 522-0404
       Fax: (860) 247-1330
       sarah.skubas@jacksonlewis.com
       kasia.preneta@jacksonlewis.com

## CERTIFICATION OF SERVICE

I hereby certify that on July 24, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system and by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/ *Kasia M. Preneta*
Kasia M. Preneta