UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
------------------------------------------------------------------- X
MIA CASTRO, M.D., HEIDI BOULES, M.D.,                               :
ASHLEY ELTORAI, M.D., JODI-ANN                                      :
OLIVER, M.D., LORI-ANN OLIVER, M.D. and                             :
ELIZABETH REINHART, M.D.,                                           :   Civil Action No. 3:20-CV-00330 (JBA)
                                                                    :
                                    Plaintiffs,                     :
                    v.                                              :
                                                                    :
                                                                    :
YALE UNIVERSITY, YALE NEW HAVEN                                     :
HOSPITAL, INC., and MANUEL LOPES FONTES,                            :
M.D., in his individual and professional capacities,                :
                                                                    :
                                                                    :
                                    Defendants.                     :
------------------------------------------------------------------- X


# PLAINTIFFS' REPLY TO DEFENDANT YALE UNIVERSITY'S OPPOSITION OF PLAINTIFFS' MOTION TO AMEND

| | |
|---|---|
| **WIGDOR LLP** | **MADSEN, PRESTLEY & PARENTEAU, LLC** |
| Douglas H. Wigdor | |
| Michael J. Willemin | Todd D. Steigman (CT 26875) |
| Parisis G. Filippatos | |
| Tanvir H. Rahman | 402 Asylum Street |
| (All admitted *pro hac vice*) | Hartford, CT 06103 |
| | Tel: (860) 246-2466 |
| 85 Fifth Avenue | Fax: (860) 246-1794 |
| New York, NY 1003 | |
| Telephone: (212) 257-6800 | tsteigman@mppjustice.com |
| Facsimile: (212) 257-6845 | |
| | *Counsel for Plaintiffs* |
| dwigdor@wigdorlaw.com | |
| mwillemin@wigdorlaw.com | |
| pfilippatos@wigdorlaw.com | |
| trahman@wigdorlaw.com | |
| | |
| *Counsel for Plaintiffs* | |


## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. iii

ARGUMENT ..........................................................................................................................1

I.  PLAINTIFF'S CHRO CHARGES WERE FILED ON DECEMBER 6, 2019, AND THUS CHRO WAS AUTHORIZED TO ISSUE RELEASES OF JURISDICTION AS TO PLAINTIFFS' CFEPA CLAIMS AGAINST YALE 180 DAYS AFTER THE CHARGES WERE FILED ..................................................................1

II. PLAINTIFFS' CFEPA CLAIMS ARE TIMELY AND VIABLE .....................................6

CONCLUSION .......................................................................................................................9

# **TABLE OF AUTHORITIES**

**Cases**

Cenac v. Department of Mental Health and Addiction Services,
   No. MMXCV186020531, 2018 WL 4200287 (Conn.Super. Aug. 13, 2018) ............................ 5

Desardouin v. United Parcel Service, Inc.,
   285 F.Supp.2d 153 (D.Conn. 2003) ...................................................................................... 5

Edwards v. William Raveis Real Estate, Inc.,
   No. 08 Civ. 1907 (JCH), 2009 WL 1407233 (D. Conn. May 19, 2018) ................................. 5

Fitzgerald v. Henderson,
   251 F.3d 345 (2d Cir. 2001) .................................................................................................. 5

Fried v. LVI Servs.,
   557 Fed. Appx. 61 (2d Cir. 2014) .......................................................................................... 5

Hudson v. W. N.Y. Bics Div.,
   73 F. App'x 525 (2d Cir. 2003) ............................................................................................. 5

Paris-Purtle v. State,
   No. X10UWYCV146025212, 2015 WL 1500798 (Conn.Super. May 11, 2015) ...................... 5

Peters v. City of Stamford,
   No. 99 Civ. 764 (CFD), 2003 WL 1343265 (D.Conn. Mar. 17, 2003) ..................................... 5

**Other Authorities**

Conn. Gen. Stat. § 46a-54-36a (a-b) ....................................................................................... 2, 3, 4

