# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| **HEIDI BOULES, M.D., MIA CASTRO, M.D., ASHLEY ELTORAI, M.D., JODI-ANN OLIVER, M.D., LORI-ANN OLIVER, M.D., and ELIZABETH REINHART, M.D.,** | : : : : : |
| **Plaintiffs,** | : : |
| v. | **CIVIL ACTION NO.** : : **3:20-CV-00330-JBA** |
| **YALE UNIVERSITY, YALE NEW HAVEN HOSPITAL, INC., and MANUEL LOPES FONTES, M.D., in his individual and professional capacities,** | : : : : : |
| **Defendants.** | : : |

## DEFENDANT MANUEL LOPES FONTES'S MOTION TO OPEN DEFAULT AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COMES NOW Defendant Manual Lopes Fontes, M.D., in his individual and professional capacities ("Fontes"), by and through his undersigned counsel of record, and files this his Motion to Open Default and Memorandum of Law in Support Thereof (the "Motion"), respectfully showing this honorable Court as follows:

## I.    INTRODUCTION.

Fontes's response to Plaintiffs' Second Amended Complaint was due on March 8, 2021. However, Fontes, who was appearing *pro se*, had no understanding of that deadline or its implications. Having now retained counsel, Fontes moves the Court to set aside his default and allow him to defend against Plaintiffs' allegations on the merits. As Fontes shows herein, his default was not willful or deliberate, he has a meritorious defense to Plaintiffs' allegations, and allowing Fontes to defend himself against Plaintiffs' claims will cause little or no prejudice to Plaintiffs. Further, because Fontes was *pro se* at the time of his default, the Second Circuit has

mandated that he is entitled to extra leeway and should be permitted to open his default. No default has been sought against Fontes, and none has been entered. Thus, Fontes prays that this Court will set aside his default pursuant to Federal Rule of Civil Procedure 55(c).

## II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY.

On March 12, 2020, Plaintiffs filed their original Complaint against Fontes, as well as Yale University and Yale New Haven Hospital, Inc. ("YNNH"). [Doc. 1.] Plaintiffs, "all female doctors in the Yale Department of Anesthesiology and involved with the residency program of YNNH, allege[d] that Dr. Fontes, their [alleged] supervisor at YNNH and Yale [University], sexually harassed them…" [Doc. 104 at 2.] Plaintiffs further alleged that the Yale Defendants "turned a blind eye to Fontes's actions by allowing him to harass his female subordinates…and perpetuated a hostile environment…" [*Id.*] As a result of Plaintiffs' original Complaint [Doc. 1], Amended Complaint filed on May 29, 2020 [Doc. 44], Second Amended Complaint filed on January 4, 2021 [Doc. 102], and this Court's February 9, 2021 Order Denying in Part and Granting in Part Defendants' Motions to Dismiss (the "MTD Order") [Doc. 104], the following claims now remain pending against Fontes:

- Count 6: retaliation against Plaintiff Eltorai under the Connecticut Fair Employment Practices Act ("CFEPA") (asserted against all named defendants);

- Count 7: aiding and abetting "unlawful employment practices, discrimination and unlawful retaliation against Plaintiffs in violation of the CFEPA by actively participating in the unlawful conduct set forth [in the Second Amended Complaint]" [Doc. 102 at ¶ 259];

- Count 8: assault as to all Plaintiffs;

- Count 9: battery as to all Plaintiffs; and

- Count 10: invasion of privacy as to all Plaintiffs.