Conn. Gen. Stat. § 46a-82 ............................................................................................................ 2

Conn. Gen. Stat. § 46a-100 .......................................................................................................... 2

Plaintiffs Mia Castro, M.D., Heidi Boules, M.D, Ashley Eltorai, M.D., Jodi-Ann Oliver, M.D., Lori-Ann Oliver, M.D., and Elizabeth Reinhart, M.D., respectfully submit this reply memorandum of law in further support of their motion to amend (Dkt. Nos. 54-56, the "Motion to Amend") and in response to the opposition to this motion filed by Defendant Yale University ("Yale").  See Dkt. No. 62.  For the reasons stated below, Plaintiffs' Motion to Amend should be granted.

I. **Plaintiffs' CHRO Charges Were Filed on December 6, 2019, and Thus CHRO Was Authorized to Issue Releases of Jurisdiction as to Plaintiffs' CFEPA Claims Against Yale 180 Days After The Charges Were Filed**

Yale largely hangs its futility argument with respect to the proposed Second Amended Complaint on the specious argument that Plaintiffs have not obtained proper subject matter jurisdiction for this Court with respect to their state law claims because the Connecticut Commission on Human Rights and Opportunities ("CHRO"), the governing state agency, was not authorized to issue Releases of Jurisdiction ("ROJs") with respect to Plaintiffs' claims against Yale because either (a) 180 days had not passed since the filing of Plaintiffs' CHRO Charges or (b) CHRO had not completed a case assessment.  However, Plaintiffs' CHRO Charges were filed, as indicated by CHRO on the "Affidavit of Illegal Discriminatory Practice" form in the box entitled "FOR CHRO USE ONLY," on December 6, 2019 (see Exhibit ("Ex.") 1, Plaintiffs' CHRO Charges Against Yale, dated December 6, 2019 by CHRO), and the ROJs were issued on June 11, 2020, which is *188 days* after their December 6, 2019 filing.  See Dkt. No. 56-4, (Plaintiffs' ROJs as to CFEPA Claims Against Yale).  Therefore, CHRO properly issued Plaintiffs' ROJs with respect to their CFEPA claims against Yale, and did so more than 180 days after their CHRO Charges were filed

The relevant statutory language clearly supports this conclusion. "Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities … and who has obtained a release from the commission … may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred." Conn. Gen. Stat. § 46a-100. With regard to what a "complaint" with CHRO entails, the relevant statutory language states merely that "[a]ny person claiming to be aggrieved by an alleged discriminatory practice …may, by himself or herself or by such person's attorney, make, sign and file with [CHRO] a complaint in writing under oath, which shall state *the name and address of the person alleged to have committed the discriminatory practice*, and which shall set forth *the particulars thereof* and contain such other information as may be required by the commission." Conn. Gen. Stat. § 46a-82 (emphases added). In other words, a complaint with the CHRO need not meet exacting standards in order to constitute a proper complaint (or even expressly state that the CFEPA was violated, much less identify any specific CFEPA provisions, as Yale would have it), but need only identify the alleged wrongdoer(s) and contain the "particulars" of the alleged discriminatory conduct.

As to what it means to "file" a complaint with CHRO, the relevant statutory language states that "[a] complaint [with CHRO] may be filed by delivery in person, by United States mail or by document or other delivery service, to an office of the commission," and the "*[t]he date of filing shall be the date the complaint is received by the commission in one of its offices*." Conn. Gen. Stat. § 46a-54-36a (a-b) (emphasis added). Accordingly, a complainant need not even personally or directly file a charge of discrimination with CHRO for the charge to be considered "filed," but the charge must only be "deliver[ed]" to a CHRO "office" to be considered as being "receive[d]." See id. To that end, while a "complainant is responsible for the timely filing of a

2

complaint … once [CHRO] *receives a complaint*, the commission's failure to promptly record the complaint, shall not affect the validity of the complaint or the commission's authority to process the complaint." Id. at (c) (emphasis added).