Fontes first appeared in this case on March 13, 2020, with his prior counsel's entry of appearance. [Docs. 8-9; *see also* Docs. 20, 33.] Fontes defended this action through prior counsel via submission of the following: (1) Defendant Manual Lopes Fontes, M.D.'s Motion for Telephonic Pre-Filing Conference [Doc. 27], which was granted [Doc. 28]; (2) a filed April 28, 2020 letter from Fontes's prior counsel [Doc. 34]; (3) Defendant Manuel Fontes, M.D.'s Motion to Stay Discovery Pending Ruling on Motion to Dismiss [Doc. 35]; (4) Fontes's prior counsel's participation in the May 13, 2020 Telephonic Pre-Filing Conference [Doc. 49]; (5) Defendant Manuel Lopes Fontes, M.D.'s Motion to Dismiss[1] [Doc. 50] and supporting reply [Doc. 69]; (6) Defendant Manuel Lopes Fontes, M.D.'s Memorandum in Opposition to Plaintiffs' Motion to Amend [Doc. 57]; and (7) two motions to extend the time to respond to Plaintiffs' discovery requests [Docs. 77, 84].

On October 1, 2020, before Plaintiffs filed the Second Amended Complaint, Fontes's prior counsel moved to withdraw. [Docs. 79-81.] That motion was granted, and Fontes was given until December 24, 2020 "to have substitute counsel file an appearance on [his] behalf or to file [his] *pro se* appearance." [Doc. 96.] Fontes attempted to comply with this Court's directive by filing his Notice of Appearance *pro se* on December 24, 2020; the notice was not filed until December 29, 2020 due to closures of the courthouse and post office. [Docs. 98, 99 at 1, 5.] With his Notice of Appearance, Fontes advised the Court that he was still seeking new counsel because, *inter alia*, he was abroad for two months seeking non-traditional therapies for a major health problem, returning on December 12, 2020; many firms in the area had conflicts of interest with the Yale Defendants being named as co-defendants; and he had financial difficulties. [Doc. 99 at 2.] As

---

[1] The Yale Defendants also filed motions to dismiss. [Docs. 51-53.] In the MTD Order, this Court analyzed the Yale Defendants' dismissal arguments in detail, but did not do so as to Fontes's arguments. [Doc. 104.]

such, Fontes requested an additional two months to secure representation and advised that he was "taking this matter seriously." [*Id.*]

The Second Amended Complaint was filed on January 4, 2021, but did not include a certificate of service reflecting whether, when, or how it was served on Fontes. [Doc. 102.] Fontes was not aware of the existence or filing of the Second Amended Complaint until late February, 2021. (*See* Affidavit of Manuel Lopes Fontes, M.D., In Support of His Motion to Open Default (the "Affidavit"), attached hereto and incorporated herein as **Exhibit A**, ¶ 22.) All Defendants were granted an extension until March 8, 2021 to respond to the Second Amended Complaint. [Docs. 106, 110-111.] Thereafter, Fontes, proceeding *pro se*, partially participated in the Joint 26(f) telephone conference held on February 17, 2021, and also provided comments to a draft Joint 26(f) Report of Parties' Planning Meeting (the "26(f) Report").[2] [Doc. 109 at 1-4.] The 26(f) Report was approved by this Court via its March 16, 2021 Scheduling Order. [Doc. 116.] However, Fontes still was not aware that he had to respond to the Second Amended Complaint and did not understand the deadline for doing so and the legal implications and consequences of failing to timely do so. (*See* Ex. B, Aff., ¶¶ 23-24.)

On March 25, 2021, Fontes secured local counsel. (*See* Ex. B, Aff., ¶ 19.) Also on March 25, 2021, Fontes retained the law firm of Smith & Liss, LLC located in Atlanta, Georgia as lead counsel representing him in this matter, and two partners within the firm submit contemporaneously herewith their motions for admission *pro hac vice*. (*See* Ex. B, Aff., ¶¶ 20-21.) It was not until hiring new counsel that Fontes became aware of and understood the deadline for

---

[2] The 26(f) Report provided that Defendants had until March 8, 2021 to file a response to the Second Amended Complaint, and a late filing would require "a showing of good cause for the delay." [Doc. 109 at 6.] As of the date of this Motion, YNNH has filed an answer [Doc. 115], but not Yale University.

{00593850. }                                    4

responding to the Second Amended Complaint and the necessity and legal consequences of failing to do so. (*See* Ex. B, Aff., ¶¶ 24-25.)