Notably, the EEOC/CHRO's Worksharing Agreement (see Exhibit B Appended to the Opposition to Plaintiffs' Motion to Amend by Defendant Fontes, Dkt. No. 57-2, at 5-11 (the "Worksharing Agreement")) states that it is "designed to provide individuals with an efficient procedure for obtaining redress for their grievances under appropriate the State of Connecticut and Federal laws." Worksharing Agreement § I(B), Dkt. No. 57-2, at 6.  Accordingly, the Worksharing Agreement confirms that "[i]n order to facilitate the assertion of employment rights, the EEOC and the FEPA[1] each designate the other as its *agent for the purpose of receiving* and drafting *charges*, **including those that are not jurisdictional with the agency that initially receives the charges**." Worksharing Agreement § II(A), Dkt. No. 57-2, at 6 (emphases added).  As such, the expectation -- given the agreement between the EEOC and CHRO to serve as each other's "agent" for purposes of receiving charges of discrimination -- plainly is that a complainant's filing of a charge of discrimination with one agency, notwithstanding whether that agency even has jurisdiction over the alleged claims, serves as "recei[pt]" of the charge of discrimination by the other agency.  See Conn. Gen. Stat. § 46a-54-36a (a-c).

Here, notwithstanding Yale's "assertion" of when Plaintiffs' CHRO Charges should be deemed to have been administratively filed, CHRO itself has clearly regarded the date of filing of Plaintiffs' CHRO Charges to be *December 6, 2019*.  See Ex. 1 (Plaintiffs' CHRO Charges against Yale, dated by CHRO as having been filed on December 6, 2019).  The attendant facts support the conclusion that December 6, 2019, is indeed the date on which Plaintiffs' CHRO Charges were filed.  First, Plaintiffs filed Charges of Discrimination with the EEOC on

---

[1] The Worksharing Agreement refers to CHRO as "FEPA."

December 4 and 5, 2019, respectively, which identified Yale as a respondent, set forth "particulars" about Yale's alleged "discriminatory practice[s]," expressly stated that each Charge of Discrimination was being filed with the "Connecticut Commission on Human Rights *and* EEOC" on the "Charge of Discrimination" form, and were each specifically signed below where the "Charge of Discrimination" form stated, "I want this charge filed with the EEOC *and the State FEPA*," indicating a clear intent for their claims to be filed with both the EEOC and CHRO (see Dkt. No. 56-1) (Plaintiffs' EEOC Charges) (emphasis added).[2] Second, pursuant to the Worksharing Agreement, the EEOC is the CHRO's agent "for [] purpose[s] of receiving [] charges, including those that are not jurisdictional with the agency that initially received the charges." Worksharing Agreement § II(A), Dkt. No. 57-2, at 6.

In short, December 6, 2019, is the date, per CHRO itself, that Plaintiffs' CHRO Charges were filed with CHRO, which is plainly when it appears CHRO actually received Plaintiffs' complaints. Thus, it is respectfully submitted that for the purposes of this motion, December 6, 2019, is the operative date that should be considered when determining whether Plaintiffs' CFEPA claims against Defendants are timely. It is irrelevant that CHRO later requested that Plaintiffs submit CHRO-specific forms to supplement their previously filed charges so that CHRO could serve the charges on Defendants because CHRO ultimately acknowledged that Plaintiffs' charges were filed with CHRO at the same time they were filed with the EEOC by dating them as having been filed on ***December 6, 2019***. AC ¶ 15. It is likewise irrelevant with