Upon learning of Fontes's default in this matter, his new counsel has acted as expeditiously as possible to prepare and file the instant Motion seeking to open default, and further, prepared a proposed Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint (the "Answer"), attached hereto and incorporated herein as **Exhibit B**. Fontes also submits contemporaneously herewith his Affidavit demonstrating good cause for opening default. (*See generally* Ex. B, Aff.) Fontes, through his newly retained counsel, is prepared to proceed as expeditiously as possible to reach the merits of this case, and as such, requests that the Court set aside his default and allow him to proceed in defending against the merits of Plaintiffs' allegations and claims. (*See* Ex. B, Aff., ¶¶ 24-25.)

### III.   ARGUMENT AND CITATION OF AUTHORITIES.

#### A.   The Law Governing Motions to Open Default.

**1.   The Law of this Court Favors a Ruling on the Merits, Rather than Default Judgment, Particularly Where a Defendant was *Pro Se* at the Time of Default.**

This Court "may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed.R.Civ.P. 55(c); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d. Cir. 1993) ("After default or a default judgment has been entered, Rule 55(c) grants a litigant the right to petition to set either aside"). Setting aside default is left to the discretion of the Court, but that discretion is "not unlimited." *Enron Oil Corp.*, 10 F.3d at 95 (reversing entry of default judgment against *pro se* defendant). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96; *see, e.g., Galen Inst., LLC v. COMTA*, No. 3:02cv1232PCD, 2004 U.S. Dist.

LEXIS 2843, *8-10 (D. Conn. Feb. 25, 2004) (granting motion to open default despite defendants' "continuous delinquency and failure to monitor their case" because default judgment is "such a harsh penalty" and "deprives [defendants] of their opportunity to contest [p]laintiffs' allegations"). The law is generous towards defaulting parties because "general principles cannot justify denial of a party's fair day in court except upon a serious showing of **willful** default." *Gill v. Stolow*, 240 F.2d 669, 670 (2d. Cir. 1957) (emphasis added).  In other words, default judgment is an "extreme sanction…to be treated as a weapon of last, rather than first, resort."    *W. Sur. Co. v. Leo Constr., LLC*, No. 3:12cv1190CSH, 2013 U.S. Dist. LEXIS 4904, *19 (D. Conn. Jan. 11, 2013) (citation and quotations omitted).

This is particularly true when a defaulting defendant is *pro se* at the time of default.  As the Second Circuit has mandated, "concerns regarding the protection of a litigant's rights are heightened when the party held in default appears *pro se*.  A party appearing without counsel is afforded extra leeway in meeting the procedural rules governing litigation, and trial judges must make some effort to protect a party so appearing from waiving a right to be heard because of his or her lack of legal knowledge." *Enron Oil Corp.*, 10 F.3d at 96; *see also Emigrant Mort. Co. v. Matava*, No. 3:16cv429SRU, 2018 U.S. Dist. LEXIS 210195, *5 (D. Conn. Dec. 13, 2018) (granting *pro se* defendant's motion to open default).   The *Enron Oil* Court clearly stated, "as a general rule a district court should grant a default judgment sparingly and **grant leave to set aside the entry of default freely when the defaulting party is appearing** *pro se*." *Enron Oil Corp.*, 10 F.3d at 96 (emphasis added).

**2.      The Factors to Consider in Ruling on a Rule 55(c) Motion.**

      **a.      *Lack of Willfulness*.**

In analyzing whether "good cause" exists under Rule 55(c), factors to consider include: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp.*, 10 F.3d at 96. "Willfulness" means "bad faith, or at least something more than mere negligence." *W. Sur. Co.*, 2013 U.S. Dist. LEXIS 4904, *21 (citation and quotations omitted) (granting motion to open default where "evidence presented indicates no bad faith, egregious behavior or deliberate default by [defendants]"). A lack of "deliberate intent to default" negates a finding of willfulness. *See W. Sur. Co.*, 2013 U.S. Dist. LEXIS 4904, *24. Similarly, where a defendant has appeared and defended the action against him, default is not willful. *See Enron Oil Corp.*, 10 F.3d at 97.