---

[2] There is no dispute that Yale was served with Plaintiffs' EEOC Charges, which clearly reference that Plaintiffs' claims of unlawful employment discrimination and retaliation are to be filed with CHRO, as Yale submitted a position statement in response to these EEOC Charges on January 27, 2020. See Amended Complaint ("AC"), Dkt. No. 44, at ¶ 14. As such, it is disingenuous for Yale to claim to not have "notice" of Plaintiffs' CFEPA claims against it until May 2020. Ultimately, however, it is irrelevant when Yale may have received notice of Plaintiffs' CHRO Charges since the operative question is *when* Plaintiffs filed their CHRO Charges for purposes of determining the timeliness of Plaintiffs' CFEPA claims. See Conn. Gen. Stat. § 46a-54-36a (c) (while a "complainant is responsible for the timely filing of a complaint … once [CHRO] receives a complaint, the commission's failure to promptly record the complaint, shall not affect the validity of the complaint or the commission's authority to process the complaint.").

4

respect to when Plaintiffs' CHRO Charges were filed that CHRO may not have served Yale with Plaintiffs' CHRO Charges until May 2020. See Conn. Gen. Stat. § 46a-54-36a (c) (while a "complainant is responsible for the timely filing of a complaint," "once [CHRO] receives a complaint, ***the commission's failure to promptly record the complaint, shall not affect the validity of the complaint or the commission's authority to process the complaint.***") (emphasis added). Therefore, Plaintiffs' CHRO Charges are unquestionably timely,[3] and this Court will have jurisdiction to hear Plaintiffs' CFEPA claims against Yale, which both relate to events that occurred either within the 180 days preceding December 6, 2019, or prior to that period but that are part and parcel to Plaintiffs' claims pursuant to the "continuing violation doctrine." See Hudson v. W. N.Y. Bics Div., 73 F. App'x 525, 528 (2d Cir. 2003) (continuing violation doctrine applies when a plaintiff experiences a "'continuous practice and policy of discrimination" and as a result, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'") (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001)); accord Peters v. City of Stamford, No. 99 Civ. 764 (CFD), 2003 WL 1343265, at *11 (D.Conn. Mar. 17, 2003) (applying continuing violation theory grounded in federal law to CFEPA claims).[4]

---

[3] The cases Yale cites in support of its position that this Court will not have jurisdiction over Plaintiffs' CFEPA claims are all inapposite and do not concern facts analogous to those at hand which conclusively establish that CHRO has deemed Plaintiffs' CHRO Charges to have been filed on December 6, 2019. See Edwards v. William Raveis Real Estate, Inc., No. 08 Civ. 1907 (JCH), 2009 WL 1407233 (D. Conn. May 19, 2018) (plaintiff (unlike here) never filed complaint with CHRO); Fried v. LVI Servs., 557 Fed. Appx. 61, 63 (2d Cir. 2014) (unpublished summary order; plaintiff filed CHRO charge *after* having already filed EEOC charge and asserting ADEA claims, which require EEOC administrative exhaustion, in *prior* litigation against same defendant); Paris-Purtle v. State, No. X10UWYCV146025212, 2015 WL 1500798 (Conn.Super. May 11, 2015) (CHRO had no record of ever receiving plaintiff's EEOC complaint (unlike here), and no assertion made or evidence presented (unlike here) that CHRO regarded charge with CHRO to have been filed at same time as EEOC complaint); Cenac v. Department of Mental Health and Addiction Services, No. MMXCV186020531, 2018 WL 4200287 (Conn.Super. Aug. 13, 2018) (no claim by plaintiff that he filed CHRO complaint at any time (unlike here)); Desardouin v. United Parcel Service, Inc., 285 F.Supp.2d 153, 159 n.7 (D.Conn. 2003) (plaintiff failed to allege in complaint CHRO's release to sue (unlike here); nonetheless, court dismissed CFEPA discrimination claim without prejudice and granted plaintiff leave to re-plead).

[4] Unpublished decisions cited to herein are attached as Ex. 2.