      **b.      *Presentation of a Meritorious Defense.***

In presenting a "meritorious defense," "[t]he test of such a defense is measured **not** by whether there is a likelihood that it will carry the day, but **whether the evidence submitted, if proven at trial, would constitute a complete defense**." *Enron Oil Corp.*, 10 F.3d at 98 (emphasis added). "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *W. Sur. Co.*, 2013 U.S. Dist. LEXIS 4904, *26 (citation and quotations omitted).

      **c.      *Prejudice to Plaintiffs.***

Finally, in examining prejudice to the plaintiff, "delay standing alone does not establish prejudice." *Enron Oil Corp.*, 10 F.3d at 98. Where an action is still in its preliminary stages and a defaulting party asserts it "will cooperate swiftly to reach the merits of the matter," there is minimal prejudice to the plaintiff. *W. Sur. Co.*, 2013 U.S. Dist. LEXIS 4904, *29 (quotations

omitted). "The Second Circuit has analyzed prejudice with respect to whether the untimely filing would require the opposing party to make additional expenditures to conduct discovery and to prepare for trial. In the absence of resulting increased litigation costs to, or reduced likelihood of success by, the opposing party, prejudice has been deemed 'minimal.'" *United States v. Cohan*, No. 3:11cv412CSH, 2012 U.S. Dist. LEXIS 144603, *5 (D. Conn. Oct. 5, 2012) (citing *Brown v. Gen. Nutrition Cos., Inc.*, 356 F.App'x 482, 487 (2d. Cir. 2009)) (accepting *pro se* litigant's late filing).

### d. *Other Equitable Factors.*

In addition to the three above-discussed primary factors, when ruling upon a Rule 55(c) motion, other factors to consider include equitable factors, such as "whether the failure to follow a rule of procedure was a mistake made in good faith, and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96. Together, these factors "should be construed generally as a reflection of the Second Circuit's oft-stated preference for resolving disputes on the merits." *W. Sur. Co.*, 2013 U.S. Dist. LEXIS 4904, *20 (citations, quotations, and alterations omitted).

### B. Dr. Fontes Satisfies the Requirements for Opening Default.

As of the date of this Motion, no default has been entered against Fontes. Nonetheless, Fontes, now represented by new counsel, seeks an Order from the Court setting aside his failure to timely respond to the Second Amended Complaint, and has satisfied the requirements for doing so.

### 1. Dr. Fontes's Default While he was *Pro Se* Was Not Willful.

Fontes's default or delay in timely responding to the Second Amended Complaint was not willful. He was *pro se* at the time (and indeed, had been since December 3, 2020). [Doc. 96.] He

was not even aware of the existence or filing of the Second Amended Complaint until late February, 2021, and even then, did not know the deadline to respond to the necessity of doing so. (*See* Ex. B, Aff., ¶¶ 22, 24-25.)_ **It was not until Fontes retained his new, undersigned counsel on March 25, 2021 that he was fully informed and understood that he was required to respond to the Second Amended Complaint and to do so by March 8, 2021, as well as the legal consequences of failing to do so.** (*See* Ex. B, Aff., ¶¶ 23-25.) Thus, his untimeliness was not intentional or deliberate, but the result of his *pro se* status and resulting lack of knowledge, understanding, and familiarity regarding legal proceedings. *See Enron Oil Corp.*, 10 F.3d at 97; *W. Sur. Co.*, 2013 U.S. Dist. LEXIS 4904, *21, 24.