5

## II.     Plaintiffs' CFEPA Claims Are Timely and Viable

Each Plaintiff indeed has timely and viable sexual harassment, retaliation (as to Plaintiffs Castro and Eltorai), and pregnancy discrimination (as to Plaintiff Eltorai) claims under CFEPA against Yale, as each has pled sufficient facts to plausibly allege that: (i) they are employees of Yale; (ii) they were subjected to sexual harassment, discrimination, and/or unlawful retaliation;[5] and (iii) the actionable conduct took place both within the 180-day period ending on December 6, 2019 (*i.e.*, between June 9, 2019, and December 6, 2019), as well as a series of similar acts that took place before that time, which together form one unlawful employment practice and thus may be considered as one claim under the "continuing violation doctrine." To wit:

1. Plaintiff Reinhart has alleged, *inter alia*, that: during a May 2019 dinner, Fontes flirted profusely with her, including by commenting on her appearance, tried to persuade her to drink more alcohol and, at the end of the dinner, tried to kiss her on the lips but she was able to move her head so that his lips landed on her cheek and side of her mouth. As she tried to escape him, Fontes chased her down on the street and tried to get her to come into his car; (ii) in June 2019, at a resident graduation ceremony, Fontes came up to her and asked whether she was "going out tonight," and referenced how he had "misbehaved in the past" at a graduation event, alluding to an incident in 2016 where a video surfaced of him sexually assaulting an inebriated female resident as the two danced at a graduation event. He later came up behind Reinhart again, wrapped his arm around and hugged her by the waist, and said lewdly, "I can't wait to see you at Barcelona," referring to the location where the graduation ceremony afterparty would be, while ogling her body up and down. Reinhart was so terrified and shaken up by Fontes's behavior that she stayed at a female attending physician's home that night rather than go back to her apartment for fear that she might encounter Fontes later that night; (iii) in July 2019, while she was in a breakroom, Fontes suddenly came up behind her and unwantedly massaged her back and shoulders; (iv) after she made multiple complaints about his sexually harassing conduct in late-July and early-August 2019, the Department of Anesthesiology appointed Fontes to be its inaugural Vice Chair of Diversity, Equity and Inclusion; and (v) in October 2019, during a conference in Florida, Fontes came up to her as she was standing outside her hotel, grabbed her arm, linked his arms with hers, pulled her towards him and asked her, in an intimidating manner, "so where is your partner in crime?" When Reinhart asked him to whom he was referring, Fontes

---

[5]     Plaintiffs have already thoroughly responded to and refuted Yale's contention that they have failed to plead viable employment discrimination and retaliation claims in their omnibus opposition to Defendants' motions to dismiss, and expressly incorporate their arguments herein. See Dkt. No. 61, at 27-43 (or Sections II(E)-(H) of Plaintiffs' Memorandum of Law, at 15-31).

identified Plaintiff Eltorai, who too had recently lodged sexual harassment complaints against him (AC ¶¶ 190-211);

2. Plaintiff Boules has alleged, *inter alia*, that: (i) during her own late-2017 interview dinner, Fontes sat and spoke uncomfortably close to her; (ii) in mid-2018, Fontes cornered her in a restaurant booth and repeatedly and unwantedly touched and groped her arm, leg and thigh, and, later that night, she observed him harass Plaintiff Jodi-Ann Oliver as he sat next to her at dinner and unwantedly touched her; (iii) Fontes has made repeated attempts to entice her into having drinks with her outside of work; (iv) in mid to late-2018, when they were out together with another colleague, Fontes made repeated overtly sexist, sexual and inappropriate comments to her; (v) in October 2018, Fontes convinced her to meet him out alone at a restaurant, and forcibly and unwantedly kissed her on the lips three or four times that evening, and unwantedly touched her body in a sexual manner; (vi) days later, Fontes forcibly and unwantedly kissed her on the lips following a staff meeting; (vii) since then, Fontes has continuously unwantedly touched and hugged her nearly every time he has seen her, including a July 2019 incident during which he unwantedly hugged her, and an incident in mid-September 2019 during which he snuck up behind her as she was working in an operating room and grabbed both her shoulders, leaned the front of his body into her backside, put his cheek on her cheek, whispered into her ear, and asked her out for drinks; and (viii) Fontes took no action after she complained to him in May and July 2019 about a male surgeon who was harassing her, including by calling her a "bitch" and "cunt" (id. at ¶¶ 98-107, 178);