Fontes's lack of willfulness is further demonstrated by the facts that: (1) he has actively defended against this action since his prior counsel first appeared in this case on March 13, 2020 (one day after the original Complaint was filed) [Docs. 8-9, 20- 27-28, 33-35, 49, 50, 69, 57, 77, 84]; (2) even while he was proceeding *pro se*, he actively participated in the case and defended against Plaintiffs' allegations [Docs. 98-99, 109]; and (3) he diligently attempted to retain new counsel after his prior counsel withdrew from representation [Doc. 99] (*see* Ex. B, ¶ 7). Fontes's filings in this case, together with his Affidavit, demonstrate that he lacked any bad faith and acted with no egregious behavior in failing to respond to the Second Amended Complaint by March 8, 2021, despite his best efforts to represent himself. *See W. Sur. Co.*, 2013 U.S. Dist. LEXIS 4904, *21. Similar to the defaulting defendant in *Emigrant Mortgage Company, Inc.*, Fontes's health, financial status, physical disability, and nature of the identity of his co-defendants (the Yale Defendants and resulting conflicts of interest) made it difficult for him to understand and comply with the Court's procedures. *See Emigrant Mortg. Co.*, 2018 U.S. Dist. 210195, *6; (*see also* Ex. B, Aff., ¶¶ 8-17, 22-25). As such, Fontes requests that the Court grant him the "extra leeway"

mandated by the Second Circuit, set aside his default, and allow him to proceed with the merits of defending himself against Plaintiffs' allegations. *See Enron Oil Corp.*, 10 F.3d at 96.

### 2. Dr. Fontes has a Meritorious Defense.

Fontes has a meritorious defense against all of the claims alleged against him in the Second Amended Complaint. First and foremost, Fontes denies that he sexually harassed, behaved inappropriately towards, discriminated against, or retaliated against Plaintiffs. (*See* Ex. B, ¶ 28; *see also* Ex. A, Answer.)

As to Plaintiffs' CFEPA claims against Fontes (Counts 6 and 7), first, those claims fail as a matter of law. The Commission on Human Rights and Opportunities ("CHRO") charges against Fontes filed by Plaintiffs Boles, Castro, Eltorai, and Jodi-Ann Oliver all are time barred, and Plaintiffs failed to exhaust their administrative remedies as to those claims against Fontes. *Anderson v. Derby Brd. of Education*, 718 F.Supp.2d 258, 273 (D. Conn. 2010); *see also* Conn. Gen. Stat. § 46a-82(f). Further, the CHRO charges alleging a violation of Conn. Gen. Stat. § 46a-60(b)(1)-(8) fail to state a claim against Fontes because there is no individual supervisor liability under those statutes. *See Perodeau v. City of Hartford*, 259 Conn. 729, 744 (2002); *Miner v. Town of Cheshire*, 126 F.Supp.2d 184, 203-04 (D. Conn. 2000). Additionally, Fontes cannot be liable for a claim of aiding and abetting because the claims against Fontes involve allegations that he, himself, sexually harassed Plaintiffs, and a sole alleged harasser cannot be held to have aided and abetted himself. *See Bolick v. Alea Group Holdings, Ltd.*, 278 F.Supp.2d 278, 282 (D. Conn. 2003).

Each of Plaintiffs' three tort claims against Fontes – assault, battery, and invasion of privacy by intruding upon the seclusion of Plaintiffs – requires a showing of intent. *See Pal v. Cipolla*, No. 3:18cv616MPS, 2020 U.S. Dist. LEXIS 218798, *54 (D. Conn. 2020) ("'assault'

occurs when one **intentionally** places another in apprehension of bodily harm; and 'battery' occurs when one **intentionally** causes harmful or offensive contact with another" (emphasis added)); *Radesky v. First Am. Title Ins. Co.*, No. 3:02cv1304JBA, 2003 U.S. Dist. LEXIS 15969, *11 (D. Conn. 2003) ("invasion of privacy in the form of intrusion upon seclusion is an *intentional* tort" (emphasis added)). Fontes specifically attests that he "had no intent to cause or have harmful or offensive contact with Plaintiffs or to intrude upon the solitude or seclusion of Plaintiffs." (*See* Ex. A, ¶ 28.) Fontes's denials that he committed assault, battery, or invasion of privacy, and that he had any intent to do so, provide a complete defense against Plaintiffs' state law claims, and as such, Fontes has a meritorious defense. *See Enron Oil Corp.*, 10 F.3d at 98; *W. Sur. Co.*, 2013 U.S. Dist. LEXIS 4904, *26.