3. Plaintiff Castro has alleged, *inter alia*, that: (i) beginning in August 2018 and continuing into the fall of 2018, Fontes repeatedly came behind her while she worked in large operating rooms, stood inappropriately and unnecessarily close to her, and put his arms on and/or around her shoulders and waist; (ii) in mid-August 2018, while the two worked together in an operating room, he made repeated crude jokes to her about being an "old man" from whom she could "learn something," unwantedly placed his hand on her shoulder, and suddenly came behind her and put his arm around her waist and stood extremely and unnecessarily close to her; (iii) after she resisted his advances, Fontes berated and demeaned her when they worked together, including an incident where he yelled at and commanded her to degradingly pick up a syringe cap that had fallen on the floor rather than tend to an ailing patient; (iv) in July and August 2019, Fontes, who was the director of her fellowship, retaliated against Castro at the first meaningful opportunity he was presented with by refusing to grant her permission to go on a mission trip to Peru, on the contrived and false basis that such a trip would prevent her from fulfilling her fellowship requirements; and (vii) even after Fontes was later told that the American Board of Anesthesiology would approve and accredit such a trip, in late-August 2019, Fontes again inexplicably refused to permit Plaintiff Castro to go on this trip unless she used her own vacation time.  Notably, this last refusal by Fontes came right after Castro lodged complaints against him with various Yale officials (id. at ¶¶ 111-24, 208);

4. Plaintiff Eltorai has alleged, *inter alia*, that: (i) when she told Fontes she was pregnant in September 2018, he remarked about her body by saying, "I wonder when you'll start to show – probably very soon, since you have a flat stomach"; (ii) shortly after complaining to the Anesthesiology Department's Chair Dr. Roberta Hines that Fontes discriminated against her based on her pregnancy by refusing to support a research project because of her upcoming maternity leave, in January 2019, Fontes advised Eltorai that she would be unable to meet her unit requirements, and thus unable to receive her full salary, because of her upcoming maternity leave, which Dr. Eltorai regarded as discriminatory; (iii) one week after Eltorai filed a pregnancy discrimination complaint with the Yale University Faculty Affairs Department, Fontes and two of his reports met with her to unfairly criticize her performance; (iv) in June 2019, weeks after she gave birth, Fontes slowly ogled her body up and down and said, "Oh wow you look good" and gave her a long, unwelcomed hug; (v) later that evening, Fontes tried to spoon feed Eltorai food from across the table as she held hew newborn son; (vi) also that night, after noticing that she was no longer wearing her wedding ring, Fontes asked her out to have "a bottle of wine" so he could "tell" her his "wisdom about life and divorce"; (vii) in July 2019, while the two were in his office, Fontes got up from his desk, sat uncomfortably close to her, and when the meeting ended, gave her an uninvited full body hug in which he pressed his pelvis against hers; (viii) later in July 2019, Fontes snuck up behind her while she was in a breakroom and began to massage her neck unwantedly; (ix) in August 2019, while she was working in the hospital, Fontes came up to her, stood uncomfortably close, and unwantedly touched her shoulder while speaking with her in a flirtatious manner in front of a patient's family; and (x) a few weeks week after complaining about Fontes's sexually harassing behavior and other misconduct, in mid-August 2019, Fontes along with Dr. Hines and two other colleagues, banned Eltorai from continuing to work in the Intensive Care Unit ("ICU") (id. at ¶¶ 127-160);