### 3. Setting Aside Dr. Fontes's Default Will Not Prejudice Plaintiffs, or Will Cause Only Minimal Prejudice.

Finally, **if** any prejudice is caused to Plaintiffs by setting aside Fontes's default, that prejudice will be minimal. This Motion and Fontes's proposed responsive pleading are filed less than 30 days from the original deadline to respond to the Second Amended Complaint. No other deadlines have passed since March 8, 2021, and discovery will not conclude until June, 2021. [Doc. 116.] Thus, even if setting aside Fontes's default causes some unforeseen delay, that delay will have cause no prejudice to Plaintiffs. *See Enron Oil Corp.*, 10 F.3d at 98. It also is noteworthy that there is no entry of default against Fontes, and Plaintiffs have not moved for default against him. Given that Fontes was previously represented by counsel and has actively participated in this case since its inception, it cannot be said that setting aside Fontes's default will increase Plaintiffs' litigation costs or reduce their likelihood of success. *See Cohan*, 2012 U.S. Dist. LEXIS 144603, *5. Insofar as any prejudice to Plaintiffs will be extremely minimal (if it exists at all), in light of the disfavored, harsh consequences Fontes would suffer if his default is not set aside, Fontes

respectfully seeks relief under Rule 55(c) and leave to proceed against the merits of Plaintiffs' claims.  *See Enron Oil Corp.*, 10 F.3d at 96; *Gill*, 240 F.2d at 670; *W. Sur. Co.*, 2013 U.S. Dist. LEXIS 4904, *19; *Galen Inst., LLC*, 2004 U.S. Dist. LEXIS 2843, *8-10.

## IV.     CONCLUSION.

Fontes has shown good cause of his default and that it was not intentional or willful.  He has actively participated in this case since its inception, and only missed the March 8, 2021 deadline for responding to the Second Amended Complaint because he was *pro se* at the time.  Fontes has further shown that he has a full and meritorious defense to Plaintiffs' claims against him and that Plaintiffs will incur nominal or no prejudice if Fontes is allowed to proceed and have his day in Court.  Moreover, Fontes is ready to proceed as expeditiously as possible to reach the merits of this case, and present herewith his proposed Answer and Affirmative Defenses to the Second Amended Complaint.  Accordingly, Fontes requests, pursuant to Federal Rule of Civil Procedure 55(c), that his untimeliness be excused, that his default be set aside, and  that he be permitted to proceed with defending himself on the merits against Plaintiffs' claims.

Respectfully submitted this 1st day of April, 2021.

| | |
|---|---|
| **SMITH & LISS, LLC** | **LAW OFFICES OF FRANK J. RICCIO LLC** |
| */s/ Ray S. Smith, III* | */s/ Frank J. Riccio II* |
| Ray S. Smith, III* | Frank J. Riccio II |
| Ga. Bar No. 662555 | Fed Bar #CT 20980 |
| rsmith@smithliss.com | frankriccio@ricciolaw.com |
| Kenneth I. Sokolov* | |
| Ga. Bar No. 666460 | 923 East Main Street |
| ksokolov@smithliss.com | Bridgeport, CT 06608 |
| | Telephone:   (203) 333-6135 |
| Five Concourse Parkway | Facsimile:    (203) 333-6190 |
| Suite 2600 | |
| Atlanta, Georgia 30328 | *Local Counsel for Defendant* |
| Telephone:   404-760-6000 | *Manuel Lopes Fontes, M.D.* |
| Facsimile:    404-760-0225 | |

{00593850. }  12

*Lead Counsel for Defendant*
*Manuel Lopes Fontes, M.D.*

\* Motions for Admission *Pro Hac Vice*
filed contemporaneously herewith

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be served by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

*/s/ Frank J. Riccio II*
Frank J. Riccio II
Fed Bar #CT 20980