5. Plaintiff Lori-Ann Oliver has alleged, *inter alia*, that: (i) throughout her employment, Fontes has repeatedly, nearly every time they have run into each other, come up behind her and inappropriately and unwantedly hug and touch her body, including by grabbing her shoulders, lower back and waist, pull her towards him, and put his face close to hers, violating her personal space; (ii) in April 2019, after witnessing Fontes sexually harass her sister, Plaintiff Jodi-Ann Oliver, during a dinner for a potential new physician hire, including by giving her sister an unwanted kiss on the lip, Fontes then turned around and grabbed her by the arms, pulled her towards him, forced his tongue down her mouth and kissed her on the lips; (iii) throughout her employment, multiple times a year, Fontes would make inappropriate sexual comments, including about how "skinny" she looked and how "nice" her "shape" was; (iv) in the fall of 2018, Fontes unwantedly grabbed her around the waist, which prompted her to complain that Fontes inappropriately touched her and other female employees to the Division Chief of the Pain Management section of the Department of Anesthesiology; and (v) even after the April 2019 incident in which Fontes unwantedly groped and kissed her, Fontes continued to inappropriately touch and grab her nearly every time he encountered her, including an incident in October 2019 when the two were both at a conference in Florida and Fontes came up to her, unwantedly squeezed her by the

8

    shoulders, and put his hand on her back and around her waist (id. at ¶¶ 168, 183-186); and

6. Plaintiff Jodi-Ann Oliver has alleged, *inter alia*, that: (i) throughout her employment, which began in 2012 and continues to the present, Fontes has repeatedly come up behind her and inappropriately and unwantedly touched her bodies, including her back and shoulders; (ii) during a 2016 work retreat, Fontes continually touched her lower back, slipped his hand down her backside, and unwantedly and inappropriately hugged her; (iii) in 2017, after she injured her wrist and requested workplace accommodations, Fontes called her a "malingerer," told her to "shut up" and to "shut the fuck up," and that he would "fire [her] if [she] ke[pt] talking"; (iv) in late-2017, Fontes tried to have her kicked off a fellowship committee and accused her of being a "malingerer"; (v) in mid-2018, at a colleague's going away dinner, she observed Fontes inappropriately touch Plaintiff Boules's body; (vi) later that night, Fontes sat next to her during dinner and repeatedly and unwantedly rubbed her arm and back, and whispered sexual advances in her ear and made comments about her figure and health such as, "that's why you stay so thin," and referred to her as his "island girl"; and (vii) in April 2019, during a dinner with a potential new physician hire, Fontes continuously flirted with her throughout the evening, repeatedly leaned in towards her and commented on her "nice skin," "soft skin," "great figure," how she smelled "really nice," was "very thin," was a "pretty Caribbean girl," and asked her "do you work out?", unwantedly rubbed her arms, neck, back and shoulders, and at the end of the night, tried to get her to go home with him, and then gave her an unsolicited kiss on the lips while hugging her and putting his hands all over her body (id. at ¶¶ 168-182).

Accordingly, Plaintiffs' anticipated CFEPA claims against Yale are not time-barred given that their CHRO Charges were filed on December 6, 2019, and are supported by factual allegations sufficient to render the claims plausible for purposes of the pleading stage.

**CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully request that their Motion to Amend be granted in its entirety and the Court afford Plaintiffs such other and further relief as it deems appropriate.

Dated: July 27, 2020
       New York, New York

Respectfully submitted,

**MADSEN, PRESTLEY & PARENTEAU, LLC**

Todd D. Steigman (CT 26875)

402 Asylum Street
Hartford, CT 06103
Tel: (860) 246-2466
Fax: (860) 246-1794
tsteigman@mppjustice.com

**WIGDOR LLP**

By: _/s/ Tanvir H. Rahman_

Douglas H. Wigdor
(admitted *pro hac vice*)
Michael J. Willemin
(admitted *pro hac vice*)
Parisis G. Filippatos
(admitted *pro hac vice*)
Tanvir H. Rahman
(admitted *pro hac vice*)

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
pfilippatos@wigdorlaw.com
trahman@wigdorlaw.com
*Counsel for Plaintiffs*